PER CURIAM.
 

 This matter is before the Court on the petition of The Florida Bar proposing amendments to the Rules Regulating the Florida Bar.
 
 See
 
 R. Regulating Fla. Bar 1-12.1. We have jurisdiction.
 
 See
 
 art. V, § 15, Fla. Const.
 

 The omnibus petition, which proposes new rules and amendments to existing rules, was approved by the Board of Governors. Formal notice of the proposed amendments was published in the September 1, 2008, issue of
 
 The Florida Bar News.
 
 In the notice, the Bar directed interested parties to file their comments directly with the Court. Thereafter, on October 7, 2008, the Bar filed the proposed amendments with the Court. The Court received only one comment.
 

 The Bar proposes amendments to rules 1-3.6 (Delinquent Members); 1-3.7 (Reinstatement to Membership); 1-3.8 (Right to Inventory); 1-3.10 (Appearance by Non-Florida Lawyer in a Florida Court); 1 — 4.3 (Committees); 1-7.5 (Retired, Resigned, Inactive, Delinquent Members); 1-12.1 (Amendment to Rules; Authority; Notice; Procedures; Comments); 2-4.5 (Nominations for President-Elect); 2-7.3 (Creation
 
 *64
 
 of Sections and Divisions); 3-2.1 (Generally); 3-3.2 (Board of Governors of The Florida Bar); 3-3.3 (Counsel for The Florida Bar); 3-5.4 (Publication of Discipline); 3-6.1 (Generally); 3-7.2 (Procedures Upon Criminal or Professional Misconduct; Discipline Upon Determination or Judgment of Guilt of Criminal Misconduct); 3-7.4 (Grievance Committee Procedures); 3-7.6 (Procedures Before a Referee); 3-7.7 (Procedures Before Supreme Court of Florida); 3-7.11 (General Rules of Procedure); 3-7.13 (Incapacity Not Related to Misconduct); 3-7.17 (Vexatious Conduct and Limitation of Filings); 4-1.5 (Fees and Costs for Legal Services); 4-1.8 (Conflict of Interest; Prohibited and Other Transactions); 4-1.9 (Conflict of Interest; Former Client); 4-1.18 (Duties to Prospective Client); 4-2.4 (Lawyer Serving as Third-Party Neutral); 4-3.3 (Candor Toward the Tribunal); 4-7.2 (Communications Concerning Lawyer’s Services); 4-7.4 (Direct Contact With Prospective Clients); 4-7.5 (Advertisements in the Electronic Media Other Than Computer-Accessed Communications); 4-7.7 (Evaluation of Advertisements): 4-7.10 (Lawyer Referral Services); 4-8.4 (Misconduct); 5-1.1 (Trust Accounts); 5-1.2 (Trust Accounting Records and Procedures); 6-3.5 (Standards for Certification); 6-3.9 (Manner of Certification); 6-10.3 (Minimum Continuing Legal Education Standards); 6-10.4 (Reporting Requirements); 6-10.5 (Delinquency and Appeal); 6-10.6 (Reinstatement); 10-6.3 (Recommendations and Disposition of Complaints); 10-7.1 (Proceedings for Injunctive Relief); 10-7.2 (Proceedings for Indirect Criminal Contempt); 10-7.3 (Enforcement of Award of Civil Penalty); 14-4.1 (Arbitration Proceedings); 17-1.2 (Definitions); 17-1.4 (Registration); 17-1.5 (Termination or Withdrawal of Registration); and 17-1.9 (Continuing Legal Education Requirement). After considering the Bar’s petition and the comment, the Court adopts The Florida Bar’s proposals, except as follows.
 

 The Court modifies or declines to adopt the following proposals. The Bar proposes new rule 3-5.4 (Publication of Discipline) to explain the publication of disciplinary sanctions.
 
 See
 
 R. Regulating Fla. Bar 3-5.1 (Types of Discipline). After reviewing the proposal, the Court has determined that the new rule would benefit from further clarification. On occasion, respondents mistakenly conclude that admonishments are confidential sanctions because the orders state “Not to be Published.” These respondents do not understand the phrase means that admonishments will not be published in
 
 Southern Reporter
 
 or in
 
 The Florida Bar News.
 
 To resolve this confusion, the Court modifies the proposal by adding the following language to subdivision (d):
 

 “Not to be Published” does not have the same meaning as “confidential.” The Florida Bar may post information regarding specific orders of admonishment on the Bar’s website. Further, the Bar may provide information regarding an admonishment upon inquiry.
 

 Next, the proposed amendment to rule 4-1.5 (Fees and Costs for Legal Services) includes definitions for the terms “retainer,” “flat fee,” and “advanced fee” in the Comment. The Court declines to include these definitions in the Comment. If the Bar seeks to define these terms, the definitions should be thoroughly studied and proposed as a portion of the rule, rather than placed in the Comment.
 

 In the proposed amendment to rule
 
 4r-
 
 3.3 (Candor Toward the Tribunal), the Bar seeks to add the phrase “impartial exposition of law” to an introductory paragraph in the Comment. However, the separate paragraph titled “Misleading legal argu
 
 *65
 
 ment” that is in the existing Comment already uses the phrase “disinterested exposition of the law.” Thus, to provide consistency with existing language in the Comment for rule 4-3.3, the Court modifies the proposal to state “disinterested exposition of the law.”
 

 The proposed amendment to rule 4-7.2(b) (Permissible Content of Advertisements and Unsolicited Written Communications) would have placed a requirement on attorneys who advertise to only present material that is “permitted by law.” The Court changes the phrase “permitted by law” to “not prohibited by law.” This modification makes it easier for attorneys to determine whether the content of their advertising is permissible.
 

 With regard to the proposed amendment to rule 10-7.1 (Proceedings for Injunctive Relief), the Court modifies proposed subdivisions (e) (Record) and (f) (Review by the Supreme Court of Florida) to conform with the language in existing rule 3-7.6(n)(4) (“Denial of a motion to supplement the record or to remove an item from the record may be reviewed in the same manner as provided for in the rule on appellate review under these rules.”). Similarly, the Court also modifies the proposed amendment to rule 10-7.2 (Proceedings for Indirect Criminal Contempt), subdivisions (d) (Record) and (e) (Review by the Supreme Court of Florida) to conform with the language in existing rule 3-7.6(n)(4).
 

 The Court modifies the proposed amendment to rule 14^.1 (Arbitration Proceedings), subdivision (a), by removing the phrase “by order of a court or other tribunal.” In addition, the Court declines to adopt proposed subdivision (f) (Referral by Referees).
 

 Also, the Court modifies the proposed amendment to rule 17-1.5 (Termination or Withdrawal of Registration). The Bar asserts that the proposed amendments to subdivision (a) would add “involuntary placement on inactive status” as a ground for termination of authorized house counsel status. However, proposed subdivision (a) does not provide any language stating “involuntary placement on inactive status.” Thus, the Court modifies proposed rule 17-1.5 to clearly include that phrase.
 

 Finally, the Court declines to adopt the proposed amendment to rule 4-7.5 (Advertisements in the Electronic Media Other Than Computer-Accessed Communications), which would have removed the requirement that nonlawyer spokespersons in advertising disclose that they are not lawyers. A similar proposal was submitted to the Court in
 
 In re Amendments to the Rules Regulating the Florida Bar
 
 — ■
 
 Advertising,
 
 971 So.2d 763, 764 (Fla.2007). In that case, the Bar proposed amending rule 4-7.5 to reach a result similar to the one it seeks in the present case. The Court declined to adopt that proposed amendment and stated:
 

 Next, current rule 4-7.5 requires a nonlawyer spokesperson who speaks on behalf of a lawyer or law firm to comply with certain requirements. The spokesperson must identify himself or herself as a spokesperson. Also, the spokesperson must disclose that he or she is not an attorney practicing with the lawyer or firm. The proposal for rule 4-7.5 would change the rule regarding affirmative disclosures by spokespersons .... In comparison to the proposal, the established requirements are consistently unambiguous in any advertising situation, simple to apply, and, thus, provide greater protection for the public. Therefore, the Court does not adopt the proposal.
 

 Id.
 
 The same reasoning applies to the current proposal.
 

 
 *66
 
 Accordingly, the Court adopts the amendments to the Rules Regulating the Florida Bar as set forth in the appendix to this opinion. Deletions are indicated by struek-through type, and new language is indicated by underscoring. The comments are offered for explanation and guidance only and are not adopted as an official part of the rules. The amendments shall become effective on February 1, 2010, at 12:01 a.m.
 

 It is so ordered.
 

 QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 APPENDIX
 

 RULES REGULATING THE FLORIDA BAR
 

 CHAPTER 1. GENERAL
 

 1-3. MEMBERSHIP
 

 RULE 1-3.6 DELINQUENT MEMBERS
 

 Any person now or hereafter licensed to practice law in Florida shall be deemed a delinquent member if the member:
 

 (a) fails to pay membership fees;
 

 (b) fails to comply with continuing legal education or basic skills course requirements;
 

 (c) fails to pay the costs assessed in diversion or disciplinary cases within 30 days after the disciplinary decision or diversion recommendation becomes final, unless such time is extended by the board of governors for good cause shown;
 

 (d) fails to make restitution imposed in diversion cases or disciplinary proceedings within the time specified in the order in such cases or proceedings, unless the time is extended by the board of governors for good cause shown;
 

 (e) fails to pay fees imposed as part of diversion for more than 9030 days after the diversion recommendation became final, unless such time is extended by the board of governors for good cause shown; or
 

 (f) fails to pay an award entered in fee arbitration proceedings conducted under the authority stated elsewhere in these rules and 9030 days or more have elapsed since the date on which the award became final, unless such time is extended by the board of governors for good cause shown.
 

 Delinquent members shall not engage in the practice of law in Florida nor be entitled to any privileges and benefits accorded to members of The Florida Bar in good standing.
 

 RULE 1-3.7 REINSTATEMENT TO MEMBERSHIP
 

 (a) Eligibility for Reinstatement. Members who have retired, — baen-delin- or been delinquent in continuing legal education requirements for a period of time not in excess of 5 years are eligible for reinstatement under this rule. Time shall be calculated from the day of the retirement, membership fees delinquency, or continuing legal- education delinquency.
 

 Inactive members may also seek reinstatement under this rule.
 

 (b) Petitions Required. A member seeking reinstatement must file a petition with the executive director setting forth the reason for inactive status, retirement, or delinquency and showing good cause why the petition for reinstatement should be granted. The petition shall be on a form approved by the board of governors and the petitioner shall furnish such information on such form as the board of governors may require. The petition shall be accompanied by a nonrefundable reinstate
 
 *67
 
 ment fee of $150 and payment of all ar-rearages unless adjusted by the executive director with concurrence of the executive committee for good cause shown. Inactive members shall not be required to pay the reinstatement fee. No member shall be reinstated if, from the petition or from investigation conducted, the petitioner is not of good moral character and morally fit to practice law or if the member is delinquent in compliance with the continuing legal education or basic skills course requirements.
 

 If the executive director is in doubt as to approval of a petition the executive director may refer the petition to the board of governors for its action. Action of the executive director or board of governors denying a petition for reinstatement may be reviewed upon petition to the Supreme Court of Florida.
 

 (c) Members Who Have Retired or Been Delinquent for Less Than 5 Years, But More Than 3 Years. Members who have retired or been delinquent for less than 5 years, but more than 3 years, shall have completed 10 hours of continuing legal education courses for each year or portion thereof that the member had retired or was deemed delinquent.
 

 (d) Members Who Have Retired or Been Delinquent for 5 Years or More. Members who have retired or have been deemed delinquent for a period of 5 years or longer shall not be reinstated under this rule and must be readmitted upon application to and approval by the Florida Board of Bar Examiners.
 

 (e) Members Delinquent 60 Days or Less. Reinstatement from membership fees delinquency accomplished within 60 days from the date of delinquency shall be deemed to relate back to the date before the delinquency. Any member reinstated within the 60-day period shall not be subject to disciplinary sanction for practicing law in Florida during that time.
 

 (f) Inactive Members. Inactive members may be reinstated to membership in good standing by petition filed with the executive director, in the form and as provided in (b) above, except:
 

 (1) If the member has been inactive for greater than 5 years, but has been authorized to and either actively practiced law in another jurisdiction for the entire period of time or held a position that requires a license as an attorney, the member shall be required to complete the Florida Law Update continuing legal education course as part of continuing legal education requirements.
 

 (2) If the member has been inactive for greater than 5 years and has been authorized to but has not actively practiced law in another jurisdiction or held a position that requires a license as an attorney for the entire period of time, the member shall be required to complete the basic skills course requirement and the 30-hour continuing legal education requirement.
 

 (3) An inactive member shall not be eligible for reinstatement until all applicable continuing legal education requirements have been completed and the remaining portion of membership fees for members in good standing for the current fiscal year have been paid.
 

 RULE 1-3.8 RIGHT TO INVENTORY
 

 (a) Appointment; Grounds; Authority. Whenever an attorney is suspended, disbarred, becomes a delinquent member, abandons a practice, disappears, dies, or suffers an involuntary leave of absence due to military service, catastrophic illness, or injury, and no partner, personal representative, or other responsible party capable of conducting the attorney’s affairs is
 
 *68
 
 known to exist, the appropriate circuit court, upon proper proof of the fact, may appoint an attorney or attorneys to inventory the files of the subject attorney (hereinafter referred to as “the subject attorney”) and to take such action as seems indicated to protect the interests of clients of the subject attorney.
 

 (b) Maintenance of Attorney-Client Confidences. Any attorney so appointed shall not disclose any information contained in files so inventoried without the consent of the client to whom such file relates except as necessary to carry out the order of the court that appointed the attorney to make the inventory.
 

 (c) Status and Purpose of Inventory Attorney. Nothing herein creates an attorney and client, fiduciary, or other relationship between the inventory attorney and the subject attorney. The purpose of appointing an inventory attorney is to avoid prejudice to clients of the subject attorney and, as a secondary result, prevent or reduce claims against the subject attorney for such prejudice as may otherwise occur.
 

 (d) Rules of Procedure. The Florida Rules of Civil Procedure are applicable to proceedings under this rule.
 

 (e) Designation of Inventory Attorney. Each member of the bar who practices law in Florida shall designate another member of The Florida Bar who has agreed to serve as inventory attorney under this rule; provided, however, that no designation is required with respect to any portion of the member’s practice as an employee of a governmental entity. When the services of an inventory attorney become necessary, an authorized representative of The Florida Bar shall contact the designated member and determine the member’s current willingness to serve. The designated member shall not be under any obligation to serve as inventory attorney.
 

 RULE 1-3.10 APPEARANCE BY NON-FLORIDA LAWYER IN A FLORIDA COURT
 

 (a) Non-Florida Lawyer Appearing in a Florida Court. A practicing lawyer of another state, in good standing and currently eligible to practice, may, upon association of a member of The Florida Bar and verified motion, be permitted to practice upon such conditions as the court deems appropriate under the circumstances of the case. Such lawyer shall comply with the applicable portions of this rule and the Florida Rules of Judicial Administration.
 

 (1)
 
 Application of Rules Regulating The Florida Bar.
 
 Lawyers permitted to appear by this rule shall be subject to these Rules Regulating The Florida Bar while engaged in the permitted representation.
 

 (2)
 
 General Practice Prohibited.
 
 Non-Florida lawyers shall not be permitted to engage in a general practice before Florida courts. For purposes of this rule more than 3 appearances within a 365-day period in separate representations shall be presumed to be a “general practice.”
 

 (3)
 
 Effect of Professional Discipline or Contempt.
 
 Non-Florida lawyers who have been disciplined or held in contempt by reason of misconduct committed while engaged in representation that is permitted by this rule shall thereafter be denied admission under this rule and the applicable provisions of the Florida Rules of Judicial Administration.
 

 (b) Lawyer Prohibited From Appearing. No lawyer is authorized to appear pursuant to this rule or the applicable portions of the Florida Rules of Judicial Administration if the lawyer:
 

 
 *69
 
 (1) is disbarred or suspended from practice in any jurisdiction;
 

 (2) is a Florida resident, unless the attorney has an application pending for admission to The Florida Bar and has not previously been denied admission to The Florida Bar;
 

 (3) is a member of The Florida Bar but ineligible to practice law;
 

 (4) has previously been disciplined or held in contempt by reason of misconduct committed while engaged in representation permitted pursuant to this rule;
 

 (5) has failed to provide notice to The Florida Bar or pay the filing fee as required by this rule; or
 

 (6) is engaged in a “general practice” as defined elsewhere in this rule.
 

 (c) Content of Verified Motion for Leave to Appear. Any verified motion filed under this rule or the applicable provisions of the Florida Rules of Judicial Administration shall include:
 

 (1) a statement identifying all jurisdictions in which the lawyer is currently eligible to practice law;
 

 (2) a statement identifying by date, case name, and case number all other matters in Florida state courts in which pro hac vice admission has been sought in the preceding 5 years, and whether such admission was granted or denied;
 

 (3) a statement identifying all jurisdictions in which the lawyer has been disciplined in any manner in the preceding 5 years and the sanction imposed, or all jurisdictions in which the lawyer has pending any disciplinary proceeding, including the date of the disciplinary action and the nature of the violation, as appropriate;
 

 (4) a statement identifying the date on which the legal representation at issue commenced and the party or parties represented;
 

 (5) a statement that all applicable provisions of this rule and the applicable provisions of the Florida Rules of Judicial Administration have been read and that the verified motion complies with those rules;
 

 (6) the name, record bar address, and membership status of the Florida Bar member or members associated for purposes of the representation;
 

 (7) a certificate indicating service of the verified motion upon all counsel of record in the matter in which leave to appear pro hac vice is sought and upon The Florida Bar at its Tallahassee office accompanied by a nonrefundable $250410 filing fee made payable to The Florida Bar or notice of the waiver of the fee; and
 

 (8) a verification by the lawyer seeking to appear pursuant to this rule or the applicable provisions of the Florida Rules of Judicial Administration and the signature of the Florida Bar member or members associated for purposes of the representation.
 

 1-4. BOARD OF GOVERNORS
 

 RULE 1-4.3 COMMITTEES
 

 The board of governors shall create an executive committee composed of the president, president-elect, chairs of the budget committee, chair of the communications committee, disciplinary review, andchair of file legislation committees, president of the young lawyers division, 2 members of the board appointed by the president, and 3 members of the board elected by the board to act upon such matters as arise and require disposition between meetings of the board; a budget committee composed of 9 members with 3-year staggered terms; grievance committees as provided for in chapter 3; unlicensed practice of law
 
 *70
 
 committees as provided for in chapter 10; and a professional ethics committee.
 

 1-7. MEMBERSHIP FEES AND FISCAL CONTROL
 

 RULE 1-7.5 RETIRED, RESIGNED, INACTIVE, DELINQUENT MEMBERS
 

 A member who is retired, resigned^inactive, or delinquent shall not practice law in this state until reinstated as provided in these rules.
 

 1-12. AMENDMENTS
 

 RULE 1-12.1 AMENDMENT TO RULES; AUTHORITY; NOTICE; PROCEDURES; COMMENTS
 

 (a) Authority to Amend. The board of governors of The Florida Bar shall have the authority to amend chapters 6, schedule A, thereto-and7 and 9, as well as the standards for the individual areas of certification; — 7f-and -9 within chapter 6 of these Rules Regulating The Florida Bar, consistent with the notice, publication, and comments requirements provided below. Only the Supreme Court of Florida shall have the authority to amend all other chapters of these Rules Regulating The Florida Bar.
 

 (b) Proposed Amendments. Any member of The Florida Bar in good standing or a section or committee of The Florida Bar may request the board of governors to consider an amendment to these Rules Regulating The Florida Bar.
 

 (c) Board Review of Proposed Amendments. The board of governors shall review proposed amendments by referral of the proposal to an appropriate committee thereof for substantive review. After substantive review, an appropriate committee of the board shall review the proposal for consistency with these rules and the policies of The Florida Bar. After completion of review, a recommendation concerning the proposal shall be made to the board.
 

 (d) Notice of Proposed Board Action. Notice of the proposed action of the board on a proposed amendment shall be given in an edition of The Florida Bar News that is published prior to the meeting of the board at which the board action is taken. The notice shall identify the rule(s) to be amended and shall state in general terms the nature of the proposed amendments.
 

 (e) Comments by Members. Any member may request a copy of the proposed amendments and may file written comments concerning them. The comments shall be filed with the executive director sufficiently in advance of the board meeting to allow for copying and distribution to the members of the board.
 

 (f) Approval of Amendments. Amendments to other than chapters 6^-schedule A thereto, and7 and 9, as well as the standards for the individual areas of certification; — 7; ■■ and 9 within chapter 6 of these Rules Regulating The Florida Bar shall be by petition to the Supreme Court of Florida. Petitions to amend these Rules Regulating The Florida Bar may be filed by the board of governors or by 50 members in good standing, provided that any amendments proposed by members of the bar shall be filed 90 days after filing them with The Florida Bar.
 

 (g) Notice of Intent to File Petition. Notice of intent to file a petition to amend these Rules Regulating The Florida Bar shall be published in The Florida Bar News at least 30 days before the filing of the petition. The notice shall set forth the text of the proposed amendments, state the date the petition will be filed, and state that any comments or objections must be filed within 30 days of filing the petition. A copy of all comments or objections shall be served on the executive director of The
 
 *71
 
 Florida Bar and any persons who may have made an appearance in the matter.
 

 (h) Action by the Supreme Court of Florida. The court shall review all proposed amendments filed under this rule and such amendments shall not become effective until an order is issued approving them. Final action of the court shall be reported in The Florida Bar News.
 

 (i) Waiver. On good cause shown, the court may waive any or all of the provisions of this rule.
 

 CHAPTER 2. BYLAWS OF THE FLORIDA BAR
 

 2-4. OFFICERS
 

 BYLAW 2-4.5 NOMINATIONS FOR PRESIDENT-ELECT
 

 (a) Policies. The Board of Governors of The Florida Bar is hereby authorized to adopt standing policies that govern the conduct of candidates and aspirants seeking support for their nomination as candidates, which shall include creation of a committee to oversee the conduct of such individuals and promulgation of sanctions for failure to comply with these rules or the policies adopted by authority hereof.
 

 (b) Nominations Process. Any member of The Florida Bar in good standing may be nominated as a candidate for president-elect by petition signed by not fewer than 1 percent of the members of The Florida Bar in good standing. Such nominating petitions shall be filed with the executive director at the headquarters office on or after November 15 and on or before 5:00 p.m., eastern time, December 15 of the year preceding the election. Nominees shall endorse their written acceptance upon such petition. In the event that no member of The Florida Bar in good standing shall be nominated, the board of governors shall thereafter nominate at least 1 candidate for the office of president-elect.
 

 Except as otherwise specified -in standing board-^olieiesr-no-campaigning for the ■purposes-of-seeking-support for the nomination of a candidate to the-office of president-elect — shall -be conducted — prior—to November 15 of the — year.preceding the election.
 

 (c) Elections Process. — Campaigns by nominees-fei-election-to the office of president-elect--shall not commence until November 15 and shall-end -on March 21 as further-specified in standing board poli-⅜⅛& — In the evenf-of a -runoff election, such-activities may continue-untif-April-22.-
 

 2-7. SECTIONS AND DIVISIONS
 

 BYLAW 2-7.3 CREATION OF SECTIONS AND DIVISIONS
 

 Sections and divisions may be created or abolished by the board of governors as deemed necessary or desirable.
 

 (a) Sections. The following sections of The Florida Bar have been created by the board of governors:
 

 (1) Administrative Law Section;
 

 (2) Appellate Practice Section;
 

 (3) Business Law Section;
 

 (4) City, County and Local Government Law Section;
 

 (5) Criminal Law Section;
 

 (6) Elder Law Section;
 

 (7) Entertainment, Arts, and Sports Law Section;
 

 (8) Environmental and Land Use Law Section;
 

 (9) Equal Opportunities Law Section;
 

 (10) Family Law Section;
 

 (11) General Practice, Solo and Small Firm Section;
 

 (12) Government Lawyer Section;
 

 (13) Health Law Section;
 

 
 *72
 
 (14) International Law Section;
 

 (15) Labor and Employment Law Section;
 

 (16)-Pr-aetice-Management and-Development-Section;
 

 (176) Public Interest Law Section;
 

 (187) Real Property, Probate, and Trust Law Section;
 

 (188) Tax Section;
 

 (2819) Trial Lawyers Section; and
 

 (240) Workers’ Compensation Section.
 

 (b) Divisions. The following divisions of The Florida Bar have been created by the board of governors:
 

 (1) Out-of-State Division; and
 

 (2) Young Lawyers Division.
 

 CHAPTER 3. RULES OF DISCIPLINE
 

 3-2. DEFINITIONS
 

 RULE 3-2.1 GENERALLY
 

 Wherever used in these rules the following words or terms shall have the meaning herein set forth unless the use thereof shall clearly indicate a different meaning:
 

 (a) Bar Counsel. A member of The Florida Bar representing The Florida Bar in any proceeding under these rules.
 

 (b) The Board or the Board of Governors. The board of governors of The Florida Bar.
 

 (c) Complainant or Complaining Witness. Any person who has complained of the conduct of any member of The Florida Bar to any officer or agency of The Florida Bar.
 

 (d) This Court or the Court. The Supreme Court of Florida.
 

 (e) Court of this State. A state court authorized and established by the constitution or laws of the state of Florida.
 

 (f) Diversion to Practice and Professionalism Enhancement Programs. The removal of a disciplinary matter from the disciplinary system and placement of the matter in a skills enhancement program in lieu of a disciplinary sanction.
 

 (g) Executive Committee. The executive committee of the board of governors of The Florida Bar.
 

 (h) Executive Director. The executive director of The Florida Bar.
 

 (i) Practice and Professionalism Enhancement Programs. Programs operated either as a diversion from disciplinary action or as a part of a disciplinary sanction that are intended to provide educational opportunities to members of the bar for enhancing skills and avoiding misconduct allegations.
 

 (j) Probable Cause. A finding by an authorized agency that there is cause to believe that a member of The Florida Bar is guilty of misconduct justifying disciplinary action.
 

 (k) Referral to Practice and Professionalism Enhancement Programs. Placement of a lawyer in skills enhancement programs as a disciplinary sanction.
 

 (Z) Referee. A judge or retired judge appointed to conduct proceedings as provided under these rules.
 

 (m) Respondent. A member of The Florida Bar or an attorney subject to these rules who is accused of misconduct or whose conduct is under investigation.
 

 (n) Staff Counsel. A lawyer employee of The Florida Bar designated by the executive director and authorized by these Rules Regulating The Florida Bar to approve formal complaints, conditional guilty pleas for consent judgments, and diversion recommendations and to make appointment of bar counsel.
 

 
 *73
 

 (o
 
 ) Chief Branch Discipline Counsel. Chief branch discipline counsel is the counsel in charge of a branch office of The Florida Bar. Any counsel employed by The Florida Bar may serve as chief branch discipline counsel at the direction of the regularly assigned chief branch discipline counsel or staff counsel.
 

 (p) Designated Reviewer. The designated reviewer is a member of the board of governors responsible for review and other specific duties as assigned with respect to a particular grievance committee or matter. The designated reviewer for a special grievance committee will be selected by the president and approved by the board.
 

 (q) Final Adjudication. A decision by the authorized disciplinary authority or court issuing a sanction for professional misconduct that is not subject to judicial review except on direct appeal to the Supreme Court of the United States.
 

 3-3. JURISDICTION TO ENFORCE RULES
 

 RULE 3-3.2 BOARD OF GOVERNORS OF THE FLORIDA BAR
 

 (a) Responsibility of Board. The board is assigned the responsibility of maintaining high ethical standards among the members of The Florida Bar. The board shall supervise and conduct disciplinary proceedings in accordance with the provisions of these rules.
 

 (b) Authority to File a Formal Complaint. No formal complaint shall be filed by The Florida Bar in disciplinary proceedings against a member of the bar unless- there shall first be 1 of the following conditions has been met:
 

 (1)Finding of Probable Cause.
 
 A formal complaint may be filed if there has been a finding under these rules that probable cause exists to believe that the respondent is guilty of misconduct justifying disciplinary action,-©?;
 

 (2)
 
 Emergency Suspension or Probation.
 
 A formal complaint may be filed if the member is the subject of an order of emergency suspension or emergency probation that is based on the same misconduct that is the subject matter of the formal complainVor-unless;
 

 (3)
 
 Felony Determination or Adjudication.
 
 A formal complaint may be filed if the respondent has been determined or adjudged to be guilty of the commission of a felony-,-or ■unless;
 

 (4)
 
 Discipline In Another Jurisdiction.
 
 A formal complaint may be filed if the respondent has been disciplined by another entity having jurisdiction over the practice of law or, with the concur renee-of-the chair of the grievance committee,;
 

 (5)
 
 Felony Charges.
 
 A formal complaint may be filed if a member has been charged with commission of a felony under applicable law that warrants the imposition of discipline and if the chair of the grievance committee agrees. A decision of the grievance committee chair to not file a formal complaint shall be reviewed by the full grievance committee. The grievance committee may affirm or reverse the decision.
 

 (6)
 
 Discipline on Action of the Florida Judicial Qualifications Commission.
 
 A formal complaint may be filed if the Supreme Court of Florida has adjudged the respondent guilty of judicial misconduct in an action brought by the Florida Judicial Qualifications Commission, the respondent is no longer a judicial officer, and the facts warrant imposing disciplinary sanctions.
 

 (c)Executive Committee. All acts and discretion required by the board under these Rules of Discipline may be exer
 
 *74
 
 cised by its executive committee between meetings of the board as may from time to time be authorized by standing board of governors’ policies.
 

 RULE 3-3.3 COUNSEL FOR THE FLORIDA BAR
 

 (a) Authority of Board of Governors. The board may employ staff counsel and bar counsel for The Florida Bar to perform such duties, as may be assigned, under the direction of the executive director.
 

 (b) Appointment of Bar Counsel. Staff counsel may designate members of The Florida Bar to serve as bar counsel to represent The Florida Bar in disciplinary proceedings. Bar counsel shall not be a member- of the -board- -or — of-⅛- grievance committee, except that a
 

 (c) Appointment of Board Members Limited. A member of the board may represent The Florida Bar on any review proceeding under rule 3-7.7.
 

 (d) Appointment of Grievance Committee Members Limited. A member of a grievance committee may represent the bar in any proceeding before a referee and any review by the supreme court under rule 3-7,7 if the case was not considered by the grievance committee on which the member serves.
 

 (e) Compensation. Bar counsel may be compensated in accordance with budgetary policies adopted by the board.
 

 3-5. TYPES OF DISCIPLINE
 

 RULE 3-5.4 PUBLICATION OF DISCIPLINE
 

 (a) Nature of Sanctions. All disciplinary sanctions, as defined in rules 3-5.1 and 3-5.2, or their predecessors, of these Rules Regulating The Florida Bar in disciplinary cases opened after March 16, 1990 are public information. Admonishments for minor misconduct entered in disciplinary cases opened on or before March 16, 1990 are confidential.
 

 (b) Disclosure on Inquiry. All public disciplinary sanctions shall be disclosed upon inquiry.
 

 (c) Manner of Publication. Unless otherwise directed by the court, and subject to the exceptions set forth below, all public disciplinary sanctions may be published for public information in print or electronic media.
 

 (d) Limited Exception for Admonishments Issued by the Supreme Court of Florida. All admonishments issued by the court containing the heading “Not to be Published” shall not be published in the official court reporter and shall not be published in
 
 The Florida Bar News.
 

 “Not to be Published” does not have the same meaning as “confidential.” The Florida Bar may post information regarding specific orders of admonishment on the Bar’s website. Further, the Bar may provide information regarding an admonishment upon inquiry.
 

 Comment
 

 All disciplinary sanctions as defined in rules 3-5.1 and 3-5.2, or their predecessors, entered in cases opened on or after March 17, 1990 are public information. Therefore, an inquiry into the conduct of a member of the bar will result in a disclosure of all such sanctions.
 

 The public policy of this state is to provide reasonable means of access to public information. In furtherance of this policy, this rule is enacted so that all persons may understand what public information concerning lawyer disciplinary sanctions is available and in what format. This rule does not alter current court procedure or other requirements.
 

 Admonishments are issued for minor misconduct and are the lowest form of
 
 *75
 
 disciplinary sanction. An admonishment is often issued for technical rule violations or for rule violations that did not result in harm. The court’s orders imposing admonishments contain the heading “Not to be Published” and this rule directs that those admonishments not be published in
 
 Southern Reporter
 
 and directs The Florida Bar not to publish those admonishments in its newspaper,
 
 The Florida Bar News.
 
 The court does so in order to maintain a tangible difference between the sanctions of admonishment and public reprimand.
 

 This rule does not bar disclosure of admonishments upon inquiry, whether written, oral, or electronic, and does not bar publication of admonishments on any website of The Florida Bar.
 

 3-6. EMPLOYMENT OF CERTAIN ATTORNEYS OR FORMER ATTORNEYS
 

 RULE 3-6.1 GENERALLY
 

 (a)Authorization and Application. An authe-ri-zed-business entity (as defined elsewhere in these rules) Except as limited in this rule, persons or entities providing legal services may employ suspended attorneys and former attorneys who have been disbarred or whose disciplinary resignations have been allowed [for purposes of this rule such attorneys and former attorneys are referred to as either “individu-ales) subject to this rule”,- ■ “individuals)-, or “employee(s)”b — Subject to the exceptions set forth below-these individuals may to perform those services that may ethically be performed by nonlawyers employed by authorized business entities.
 

 (a) Definition of Employment. An individual subject to this rule shall be considered as an -employee ofemployed by an authorized business entity providing legal services if the individual is a salaried or hourly employee, er volunteer worker-for as-authorized business- entity, or an independent contractor providing services to an. authorized-businessthe entity.
 

 (b) Employment by Former Subordinates Prohibited for a Period of 3 Years. An individual subject to this rule may not, for a period of 3 years from the entry of the order pursuant to which the suspension, disciplinary resignation, or disbarment became effective, or until the individual is reinstated or readmitted to the practice of law, whichever occurs sooner, be employed by or work under the supervision of another attorney who was supervised by the individual at the time of or subsequent to the acts giving rise to the order.
 

 (c) Notice of Employment Required. Before employment commences the em-ployerentity shall provide The Florida Bar with a notice of employment and a detailed description of the intended services to be provided by the employeeindividual subject to this rule.
 

 (d) Prohibited Conduct.
 

 (1)
 
 Direct Client Contact.
 
 Individuals subject to this rule shall not have direct contact with any client. Direct client contact does not include the participation of the individual as an observer in any meeting, hearing, or interaction between a supervising attorney and a client.
 

 (2)
 
 Trust Funds or Property.
 
 Individuals subject to this rule shall not receive, disburse, or otherwise handle trust funds or property.
 

 (3)
 
 Practice of Law.
 
 Individuals subject to this rule shall not engage in conduct that constitutes the practice of law and such individuals shall not hold themselves out as being eligible to do so.
 

 (e) Quarterly Reports by Employeein-dividual and Employer Required. The individual subject to this rule (employee)
 
 *76
 
 and employer shall submit sworn information reports to The Florida Bar. Such reports shall be filed quarterly, based on the calendar year, and include statements that no aspect of the employee’-s -work of the individual subject to this rule has involved the unlicensed practice of law, that the employeeindividual subject to this rule has had no direct client contact, that the em-ployeeindividual subject to this rule did not receive, disburse, or otherwise handle trust funds or property, and that the em-pioyeeindividual subject to this rule is not being supervised by an attorney whom the employeeindividual subject to this rule supervised within the 3 years immediately previous to the date of the suspension, disbarment, or disciplinary resignation.
 

 3-7. PROCEDURES
 

 RULE 3-7.2 PROCEDURES UPON CRIMINAL OR PROFESSIONAL MISCONDUCT; DISCIPLINE UPON DETERMINATION OR JUDGMENT OF GUILT OF CRIMINAL MISCONDUCT; DISCIPLINE ON REMOVAL FROM JUDICIAL OFFICE
 

 (a)Definitions.
 

 (1)
 
 Judgment of Guilt.
 
 For the purposes of these rules, “judgment of guilt” shall include only those cases in which the trial court in the criminal proceeding enters an order adjudicating the respondent guilty of the offense(s) charged.
 

 (2)
 
 Determination of Guilt.
 
 For the purposes of these rules, “determination of guilt” shall include those cases in which the trial court in the criminal proceeding enters an order withholding adjudication of the respondent’s guilt of the offense(s) charged, those cases in which the convicted attorney has entered a plea of guilty to criminal charges, those cases in which the convicted attorney has entered a no contest plea to criminal charges, those cases in which the jury has rendered a verdict of guilty of criminal charges, and those cases in which the trial judge in a bench trial has rendered a verdict of guilty of criminal charges.
 

 (3)Convicted Attorney.
 
 For the purposes of these rules, “convicted attorney” shall mean an attorney who has had either a determination or judgment of guilt entered by the trial court in the criminal proceeding.
 

 (b) Determination or Judgment of Guilt, Admissibility; Proof of Guilt. Determination or judgment of guilt of a member of The Florida Bar by a court of competent jurisdiction upon trial of or plea to any crime under the laws of this state, or under the laws under which any other court making such determination or entering such judgment exercises its jurisdiction, shall be admissible in proceedings under these rules and shall be conclusive proof of guilt of the criminal offense(s) charged for the purposes of these rules.
 

 (c) Notice of Institution of Felony Criminal Charges. Upon the institution of a felony criminal charge against a member of The Florida Bar by the filing of an indictment or information the member shall within 10 days of the institution of the felony criminal charges notify the executive director of The Florida Bar of such charges. Notice shall include a copy of the document(s) evidencing institution of the charges.
 

 If the state attorney whose office is assigned to a felony criminal case is aware that the defendant is a member of The Florida Bar, the state attorney shall provide a copy of the indictment or information to the executive director.
 

 (d) Notice of Determination or Judgment of Guilt of Felony Charges.
 

 
 *77
 
 (1)
 
 Trial Judge.
 
 If any such determination or judgment is entered in a court of the State of Florida, the trial judge shall, within 10 days of the date on which the determination or judgment is entered, give notice thereof to the executive director of The Florida Bar and shall include a certified copy of the docu-mentes) on which the determination or judgment was entered.
 

 (2) Clerk of Court.
 
 If any such determination or judgment is entered in a court of the State of Florida, the clerk thereof shall, within 10 days of the date on which the determination or judgment is entered, give notice thereof to the executive director and shall include a certified copy of the document(s) on which the determination or judgment was entered.
 

 (3)
 
 State Attorney.
 
 If the state attorney whose office is assigned to a felony criminal case is aware that the defendant is a member of The Florida Bar, the state attorney shall give notice of the determination or judgment of guilt to the executive director and shall include a copy of the document(s) evidencing such determination or judgment.
 

 (e) Notice by Members of Determination or Judgment of Guilt of All Criminal Charges. A member of The Florida Bar shall within 10 days of entry of a determination or judgment for any criminal offense, which was entered on or after August 1, 2006, notify the executive director of The Florida Bar of such determination or judgment. Notice shall include a copy of the document(s) on which such determination or judgment was entered.
 

 (f) Suspension by Judgment of Guilt (Felonies). Upon receiving notice that a member of the bar has been determined to be or adjudicated guilty of a felony, the bar will file a “Notice of Determination or Judgment of Guilt” in the Supreme Court of Florida. A copy of the document(s) on which the determination or judgment is based shall be attached to the notice. Upon the filing of the notice with the Supreme Court of Florida and service of such notice upon the respondent, the respondent shall stand suspended as a member of The Florida Bar as defined in rule 3-5.1(e).
 

 (g) Petition to Modify or Terminate Suspension. At any time after the filing of a notice of determination or judgment of guilt, the respondent may file a petition with the Supreme Court of Florida to modify or terminate such suspension and shall serve a copy thereof upon the executive director. The filing of such petition shall not operate as a stay of the suspension imposed under the authority of this rule.
 

 (h) Appointment of Referee. Upon the entry of an order of suspension, as provided above, the supreme court shall promptly appoint or direct the appointment of a referee.
 

 (1)
 
 Hearing on Petition to Terminate or Modify Suspension.
 
 The referee shall hear a petition to terminate or modify a suspension imposed under this rule within 7 days of appointment and submit a report and recommendation to the Supreme Court of Florida within 7 days of the date of the hearing. The referee shall recommend termination or modification of the suspension only if the suspended member can demonstrate that the member is not the convicted person or that the criminal offense is not a felony.
 

 (2)
 
 Hearing on Sanctions.
 
 In addition to conducting a hearing on a petition to terminate or modify a suspension entered under this rule, the referee shall also hear argument concerning the appropriate sanction to be imposed and file a report and recommendation with the
 
 *78
 
 supreme court in the same manner and form as provided in rule 3-7.6(m) of these rules. The hearing shall be held and a report and recommendation shall be filed with the supreme court within 90 days of assignment as referee.
 

 The respondent may challenge the imposition of a sanction only on the grounds of mistaken identity or whether the conduct involved constitutes a felony under applicable law. The respondent may present relevant character evidence and relevant matters of mitigation regarding the proper sanction to be imposed. The respondent may not contest the findings of guilt in the criminal proceedings. A respondent who entered a plea in the criminal proceedings may be allowed to explain the circumstances concerning the entry of the plea for purposes of mitigation.
 

 The report and recommendations of the referee may be reviewed in the same manner as provided in rule 3-7.7 of these rules.
 

 (i) Appeal of Conviction. If an appeal is taken by the respondent from the determination or judgment in the criminal proceeding, the suspension shall remain in effect during the appeal. If on review the cause is remanded for further proceedings, the suspension shall remain in effect until the final disposition of the criminal cause unless modified or terminated by the Supreme Court of Florida as elsewhere provided.
 

 Further, the suspension imposed shall remain in effect until civil rights have been restored and until the respondent is reinstated.
 

 (j) Expunction. Upon motion of the respondent, the Supreme Court of Florida may expunge a sanction entered under this rule when a final disposition of the criminal cause has resulted in acquittal or dismissal. A respondent who is the subject of a sanction that is expunged under this rule may lawfully deny or fail to acknowledge the sanction, except when the respondent is a candidate for election or appointment to judicial office, or as otherwise required by law.
 

 (k) Waiver of Time Limits. The respondent may waive the time requirements set forth in this rule by written request made to and approved by the referee or supreme court.
 

 (Z) Professional Misconduct in Foreign Jurisdiction.
 

 (1)
 
 Notice of Discipline by a Foreign Jurisdiction.
 
 A member of The Florida Bar who has submitted a disciplinary resignation or otherwise surrendered a license to practice law in lieu of disciplinary sanction, or has been disbarred or suspended from the practice of law by a court or other authorized disciplinary agency of another state or by a federal court shall within 30 days after the effective date of the disciplinary resignation, disbarment or suspension file with the Supreme Court of Florida and the executive director of The Florida Bar a copy of the order or judgment effecting such disciplinary resignation, disbarment or suspension.
 

 (2)
 
 Effect of Adjudication or Discipline by a Foreign Jurisdiction.
 
 In eases of a-final adjudication by a court or^ other authorized disciplinary agency of another-jurisdiction, such adjudication of misconduet-shall be sufficient basis for the filing — of a complaint by The Florida Bar-and assignment for hearing before a referee without a finding of probable cause-under these rules.On petition of The Florida Bar supported by a copy of a final adjudication by a foreign court or disciplinary authority, the Supreme Court of Florida may issue an order suspending on an emergency basis the member who is the subject of the
 
 *79
 
 final adjudication. All of the conditions not in conflict with this rule applicable to issuance of emergency suspension orders elsewhere within these Rules Regulating The Florida Bar shall be applicable to orders entered under this rule.
 

 (m) Discipline Upon Removal From Judicial Office.
 

 (1)
 
 Notice of Removal.
 
 If an order of the Supreme Court of Florida removes a member of The Florida Bar from judicial office for .judicial misconduct, the clerk of the supreme court shall forward a copy of the order of removal to the executive director of The Florida Bar.
 

 (2)
 
 Filing of Formal Complaint.
 
 Upon receipt of an order removing a member from judicial office for judicial misconduct, the bar may file a formal complaint with the court and seek appropriate discipline.
 

 (3)
 
 Admissibility of Order; Conclusive Proof of Facts.
 
 The order of removal shall be admissible in proceedings under these rules and shall be conclusive proof of the facts on which the judicial misconduct was found by the court.
 

 (4)
 
 Determination of Lawyer Misconduct.
 
 The issue of whether the facts establishing the judicial misconduct also support a finding of lawyer misconduct shall be determined by the referee based on the record of the proceedings.
 

 RULE 3-7.4 GRIEVANCE COMMITTEE PROCEDURES
 

 (a) Notice of Hearing. When notice of a grievance committee hearing is sent to the respondent, such notice shall be accompanied by a list of the grievance committee members.
 

 (b) Complaint Filed With Grievance Committee. A complaint received by a committee direct from a complainant shall be reported to the appropriate bar counsel for docketing and assignment of a case number, unless the committee resolves the complaint within 10 days after receipt of the complaint. A written report to bar counsel shall include the following information: complainant’s name and address, respondent’s name, date complaint received by committee, copy of complaint letter or summary of the oral complaint made, and the name of the committee member assigned to the investigation. Formal investigation by a grievance committee may proceed after the matter has been referred to bar counsel for docketing.
 

 (c) Investigation. A grievance committee is required to consider all charges of misconduct forwarded to the committee by bar counsel whether based upon a written complaint or not.
 

 (d) Conduct of Proceedings. The proceedings of grievance committees may be informal in nature and the committees shall not be bound by the rules of evidence.
 

 (e) No Delay for Civil or Criminal Proceedings. An investigation shall not be deferred or suspended without the approval of the board even though the respondent is made a party to civil litigation or is a defendant or is acquitted in a criminal action, notwithstanding that either of such proceedings involves the subject matter of the investigation.
 

 (f) Counsel and Investigators. Upon request of a grievance committee, staff counsel may appoint a bar counsel or an investigator to assist the committee in an investigation. Bar counsel shall assist each grievance committee in carrying out its investigative and administrative duties and shall prepare status reports for the committee, notify complainants and respondents of committee actions as appropriate, and prepare all reports reflecting committee findings of probable cause, no
 
 *80
 
 probable cause, recommended discipline for minor misconduct, and letters of advice after no probable cause findings.
 

 (g) Quorum, Panels, and Vote.
 

 (1)
 
 Quorum.
 
 Three members of the committee, 2 of whom must be lawyers, shall constitute a quorum.
 

 (2)
 
 Panels.
 
 The grievance committee may be divided into panels of not fewer than 3 members, 2 of whom must be lawyers. Division of the grievance committee into panels shall only be upon concurrence of the designated reviewer and the chair of the grievance committee. The 3-member panel shall elect 1 of its lawyer members to preside over the panel’s actions. If the chair or vice-chair is a member of a 3-member panel, the chair or vice-chair shall be the presiding officer.
 

 (3)
 
 Vote.
 
 All findings of probable cause and recommendations of guilt of minor misconduct shall be made by affirmative vote of a majority of the committee members present, which majority must number at least 2 members. There shall be no required minimum number of lawyer members voting in order to satisfy the requirements of this rule. The number of committee members voting for or against the committee report shall be recorded. Minority reports may be filed. A lawyer grievance committee member may not vote on the disposition of any matter in which that member served as the investigating member of the committee.
 

 (h) Rights and Responsibilities of the Respondent. The respondent may be required to testify and to produce evidence as any other witness unless the respondent claims a privilege or right properly available to the respondent under applicable federal or state law. The respondent may be accompanied by counsel. At a reasonable time before any finding of probable cause or minor misconduct is made, the respondent shall be advised of the conduct that is being investigated and the rules that may have been violated. The respondent shall be provided with all materials considered by the committee and shall be given an opportunity to make a written statement, sworn or unsworn, explaining, refuting, or admitting the alleged misconduct.
 

 (i) Rights of the Complaining Witness. The complaining witness is not a party to the disciplinary proceeding. Unless it is found to be impractical by the chair of the grievance committee due to unreasonable delay or other good cause, the complainant shall be granted the right to be present at any grievance committee hearing when the respondent is present before the committee. Neither unwillingness nor neglect of the complaining witness to cooperate, nor settlement, compromise, or restitution, will excuse the completion of an investigation. The complaining witness shall have no right to appeal.
 

 (j) Finding of No Probable Cause.
 

 (1)
 
 Authority of Grievance Committee.
 
 A grievance committee may terminate an investigation by finding that no probable cause exists to believe that the respondent has violated these rules. The committee may issue a letter of advice to the respondent in connection with the finding of no probable cause.
 

 (2)
 
 Notice of Committee Action.
 
 Bar counsel shall notify the respondent and complainant of the action of the committee.
 

 (3)
 
 Effect of No Probable Cause Finding.
 
 A finding of no probable cause by a grievance committee shall not preclude the reopening of the case and further proceedings therein.
 

 
 *81
 
 (4)
 
 Disposition of Committee Files.
 
 Upon the termination of the grievance committee’s investigation, the committee’s file shall be forwarded to bar counsel for disposition in accord with established bar policy.
 

 (k) Letter Reports in No Probable Cause Cases. Upon a finding of no probable cause, bar counsel will submit a letter report of the no probable cause finding to the complainant, presiding member, investigating member, and the respondent, including any documentation deemed appropriate by bar counsel and explaining why the complaint did not warrant further proceedings. Letters of advice issued by a grievance committee in connection with findings of no probable cause shall be signed by the presiding member of the committee. Letter reports and letters of advice shall not constitute a disciplinary sanction.
 

 (Í) Preparation, Forwarding, and Review of Grievance Committee Complaints. If a grievance committee finds probable cause, the bar counsel assigned to the committee shall promptly prepare a record of its investigation and a formal complaint. The record before the committee shall consist of all reports, correspondence, papers, and/or recordings furnished to or received from the respondent, and the transcript of grievance committee meetings or hearings, if the proceedings were attended by a court reporter; provided, however, that the committee may retire into private session to debate the issues involved and to reach a decision as to the action to be taken. The formal complaint shall be approved by the member of the committee who presided in the proceeding. The formal complaint shall be in such form as shall be prescribed by the board. If the presiding member of the grievance committee disagrees with the form of the complaint, the presiding member may direct bar counsel to make changes accordingly. If bar counsel does not agree with the changes, the matter shall be referred to the designated reviewer of the committee for appropriate action. When a formal complaint by a grievance committee is not referred to the designated reviewer, or returned to the grievance committee for further action, the formal complaint shall be promptly forwarded to and reviewed by staff counsel who shall file the formal complaint, and furnish a copy of the formal complaint to the respondent. A copy of the record shall be made available to the respondent at the respondent’s expense.
 

 If, at any time before the filing of a formal complaint, bar counsel, staff counsel, and the designated reviewer all agree that appropriate reasons indicate that the formal complaint should not be filed, the case may be returned to the grievance committee for further action.
 

 (m) Recommendation of Admonishment for Minor Misconduct. If the committee recommends an admonishment for minor misconduct, the grievance committee report shall be drafted by bar counsel and signed by the presiding member. The committee report need only include: (1) the committee’s recommendations regarding the admonishment, revocation of certification, and conditions of recertification; (2) the committee’s recommendation as to the method of administration of the admonishment; (3) a summary of any additional charges that will be dismissed if the admonishment is approved; (4) any comment on mitigating, aggravating, or evidentiary matters that the committee believes will be helpful to the board in passing upon the admonishment recommendation; and (5) an admission of minor misconduct signed by the respondent, if the respondent has admit
 
 *82
 
 ted guilt to minor misconduct. No record need be submitted with such a report. After the presiding member signs the grievance committee report, the report shall be returned to bar counsel. The report recommending an admonishment shall be forwarded to staff counsel and the designated reviewer for review. If staff counsel does not return the report to the grievance committee to remedy a defect therein, or if the designated reviewer does not present the same to the disciplinary review committee for action by the board, the report shall then be served on the respondent by bar counsel.
 

 (n) Rejection of Admonishment. The order of admonishment shall become final unless rejected by the respondent within 15 days after service upon the respondent. If rejected by the respondent, the report shall be referred to bar counsel and referee for trial on complaint of minor misconduct to be prepared by bar counsel as in the case of a finding of probable cause.
 

 (o) Recommendation of Diversion to Remedial Programs. A grievance committee may recommend, as an alternative to issuing a finding of minor misconduct or no probable cause with a letter of advice, diversion of the disciplinary case to a practice and professionalism enhancement program as provided elsewhere in these rules. A respondent may reject the diversion recommendation in the same manner as provided in the rules applicable to rejection of findings of minor misconduct. In the event that a respondent rejects a recommendation of diversion, the matter shall be returned to the committee for further proceedings.
 

 (p) Preparation, Review, and Filing of Complaint. When a grievance committee formal complaint is not referred to the disciplinary review committee, or returned to the grievance committee, staff counsel shall sign the complaint and file the same in the Supreme Court of Florida, serve a copy on the respondent, and request the Supreme Court of Florida to assign a referee to try the cause. If probable cause is found by the board, bar counsel will prepare the formal complaint.
 

 RULE 3-7.6 PROCEDURES BEFORE A REFEREE
 

 (a) Referees.
 

 (1)
 
 Appointment.
 
 The chief justice shall have the power to appoint referees to try disciplinary cases and to delegate to a chief judge of a judicial circuit the power to appoint referees for duty in the chief judge’s circuit. Such appointees shall ordinarily be active county or circuit judges, but the chief justice may appoint retired judges.
 

 (2)
 
 Minimum Qualifications.
 
 To be eligible for appointment as a referee under this rule the judge must have previously served as a judicial referee in proceedings instituted under these rules before February 1, 2010, at 12:01 a.m., or must have received the referee training materials approved by the Supreme Court of Florida and certified to the chief judge that the training materials have been reviewed.
 

 (b) Trial by Referee. When a finding has been made by a grievance committee or by the board that there is cause to believe that a member of The Florida Bar is guilty of misconduct justifying disciplinary action, and the formal complaint based on such finding of probable cause has been assigned by the chief justice for trial before a referee, the proceeding thereafter shall be an adversary proceeding that shall be conducted as hereinafter set forth.
 

 (c) Pretrial Conference. Within 60 days of the order assigning the case to the referee, the referee shall conduct a pretrial conference. The purpose of the conference is to set a schedule for the proceed
 
 *83
 
 ings, including discovery deadlines and a final hearing date. The referee shall enter a written order in the proceedings reflecting the schedule determined at the conference.
 

 (d) Venue. The trial shall be held in the county in which an alleged offense occurred or in the county where the respondent resides or practices law or last practiced law in Florida, whichever shall be designated by the Supreme Court of Florida; provided, however, that if the respondent is not a resident of Florida and if the alleged offense is not committed in Florida, the trial shall be held in a county designated by the chief justice.
 

 (e) Style of Proceedings. All proceedings instituted by The Florida Bar shall be styled “The Florida Bar, Complainant, v. (name of respondent), Respondent,” and “In The Supreme Court of Florida (Before a Referee).”
 

 (f) Nature of Proceedings.
 

 (1)
 
 Administrative in Character.
 
 A disciplinary proceeding is neither civil nor criminal but is a quasi-judicial administrative proceeding. The Florida Rules of Civil Procedure apply except as otherwise provided in this rule.
 

 (2)
 
 Discovery.
 
 Discovery shall be available to the parties in accordance with the Florida Rules of Civil Procedure.
 

 (g) Bar Counsel. Bar counsel shall make such investigation as is necessary and shall prepare and prosecute with utmost diligence any case assigned.
 

 (h) Pleadings. Pleadings may be informal and shall comply with the following requirements:
 

 (1)
 
 Complaint; Consolidation and Severance.
 

 (A) Filing. The complaint shall be filed in the Supreme Court of Florida.
 

 (B) Content. The complaint shall set forth the particular act or acts of conduct for which the attorney is sought to be disciplined.
 

 (C) Joinder of Charges and Respondents; Severance. A complaint may embrace any number of charges against 1 or more respondents, and charges may be against any 1 or any number of respondents; but a severance may be granted by the referee when the ends of justice require it.
 

 (2)
 
 Answer and Motion.
 
 The respondent shall answer the complaint and, as a part thereof or by separate motion, may challenge only the sufficiency of the complaint and the jurisdiction of the forum. All other defenses shall be incorporated in the respondent’s answer. The answer may invoke any proper privilege, immunity, or disability available to the respondent. All pleadings of the respondent must be filed within 20 days of service of a copy of the complaint.
 

 (3)
 
 Reply.
 
 If the respondent’s answer shall contain any new matter or affirmative defense, a reply thereto may be filed within 10 days of the date of service of a copy upon bar counsel, but failure to file such a reply shall not prejudice The Florida Bar. All affirmative allegations in the respondent’s answer shall be considered as denied by The Florida Bar.
 

 (4)
 
 Disposition of Motions.
 
 Hearings upon motions may be deferred until the final hearing, and, whenever heard, rulings thereon may be reserved until termination of the final hearing.
 

 (5)
 
 Filing and Service of Pleadings.
 

 (A) Prior to Appointment of Referee. Any pleadings filed in a case pri- or to appointment of a referee shall be filed with the Supreme Court of Flori
 
 *84
 
 da and shall bear a certificate of service showing parties upon whom service of copies has been made. On appointment of referee, the Supreme Court of Florida shall notify the parties of such appointment and forward all pleadings filed with the court to the referee for action.
 

 (B) After Appointment of Referee. All pleadings, motions, notices, and orders filed after appointment of a referee shall be filed with the referee and shall bear a certificate of service showing service of a copy on staff counsel and bar counsel of The Florida Bar and on all interested parties to the proceedings.
 

 (6)
 
 Amendment
 
 Pleadings may be amended by order of the referee, and a reasonable time shall be given within which to respond thereto.
 

 (7)
 
 Expediting the Trial.
 
 If it shall be made to appear that the date of final hearing should be expedited in the public interest, the referee may, in the referee’s discretion, shorten the time for filing pleadings and the notice requirements as provided in this rule.
 

 (8)
 
 Disqualification of Referee.
 
 Upon motion of either party, a referee may be disqualified from service in the same manner and to the same extent that a trial judge may be disqualified under existing law from acting in a judicial capacity. In the event of disqualification, the chief justice shall appoint a successor.
 

 (i)Notice of Final Hearing. The cause may be set down for trial by either party or the referee upon not less than 10 days’ notice. The trial shall be held as soon as possible following the expiration of 10 days from the filing of the respondent’s answer, or if no answer is filed, then from the date when such answer is due.
 

 (j) The Respondent. Unless the respondent claims a privilege or right properly available under applicable federal or state law, the respondent may be called as a witness by The Florida Bar to make specific and complete disclosure of all matters material to the issues. When the respondent is subpoenaed to appear and give testimony or to produce books, papers, or documents and refuses to answer or to produce such books, papers, or documents, or, having been duly sworn to testify, refuses to answer any proper question, the respondent may be cited for contempt of the court.
 

 (k) Complaining Witness. The complaining witness is not a party to the disciplinary proceeding, and shall have no rights other than those of any other witness. However, unless it is found to be impractical due to unreasonable delay or other good cause, and after the complaining witness has testified during the case in chief, the referee may grant the complaining witness the right to be present at any hearing when the respondent is also present. A complaining witness may be called upon to testify and produce evidence as any other witness. Neither unwillingness nor neglect of the complaining witness to cooperate, nor settlement, compromise, or restitution will excuse failure to complete any trial. The complaining witness shall have no right to appeal.
 

 (l) Parol Evidence. Evidence other than that contained in a written attorney-client contract may not be used in proceedings conducted under the Rules Regulating The Florida Bar to vary the terms of that contract, except competent evidence other than that contained in a written fee contract may be used only if necessary to resolve issues of excessive fees or excessive costs.
 

 (m) Referee’s Report.
 

 
 *85
 
 (1)
 
 Contents of Report.
 
 Within 30 days after the conclusion of a trial before a referee or 10 days after the referee receives the transcripts of all hearings, whichever is later, or within such extended period of time as may be allowed by the chief justice for good cause shown, the referee shall make a report and enter it as part of the record, but failure to enter the report in the time prescribed shall not deprive the referee of jurisdiction. The referee’s report shall include:
 

 (A) a finding of fact as to each item of misconduct of which the respondent is charged, which findings of fact shall enjoy the same presumption of correctness as the judgment of the trier of fact in a civil proceeding;
 

 (B) recommendations as to whether the respondent should be found guilty of misconduct justifying disciplinary measures;
 

 (C) recommendations as to the disciplinary measures to be applied;
 

 (D) a statement of any past disciplinary measures as to the respondent that are on record with the executive director of The Florida Bar or that otherwise become known to the referee through evidence properly admitted by the referee during the course of the proceedings (after a finding of guilt, all evidence of prior disciplinary measures may be offered by bar counsel subject to appropriate objection or explanation by respondent); and
 

 (E) a statement of costs incurred and recommendations as to the manner in which such costs should be taxed.
 

 (2)
 
 Filing.
 
 The referee’s report and record of proceedings shall in all cases be transmitted together to the Supreme Court of Florida. Copies of the report shall be served on the parties including staff counsel. Bar counsel will make a copy of the record, as furnished, available to other parties on request and payment of the actual costs of reproduction. The report of referee and record shall not be filed until the time for filing a motion to assess costs has expired and no motion has been filed or, if the motion was timely filed, until the motion has been considered and a ruling entered.
 

 (n) The Record.
 

 (1)
 
 Recording of Testimony.
 
 All hearings at which testimony is presented shall be attended by a court reporter who shall record all testimony. Transcripts of such testimony are not required to be filed in the matter, unless requested by a party, who shall pay the cost of transcription directly, or ordered by the referee, in which case the costs thereof are subject to assessment as elsewhere provided in these rules.
 

 (2)
 
 Contents.
 
 The record shall include all items properly filed in the cause including pleadings, recorded testimony, if transcribed, exhibits in evidence, and the report of the referee.
 

 (3)
 
 Preparation and Filing.
 
 The referee, with the assistance of bar counsel, shall prepare the record, certify that the record is complete, serve a copy of the index of the record on the respondent and The Florida Bar, and file the record with the office of the clerk of the Supreme Court of Florida.
 

 (4)
 
 Supplementing or Removing Items from the Record.
 
 The respondent and The Florida Bar may seek to supplement the record or have items removed from the record by filing a motion with the referee for such purpose, provided such motion is filed within 15 days of the service of the index. Denial of a motion to supplement the record or
 
 *86
 
 to remove an item from the record maybe reviewed in the same manner as provided for in the rule on appellate review under these rules.
 

 (o) Plea of Guilty by Respondent. At any time during the progress of disciplinary proceedings, a respondent may tender a plea of guilty.
 

 (1)
 
 Before Filing of Complaint.
 
 If the plea is tendered before filing of a complaint by staff counsel, such plea shall be tendered in writing to the grievance committee or bar counsel.
 

 (2)
 
 After Filing of Complaint.
 
 If the complaint has been filed against the respondent, the respondent may enter a plea of guilty thereto by filing the same in writing with the referee to whom the cause has been assigned for trial. Such referee shall take such testimony thereto as may be advised, following which the referee will enter a report as otherwise provided.
 

 (3)
 
 Unconditional.
 
 An unconditional plea of guilty shall not preclude review as to disciplinary measures imposed.
 

 (4)
 
 Procedure.
 
 Except as herein provided, all procedure in relation to disposition of the cause on pleas of guilty shall be as elsewhere provided in these rules.
 

 (p) Cost of Review or Reproduction.
 

 (1) The charge for reproduction, when photocopying or other reproduction is performed by the bar, for the purposes of these rules shall be as determined and published annually by the executive director. In addition to reproduction charges, the bar may charge a reasonable fee incident to a request to review disciplinary records or for research into the records of disciplinary proceedings and identification of documents to be reproduced.
 

 (2) When the bar is requested to reproduce documents that are voluminous or is requested to produce transcripts in the possession of the bar, the bar may decline to reproduce the documents in the offices of the bar and shall inform the requesting person of the following options:
 

 (A) purchase of the transcripts from the court reporter service that produced them;
 

 (B) purchase of the documents from the third party from whom the bar received them; or
 

 (C) designation of a commercial photocopy service to which the bar shall deliver the original documents to be copied, at the requesting party’s expense, provided the photocopy service agrees to preserve and return the original documents and not to release them to any person without the bar’s consent.
 

 (q) Costs.
 

 (1)
 
 Taxable Costs.
 
 Taxable costs of the proceedings shall include only:
 

 (A) investigative costs, including travel and out-of-pocket expenses;
 

 (B) court reporters’ fees;
 

 (C) copy costs;
 

 (D) telephone charges;
 

 (E) fees for translation services;
 

 (F) witness expenses, including travel and out-of-pocket expenses;
 

 (G) travel and out-of-pocket expenses of the referee;
 

 (H) travel and out-of-pocket expenses of counsel in the proceedings, including of the respondent if acting as counsel; and
 

 (I) an administrative fee in the amount of $1250 when costs are assessed in favor of the bar.
 

 
 *87
 
 (2)
 
 Discretion of Referee.
 
 The referee shall have discretion to award costs and, absent an abuse of discretion, the referee’s award shall not be reversed.
 

 (3)
 
 Assessment of Bar Costs.
 
 When the bar is successful, in whole or in part, the referee may assess the bar’s costs against the respondent unless it is shown that the costs of the bar were unnecessary, excessive, or improperly authenticated.
 

 (4)
 
 Assessment of Respondent’s Costs.
 
 When the bar is unsuccessful in the prosecution of a particular matter, the referee may assess the respondent’s costs against the bar in the event that there was no justiciable issue of either law or fact raised by the bar.
 

 (5)
 
 Time for Filing Motion to Assess Costs.
 
 A party shall file a statement of costs incurred in a referee proceeding and a request for payment of same within 15 days after written notice by the referee that the report of referee has been completed or at the time that a guilty plea for consent judgment is filed. Failure to timely file a motion, without good cause, shall be considered as a waiver of the right to request reimbursement of costs or to object to a request for reimbursement of costs. The party from whom costs are sought shall have 10 days from the date the motion was filed in which to serve an objection. Because costs may not be assessed against the respondent unless the bar is successful in some part and because costs may not be assessed against the bar unless the referee finds the lack of a justiciable issue of law or fact, this subdivision shall not be construed to require the filing of a motion to assess costs before the referee when doing so is not appropriate.
 

 Court Comment
 

 A comprehensive referee’s report under subdivision (m) is beneficial to a reviewing court so that the court need not make assumptions about the referee’s intent or return the report to the referee for clarification. The referee’s report should list and address each issue in the case and cite to available authority for the referee’s recommendations concerning guilt and discipline.
 

 Comment
 

 Provisions for assessment of costs in proceedings before the Supreme Court of Florida are addressed in rule 3-7.7.
 

 RULE 3-7.7 PROCEDURES BEFORE SUPREME COURT OF FLORÍDA
 

 All reports of a referee and all judgments entered in proceedings under these rules shall be subject to review by the Supreme Court of Florida in the following manner:
 

 (a) Right of Review.
 

 (1) Any party to a proceeding may procure review of a report of a referee or a judgment, or any specified portion thereof, entered under these rules.
 

 (2) The Supreme Court of Florida shall review all reports and judgments of referees recommending probation, public reprimand, suspension, disbarment, or resignation pending disciplinary proceedings.
 

 (3) A referee’s report that does not recommend probation, public reprimand, suspension, disbarment, or resignation pending disciplinary proceedings, shall be final if not appealed.
 

 (b) Appointment of Bar Counsel. The board or staff counsel, if authorized by the board, may appoint new or additional bar counsel to represent The Florida Bar on any review.
 

 
 *88
 
 (c) Procedure for Review. Review by the Supreme Court of Florida shall be in accordance with the following procedures:
 

 (1)
 
 Time for Review.
 
 Proceedings for review shall be commenced within 60 days of the date on which the referee serves a copy of the referee report on the respondent and The Florida Bar. Prompt written notice of the board’s action, if any, shall be communicated to the respondent. The proceeding shall be commenced by filing with the Supreme Court of Florida a petition for review, specifying those portions of the report of a referee sought to be reviewed. Within 20 days after service of such petition, the opposing party may file a cross-petition for review specifying any additional portion of the report that said party desires reviewed. The filing of such petition or cross-petition shall be jurisdictional as to a review to be procured as a matter of right, but the court may, in its discretion, consider a late-filed petition or cross-petition upon a showing of good cause.
 

 (2)
 
 Record on Review.
 
 The report and record filed by the referee shall constitute the record on review. If hearings were held at which testimony was heard, but no transcripts thereof were filed in the matter, the party seeking review shall order preparation of all such transcripts, file the original thereof with the court, and serve copies on the opposing party, on or before the time of filing of the initial brief, as provided elsewhere in this rule. The party seeking review shall be responsible for, and pay directly to the court reporter, the cost of preparation of transcripts. Failure to timely file and serve all of such transcripts may be cause for dismissal of the party’s petition for review.
 

 (3)
 
 Briefs.
 
 The party first seeking review shall file a brief in support of the petition for review within 30 days of the filing of the petition. The opposing party shall file an answer brief within 20 days after the service of the brief of the party seeking review, which answer brief shall also support any cross-petition for review. The party originally seeking review may file a reply brief within 10 days after the service of the answer brief.
 

 (4)
 
 Oral Argument.
 
 Request for oral argument may be filed in any case wherein a petition for review is filed, at the time of filing the first brief. If no request is filed, the case will be disposed of without oral argument unless the court orders otherwise.
 

 (5)
 
 Burden.
 
 Upon review, the burden shall be upon the party seeking review to demonstrate that a report of a referee sought to be reviewed is erroneous, unlawful, or unjustified.
 

 (6)
 
 Judgment of Supreme Court of Florida.
 

 (A) Authority. After review, the Supreme Court of Florida shall enter an appropriate order or judgment. If no review is sought of a report of a referee entered under the rules and filed in the court, the findings of fact shall be deemed conclusive and the disciplinary measure recommended by the referee shall be the disciplinary measure imposed by the court, unless the court directs the parties to submit briefs or oral argument directed to the suitability of the disciplinary measure recommended by the referee. A referee’s report that becomes final when no review has been timely filed shall be reported in an order of the Supreme Court of Florida.
 

 
 *89
 
 (B) Form. The judgment of the court shall include, where appropriate, .judgment in favor of:
 

 (i) the party to whom costs are awarded;
 

 (ii) the person(s) to whom restitution is ordered; or
 

 (iii) the person(s) to whom a fee is ordered to be forfeited.
 

 (7)
 
 Procedures on Motions to Tax Costs.
 
 The court may consider a motion to assess costs if the motion is filed within 10 days of the entry of the court’s order or opinion where the referee finds the respondent not guilty at trial and the supreme court, upon review, finds the respondent guilty of at least 1 rule violation and does not remand the case to the referee for further proceedings or where the respondent was found guilty at trial and the supreme court, upon review, finds the respondent not guilty of any rule violation. The party from whom costs are sought shall have 10 days from the date the motion was filed in which to serve an objection. Failure to timely file a petition for costs or to timely serve an objection, without good cause, shall be considered a waiver of request or objection to the costs and the court may enter an order without further proceedings. If an objection is timely filed, or the court otherwise directs, the motion shall be remanded to the referee. Upon remand, the referee shall file a supplemental report that shall include a statement of costs incurred and the manner in which the costs should be assessed. Any party may seek review of the supplemental report of referee in the same manner as provided for in this rule for other reports of the referee.
 

 (d) Precedence of Proceedings. Petitions for review in disciplinary proceedings shall take precedence over all other civil causes in the Supreme Court of Florida.
 

 (e) Extraordinary Writs. All applications for extraordinary writs that are concerned with disciplinary proceedings under these rules of discipline shall be made to the Supreme Court of Florida.
 

 (f) Florida Rules of Appellate Procedure. To the extent necessary to implement this rule and if not inconsistent herewith, the Florida Rules of Appellate Procedure shall be applicable to petitions for review in disciplinary proceedings, provided service on The Florida Bar shall be accomplished by service on bar counsel and staff counsel.
 

 (g) Contempt by Respondent. Whenever it is alleged that a respondent is in contempt in a disciplinary proceeding, a petition for an order to show cause why the respondent should not be held in contempt and the proceedings on such petition may be filed in and determined by the Supreme Court of Florida or as provided under rule 3 — 7.11(f).
 

 (h) Pending Disciplinary Cases. If disbarment is ordered by the court, dismissal without prejudice of other pending eases against the respondent may be ordered in the court’s disbarment order.
 

 Comment
 

 Subdivision (c)(7) of this rule applies to situations which arise when a referee finds a respondent not guilty but the supreme court, on review, finds the respondent guilty and does not remand the case back to the referee for further proceedings.
 
 See,
 
 e.r;.,
 
 The Florida Bar v. Pape,
 
 918 So.2d 240 (Fla.2005). A similar situation may also occur where a respondent is found guilty at trial, but not guilty by the supreme court on review of the referee’s report and recommendation.
 

 
 *90
 
 RULE 3-7.11 GENERAL RULE OF PROCEDURE
 

 (a) Time is Directory. Except as provided herein, the time intervals required are directory only and are not jurisdictional. Failure to observe such directory intervals may result in contempt of the agency having jurisdiction or of the Supreme Court of Florida, but will not prejudice the offending party except where so provided.
 

 (b) Process. Every member of The Florida Bar is charged with notifying The Florida Bar of a change of mailing address or military status. Mailing of registered or certified papers or notices prescribed in these rules to the last mailing address of an attorney as shown by the official records in the office of the executive director of The Florida Bar shall be sufficient notice and service unless this court shall direct otherwise. Every attorney of another state who is permitted to practice for the purpose of a specific case before a court of record of this state may be served by registered or certified mail addressed to said attorney in care of the Florida attorney who was associated or appeared with the attorney in the specific case for which the out-of-state attorney was permitted to practice or addressed to said attorney at any address listed by the attorney in the pleadings in such case.
 

 Provided, however, when a person is represented by counsel service of process and notices shall be directed to counsel.
 

 (c) Notice in Lieu of Process. Every member of The Florida Bar is within the jurisdiction of the Supreme Court of Florida and its agencies under these rules, and service of process is not required to obtain jurisdiction over respondents in disciplinary proceedings; but due process requires the giving of reasonable notice and such shall be effective by the service of the complaint upon the respondent by mailing a copy thereof by registered or certified mail return receipt requested to the last-known address of the respondent according to the records of The Florida Bar or such later address as may be known to the person effecting the service.
 

 When the respondent is represented by counsel in the matter, due process is satisfied by the service of the complaint upon the respondent’s counsel by mailing a copy thereof by registered or certified mail return receipt requested to the last known address of the respondent’s counsel according to the records of The Florida Bar or such later address as may be known to the person effecting the service.
 

 (d)Issuance of Subpoenas. Subpoenas for the attendance of witnesses and the production of documentary evidence other than before a circuit court shall be issued as follows:
 

 (1)
 
 Referees.
 
 Subpoenas for the attendance of witnesses and production of documentary evidence before a referee shall be issued by the referee and shall be served in the manner provided by law for the service of process or by an investigator employed by The Florida Bar.
 

 (2)
 
 Grievance Committees.
 
 Subpoenas for the attendance of witnesses and the production of documentary evidence shall be issued by the chair or vice-chair of a grievance committee in pursuance of an investigation authorized by the committee. Such subpoenas may be served by any member of such committee, by an investigator employed by The Florida Bar, or in the manner provided by law for the service of process.
 

 (3)
 
 Bar Counsel Investigations.
 
 Subpoenas for the attendance of witnesses and the production of documentary evidence before bar counsel when same is conducting an initial investigation shall be issued by the chair or vice-chair of a
 
 *91
 
 grievance committee to which the matter will be assigned, if appropriate. Such subpoenas may be served by an investigator employed by The Florida Bar or in the manner provided by law for the service of process.
 

 (4)
 
 After Grievance Committee Action, But Before Appointment of Referee.
 
 Subpoenas for the attendance of witnesses and the production of documentary evidence before bar counsel when same is conducting further investigation after action by a grievance committee, but before appointment of a referee, shall be issued by the chair or vice-chair of the grievance committee to which the matter was assigned. Such subpoenas may be served by an investigator employed by The Florida Bar or in the manner provided by law for the service of process.
 

 (5)
 
 Board of Governors.
 
 Subpoenas for the attendance of witnesses and the production of documentary evidence before the board of governors shall be issued by the executive director and shall be served by an investigator employed by The Florida Bar or in the manner provided by law for the service of process.
 

 (6)
 
 Confidential Proceedings,
 
 [no change]
 

 (7)
 
 Contempt.
 

 (A) Generally. Any persons who without adequate excuse fail to obey such a subpoena served upon them may be cited for contempt of this court in the manner provided by this rule.
 

 (B) Subpoenas for Trust Accounting Records. Members of the bar are under an obligation to maintain trust accounting records as required by these rules and, as a condition of the privilege of practicing law in Florida, may not assert any privilege personal to the lawyer that may be applicable to production of such records in any disciplinary proceedings under these rules.
 

 (i) A respondent who has been found in willful noncompliance with a subpoena for trust accounting records may be cited for contempt under this rule only if the disciplinary agency that issued the subpoena shall have first found that no good cause existed for the respondent’s failure to comply.
 

 (ii) The disciplinary agency that issued the subpoena shall hear the issue of noncompliance and issue findings thereon within 30 days of a request for issuance of the notice of noncompliance.
 

 (8)Assistance to Other Lawyer Disciplinary Jurisdictions.
 
 Upon receipt of a subpoena certified to be duly issued under the rules or laws of another lawyer disciplinary jurisdiction, the executive director may issue a subpoena directing a person domiciled or found within the state of Florida to give testimony and/or produce documents or other things for use in the other lawyer disciplinary proceedings as directed in the subpoena of the other jurisdiction. The practice and procedure applicable to subpoenas issued under this subdivision shall be that of the other jurisdiction, except that:
 

 (A) the testimony or production shall be only in the county wherein the person resides or is employed, or as otherwise fixed by the executive director for good cause shown; and
 

 (B) compliance with any subpoena issued pursuant to this subdivision and contempt for failure in this respect shall be sought as elsewhere provided in these rules.
 

 
 *92
 
 (e) Oath of Witness. Every witness in every proceeding under these rules shall be sworn to tell the truth. Violation of this oath shall be an act of contempt of this court.
 

 (f) Contempt. When a disciplinary agency, as defined elsewhere in these rules, finds that a person is in contempt under these rules, such person may be cited for contempt in the following manner:
 

 (1)
 
 Generally.
 

 (4A) Petition for Contempt and Order to Show Cause. When a person is found in contempt by a disciplinary agency, bar counsel shall file a petition for contempt and order to show cause with the Supreme Court of Florida.
 

 (2B) Order to Show Cause; Suspension for Noncompliance with Subpoena for Trust Accounting Records. On review of a petition for contempt and order to show cause, the supreme court may issue an order directing the person to show cause why such person should not be held in contempt and appropriate sanctions imposed.
 

 On review of a petition for contempt and order to show cause for noncompliance with a trust accounting subpoena the supreme court may also issue an order suspending the respondent from the practice of law in Florida until such time as the member fully complies with the subpoena and any further order of the court.
 

 The order of the supreme court shall fix a time for a response.
 

 (C) Response to Order to Show Cause.
 

 (i) Generally. Any member subject to an order to show cause shall file a response as directed by the court.
 

 (ii) Noncompliance with a Subpoena for Trust Account Records. Any member subject to an order to show cause for noncompliance with a subpoena for trust accounting records may request the court:
 

 a. within 10 days of the filing of the petition for contempt and order to show cause, or such other time as the court may direct in the order to show cause, to withhold entry of an order of suspension; or
 

 b. at any time after entry of an order of suspension, to terminate or modify the order of suspension. The court may terminate, modify, or withhold entry of an order of suspension if the member establishes good cause for failure to comply with the subpoena for trust account records.
 

 (3D) Failure to Respond to Order to Show Cause. Upon failure to timely respond to an order to show cause, the matters alleged in the petition shall be deemed admitted and the supreme court may enter a judgment of contempt and impose appropriate sanctions. Failure to respond may be an additional basis on which a judgment of contempt may be entered and sanctions imposed.
 

 (4E) Reply of The Florida Bar. When a timely response to an order to show cause is filed, The Florida Bar shall have 10 days, or such other time as the supreme court may order, from the date of filing in which to file a reply.
 

 (5F) Supreme Court Action. After expiration of the time to respond to an order to show cause and no response is timely filed, or after the reply of
 
 *93
 
 The Florida Bar has been filed, or the time therefore has expired without such filing, the supreme court shall review the matter and issue an appropriate judgment. Such judgment may include any sanction that a court may impose for contempt and, if the person found in contempt is a member of The Florida Bar, may include any disciplinary sanction authorized under these rules.
 

 If the supreme court requires factual findings, the supreme court may direct appointment of a referee as elsewhere provided in these rules. Proceedings for contempt referred to a referee shall be processed in the same manner as disciplinary proceedings under these rules, including but not limited to the procedures provided therein for conditional guilty pleas for consent judgments. If the court determines it necessary to refer a request to terminate, modify, or withhold entry of an order of suspension based on a petition for contempt and order to show cause for noncompliance with a subpoena for trust account records to a referee for receipt of evidence, the referee proceedings shall be expedited and conducted in the same manner as proceedings before a referee on a petition to terminate, modify, or withhold an order of emergency suspension, as elsewhere provided in these rules.
 

 (@G) Preparation and Filing of Report of Referee and Record. The referee shall prepare and file a report and the record in cases brought under this rule. The procedures provided for in the rule on procedure before a referee elsewhere under these rules shall apply to the preparation, filing, and review of the record herein.
 

 (¥H) Appellate Review of Report of Referee. Any party to the contempt proceedings may seek review of the report of referee in the manner provided in the rule on appellate review of disciplinary proceedings under these rules.
 

 (2)
 
 Failure to Respond to Official Bar Inquiries.
 

 (A) Petition for Contempt and Order to Show Cause. When a respondent is found in contempt by a disciplinary agency for failure to respond to an official bar inquiry without good cause shown, bar counsel shall file a petition for contempt and order to show cause with the Supreme Court of Florida.
 

 (B) Response to Petition for Contempt and Order to Show Cause. The respondent shall have 10 days from the date of filing of a petition authorized by this subdivision in which to file a response.
 

 (C) Supreme Court Action.
 

 (i) Entry of Suspension Order. After a response has been filed, or the time for a'response has expired, and unless otherwise ordered by the court, an order shall be entered suspending the respondent for failure to respond to an official bar inquiry until further order of the court.
 

 (ii) Assignment to Referee. If the supreme court requires factual findings, the supreme court may direct appointment of a referee as elsewhere provided in these rules. Proceedings for contempt referred to a referee shall be processed in the same manner as disciplinary proceedings under these rules, including but not limited to the provisions provided for conditional guilty pleas for consent judgments.
 

 
 *94
 
 (g) Court Reporters. Court reporters who are employees of The Florida Bar may be appointed to report any disciplinary proceeding. If the respondent objects at least 48 hours in advance of the matter to be recorded, an independent contract reporter may be retained. Reasonable costs for independent court reporter service shall be taxed to a respondent for payment to The Florida Bar.
 

 (h) Disqualification as Trier and Attorney for Respondent Due to Conflict.
 

 (1)
 
 Grievance Committee Members, Members of the Board of Governors, and Employees of The Florida Bar.
 
 No grievance committee member, member of the board of governors, or employee of The Florida Bar shall represent a party other than The Florida Bar in disciplinary proceedings authorized under these rules.
 

 (2)
 
 Former Grievance Committee Members, Former Board Members, and Former Employees.
 
 No former member of a grievance committee, former member of the board of governors, or former employee of The Florida Bar shall represent any party other than The Florida Bar in disciplinary proceedings authorized under these rules if personally involved to any degree in the matter while a member of the grievance committee, the board of governors, or while an employee of The Florida Bar.
 

 A former member of the board of governors, former member of any grievance committee, or former employee of The Florida Bar who did not participate personally in any way in the investigation or prosecution of the matter or in any related matter in which the attorney seeks to be a representative, and who did not serve in a supervisory capacity over such investigation or prosecution, shall not represent any party except The Florida Bar for 1 year after such service without the express consent of the board.
 

 (3)
 
 Partners, Associates, Employers, or Employees of the Firms of Grievance Committee Members or Board of Governors Members Precluded From Representing Parties Other Than The Florida Bar.
 
 Members of the firms of grievance committee members or board members shall not represent any party other than The Florida Bar in disciplinary proceedings authorized under these rules without the express consent of the board.
 

 (4)
 
 Partners, Associates, Employers, or Employees of the Firms of Fortner Grievance Committee Members or Former Board of Governors Members Precluded From Representing Parties Other Than The Florida Bar.
 
 Attorneys in the firms of former board members or former grievance committee members shall not represent any party other than The Florida Bar in disciplinary proceedings authorized under these rules for 1 year after the former member’s service without the express consent of the board.
 

 (i) Proceedings After Disbarment. The respondent may consent to or the court may order further proceedings after disbarment, which may include: an audit of trust, operating, or personal bank accounts, the cost of which may be assessed as provided elsewhere in these rules; a requirement for the respondent to provide a financial affidavit attesting to personal and business finances; and maintenance of a current mailing address for a stated period of time.
 

 RULE 3-7.13 INCAPACITY NOT RELATED TO MISCONDUCT
 

 (a) Proceedings Without Adjudication of Incompetence-or- Hospitalization Under the Florida Mental-Health-ActCias-sification and Effect of Incapacity.
 
 *95
 
 Whenever an attorney who has not been adjudged incompetent is incapable of practicing law because of physical or mental illness, incapacity, or other infirmity, the attorney may be classified as an inactive member and shall refrain from the practice of law for such reason even though no misconduct is alleged or proved.
 

 (b) Applicable Rules of Procedure. Proceedings under this rule shall be processed under the Rules of Discipline in the same manner as proceedings involving acts of misconduct.
 

 (c) Reinstatement to Practice. A member who has been classified as inactive under this rule may be reinstated in the same manner as in proceedings for reinstatement after suspension for acts of misconduct.
 

 (bd) Proceedings Upon Adjudication of Incompetencelncapacity or Hospitalization Under the Florida Mental Health Act or Under the Authority of Applicable Law. An lawyerattorney who has been adjudicated insane or mentally tice of law or is hospitalized under the Florida Mental Health Act or the authority of other applicable law concerning the capability of an attorney to practice law shallmay be classified as an inactive member and shall refrain from the practice of law. Upon receipt of notice that a member has been adjudicated incompetentes incapacitated or is hospitalized under the Florida Mental Health Act or the authority of other applicable law concerning the capability of an attorney to practice law, The Florida Bar shall file notice thereof with the Supreme Court of Florida. Thereafter the court shall issue an order classifying the member as an inactive member.
 

 If an order of restoration is entered by a court having jurisdiction or the lawyerat-torney is discharged from hospitalization under the Florida Mental Health Act or the authority of other applicable law concerning the capability of an attorney to practice law, the lawyerattorney may be reinstated in the same manner as in proceedings for reinstatement after suspension for acts of misconduct.
 

 (e) Proceedings Upon Consent to Incapacity. An attorney may consent to incapacity not for misconduct in the same manner as provided in rule 3-7.9 of these Rules Regulating The Florida Bar.
 

 RULE 3-7.17 VEXATIOUS CONDUCT AND LIMITATION ON FILINGS
 

 (a) Definition. Vexatious conduct is conduct that amounts to abuse of the bar disciplinary process by use of inappropriate, repetitive, or frivolous actions or communications of any kind directed at or concerning any participant or agency in the bar disciplinary process such as the complainant, the respondent, a grievance committee member, the grievance committee, the bar, the referee, or the Supreme Court of Florida, or an agent, servant, employee, or representative of these individuals or agencies.
 

 (b) Authority of the Court. Only the Supreme Court of Florida has the authority to enter an order under the provisions of this rule.
 

 (c) Procedure.
 

 (1)
 
 Commencement.
 
 Proceedings under this rule may be commenced on the court’s own motion, by a report and recommendation of the referee, or a petition of The Florida Bar, acting for itself, the grievance committees or their members, authorized by its executive committee and signed by its executive director, demonstrating that an individual has abused the disciplinary process by engaging in vexatious conduct. The court may enter an order directing the
 
 *96
 
 individual(s) engaging in the vexatious conduct to show good cause why the court should not enter an order prohibiting continuation of the conduct and/or imposing limitations on future conduct.
 

 (2)
 
 Order To Show Cause.
 
 The court, acting on its own motion, or on the recommendation of the referee or petition of the bar, may enter an order directing an individual to show cause why the court should not enter an order prohibiting continuation of the vexatious conduct and/or imposing limitations on future conduct. A copy of the order shall be served on the referee (if one has been appointed), the respondent, and The Florida Bar.
 

 (3)
 
 Response to Order to Show Cause.
 
 The individual(s) alleged to have engaged in vexatious conduct shall have 15 days from service of the order to show cause, or such other time as the court may allow, in which to file a response. Failure to file a response in the time provided, without good cause, shall be a default and the court may, without further proceedings, enter an order prohibiting or limiting future communications or filings as set forth in this rule, or imposing any other sanction(s) that the court is authorized to impose. A copy of any response shall be served on a referee (if one has been appointed), the respondent, and The Florida Bar.
 

 (4)
 
 Reply.
 
 The referee (if one has been appointed), the respondent, and The Florida Bar shall have 10 days from the filing of a response to an order to show cause entered under this rule in which to file a reply. Failure to file a reply in the time provided, without good cause, shall prohibit a reply.
 

 (5)
 
 Referral to Referee.
 
 The court may refer proceedings under this rule to a referee for taking testimony and receipt of evidence. Proceedings before a referee under this subdivision shall be conducted in the same manner as proceedings before a referee as set forth in rule 3-7.6 of these rules.
 

 (d) Court Order.
 

 (1)
 
 Rejection of Communications.
 
 An order issued under this rule may contain provisions permitting the clerk of the Supreme Court of Florida, referee, The Florida Bar, and/or any other individual(s) or entity(ies) specified in the order to reject or block vexatious communications as specifically designated in the order. The order may authorize the individual(s), entity(ies), or group(s) specified in the order to block telephone calls made or electronic mail sent by an individual subject to an order issued under the authority of this rule.
 

 (2)
 
 Denial of Physical Access.
 
 The order may deny access to specific physical areas or locations to an individual subject to an order issued under the authority of this rule. The order may also allow the individual(s), entity(ies), or group(s) specified in the order to deny access to those areas or locations.
 

 (3)
 
 Prohibition of or Limitation on Filings.
 
 The order of the court may include a requirement that an individual subject to an order issued under the authority of this rule may be prohibited from submitting any future filings unless they are submitted solely by a member of The Florida Bar who is eligible to practice law or another person authorized to appear in the proceedings. If a person who is subject to an order issued under this rule is a member of The Florida Bar, that member may be prohibited from co-signing and submitting future filings.
 

 (e) Violation of Order. Violation of an order issued under this rule shall be considered as a matter of contempt and pro
 
 *97
 
 cessed as provided elsewhere in these Rules Regulating The Florida Bar-
 

 Comment
 

 This rule is enacted to address circumstances involving repetitive conduct of the type that goes beyond conduct that is merely contentious and unsuccessful. This rule addresses conduct that negatively affects the finite resources of our court system, resources that must be reserved for resolution of genuine disputes. As recognized by the United States Supreme Court, “every paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution’s limited resources. A part of the court’s responsibility is to see that these resources are allocated in a way that promotes the interests of justice.”
 
 In re McDonald,
 
 489 U.S. 180, 184[, 109 S.Ct. 993, 103 L.Ed.2d 158] (1989).
 

 This concept has also been recognized in bar disciplinary proceedings by the Supreme Court of Florida when the court stated: “Kandekore’s actions create a drain on the Court’s limited time, for with each filing the Court has, as it must, reviewed and considered repetitious and meritless arguments. Therefore, we conclude that a limitation on Kandekore’s ability to file repeated challenges to his long-final sanctions would further the constitutional right of access because it would permit this Court to devote its finite resources to the consideration of legitimate claims filed by others.”
 
 The Florida Bar re. Kandekore,
 
 932 So.2d 1005, 1006 (Fla.2006). Kandekore engaged in vexatious conduct after the court entered an order of disbarment.
 

 The Supreme Court of Florida has also limited the ability of a lawyer to file further pleadings while that lawyer’s disciplinary case(s) were in active litigation.
 
 The Florida Bar v. Thompson,
 
 979 So.2d 917 (Fla.2008).
 

 CHAPTER 4. RULES OF PROFESSIONAL CONDUCT
 

 4-1. CLIENT-LAWYER RELATIONSHIP
 

 RULE 4-1.5 FEES AND COSTS FOR LEGAL SERVICES
 

 (a) Illegal, Prohibited, or Clearly Excessive Fees and Costs. An attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or cost, or a fee generated by employment that was obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar. A fee or cost is clearly excessive when:
 

 (1) after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee or the cost exceeds a reasonable fee or cost for services provided to such a degree as to constitute clear overreaching or an unconscionable demand by the attorney; or
 

 (2) the fee or cost is sought or secured by the attorney by means of intentional misrepresentation or fraud upon the client, a nonclient party, or any court, as to either entitlement to, or amount of, the fee.
 

 (b) Factors to Be Considered in Determining Reasonable Fees and Costs.
 

 (1) Factors to be considered as guides in determining a reasonable fee include:
 

 (A) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
 

 (B) the likelihood that the acceptance of the particular employment
 
 *98
 
 will preclude other employment by the lawyer;
 

 (C) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
 

 (D) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
 

 (E) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
 

 (F) the nature and length of the professional relationship with the client;
 

 (G) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
 

 (H) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client’s ability to pay rested to any significant degree on the outcome of the representation. (2) Factors to be considered as guides
 

 in determining reasonable costs include:
 

 (A) the nature and extent of the disclosure made to the client about the costs;
 

 (B) whether a specific agreement exists between the lawyer and client as to the costs a client is expected to pay and how a cost is calculated that is charged to a client;
 

 (C) the actual amount charged by third party providers of services to the attorney;
 

 (D) whether specific costs can be identified and allocated to an individual client or a reasonable basis exists to estimate the costs charged;
 

 (E) the reasonable charges for providing in-house service to a client if the cost is an in-house charge for services; and
 

 (F) the relationship and past course of conduct between the lawyer and the client.
 

 All costs are subject to the test of reasonableness set forth in subdivision (a) above. When the parties have a written contract in which the method is established for charging costs, the costs charged thereunder shall be presumed reasonable.
 

 (c) Consideration of All Factors. In determining a reasonable fee, the time devoted to the representation and customary rate of fee need not be the sole or controlling factors. All factors set forth in this rule should be considered, and may be applied, in justification of a fee higher or lower than that which would result from application of only the time and rate factors.
 

 (d) Enforceability of Fee Contracts. Contracts or agreements for attorney’s fees between attorney and client will ordinarily be enforceable according to the terms of such contracts or agreements, unless found to be illegal, obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar, prohibited by this rule, or clearly excessive as defined by this rule.
 

 (e) Duty to Communicate Basis or Rate of Fee or Costs to Client. When the lawyer has not regularly represented the client, the basis or rate of the fee and costs shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation. A fee for legal services that is
 
 *99
 
 nonrefundable in any part shall be confirmed in writing and shall explain the intent of the parties as to the nature and amount of the nonrefundable fee. The test of reasonableness found in subdivision (b), above, applies to all fees for legal services without regard to their characterization by the parties.
 

 The fact that a contract may not be in accord with these rules is an issue between the attorney and client and a matter of professional ethics, but is not the proper basis for an action or defense by an opposing party when fee-shifting litigation is involved.
 

 (f) Contingent Fees. As to contingent fees:
 

 (1) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by subdivision (f)(3) or by law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial, or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
 

 (2) Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding whereby the lawyer’s compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only where such fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer or for the law firm representing the client. No lawyer or firm may participate in the fee without the consent of the client in writing. Each participating lawyer or law firm shall sign the contract with the client and shall agree to assume joint legal responsibility to the client for the performance of the services in question as if each were partners of the other lawyer or law firm involved. The client shall be furnished with a copy of the signed contract and any subsequent notices or consents. All provisions of this rule shall apply to such fee contracts.
 

 (3) A lawyer shall not enter into an arrangement for, charge, or collect:
 

 (A) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
 

 (B) a contingent fee for representing a defendant in a criminal case.
 

 (4) A lawyer who enters into an arrangement for, charges, or collects any fee in an action or claim for personal injury or for property damages or for death or loss of services resulting from personal injuries based upon tortious conduct of another, including products liability claims, whereby the compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only under the following requirements:
 

 (A) The contract shall contain the following provisions:
 

 (i) “The undersigned client has, before signing this contract, re
 
 *100
 
 ceived and read the statement of client’s rights and understands each of the rights set forth therein. The undersigned client has signed the statement and received a signed copy to refer to while being represented by the undersigned attorney(s).”
 

 (ii) “This contract may be can-celled by written notification to the attorney at any time within 3 business days of the date the contract was signed, as shown below, and if cancelled the client shall not be obligated to pay any fees to the attorney for the work performed during that time. If the attorney has advanced funds to others in representation of the client, the attorney is entitled to be reimbursed for such amounts as the attorney has reasonably advanced on behalf of the client.”
 

 (B) The contract for representation of a client in a matter set forth in subdivision (f)(4) may provide for a contingent fee arrangement as agreed upon by the client and the lawyer, except as limited by the following provisions:
 

 (i) Without prior court approval as specified below, any contingent fee that exceeds the following standards shall be presumed, unless rebutted, to be clearly excessive:
 

 a.Before the filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action:
 

 1.33 1/3% of any recovery up to $1 million; plus
 

 2. 30% of any portion of the recovery between $1 million and $2 million; plus
 

 3. 20% of any portion of the recovery exceeding $2 million.
 

 b. After the filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action, through the entry of judgment:
 

 1. 40% of any recovery up to $1 million; plus
 

 2. 30% of any portion of the recovery between $1 million and $2 million; plus
 

 3. 20% of any portion of the recovery exceeding $2 million.
 

 c. If all defendants admit liability at the time of filing their answers and request a trial only on damages:
 

 1. 33 1/3% of any recovery up to $1 million; plus
 

 2. 20% of any portion of the recovery between $1 million and $2 million; plus
 

 3. 15% of any portion of the recovery exceeding $2 million.
 

 d. An additional 5% of any recovery after institution of any appellate proceeding is filed or post-judgment relief or action is required for recovery on the judgment.
 

 (ii) If any client is unable to obtain an attorney of the client’s choice because of the limitations set forth in subdivision (f)(4)(B)(i), the client may petition the court in which the matter would be filed, if litigation is necessary, or if such court will not accept jurisdiction for the fee division, the circuit court wherein the
 
 *101
 
 cause of action arose, for approval of any fee contract between the client and an attorney of the client’s choosing. Such authorization shall be given if the court determines the client has a complete understanding of the client’s rights and the terms of the proposed contract. The application for authorization of such a contract can be filed as a separate proceeding before suit or simultaneously with the filing of a complaint. Proceedings thereon may occur before service on the defendant and this aspect of the file may be sealed. A petition under this subdivision shall contain a certificate showing service on the client and, if the petition is denied, a copy of the petition and order denying the petition shall be served on The Florida Bar in Tallahassee by the member of the bar who filed the petition. Authorization of such a contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive under subdivisions (a) and (b).
 

 (iii) Subject to the provisions of 4-1.5(f)(4)(B)(i) and (ii) a lawyer who enters into an arrangement for, charges, or collects any fee in an action or claim for medical liability whereby the compensation is dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall provide the language of article I, section 26 of the Florida Constitution to the client in writing and shall orally inform the client that:
 

 a.Unless waived, in any medical liability claim involving a contingency fee, the claimant is entitled to receive no less than 70% of the first $250,000.00 of all damages received by the claimant, exclusive of reasonable and customary costs, whether received by judgment, settlement, or otherwise, and regardless of the number of defendants. The claimant is entitled to 90% of all damages in excess of $250,000.00, exclusive of reasonable and customary costs and regardless of the number of defendants.
 

 b. If a lawyer chooses not to accept the representation of a client under the terms of article I, section 26 of the Florida Constitution, the lawyer shall advise the client, both orally and in writing of alternative terms, if any, under which the lawyer would accept the representation of the client, as well as the client’s right to seek representation by another lawyer willing to accept the representation under the terms of article I, section 26 of the Florida Constitution, or a lawyer willing to accept the representation on a fee basis that is not contingent.
 

 c. If any client desires to waive any rights under article I, section 26 of the Florida Constitution in order to obtain a lawyer of the client’s choice, a client may do so by waiving such rights in writing, under oath, and in the form provided in this rule. The-lawyer shall provide each client a copy of the written waiver and shall afford each client a full and complete opportunity to understand the rights being waived as set forth in the waiver. A copy of the waiver, signed by each client and lawyer, shall be given to each client to retain, and the lawyer shall keep a copy in the lawyer’s file pertaining to the client.
 
 *102
 
 The waiver shall be retained by the lawyer with the written fee contract and closing statement under the same conditions and requirements provided in 4-1.5(f)(5).
 

 WAIVER OF THE CONSTITUTIONAL RIGHT PROVIDED IN ARTICLE I, SECTION 26 OF THE FLORIDA CONSTITUTION
 

 On November 2, 2004, voters in the State of Florida approved The Medical Liability Claimant’s Compensation Amendment that was identified as Amendment 3 on the ballot. The amendment is set forth below:
 

 The Florida Constitution
 

 Article I, Section 26 is created to read “Claimant’s right to fair compensation.” In any medical liability claim involving a contingency fee, the claimant is entitled to receive no less than 70% of the first $250,000 in all damages received by the claimant, exclusive of reasonable and customary costs, whether received by judgment, settlement or otherwise, and regardless of the number of defendants. The claimant is entitled to 90% of all damages in excess of $250,000, exclusive of reasonable and customary costs and regardless of the number of defendants. This provision is self-executing and does not require implementing legislation.
 

 The undersigned client understands and acknowledges that (initial each provision):
 

 _ I have been advised that signing this waiver releases an important constitutional right; and
 

 _ I have been advised that I may consult with separate counsel before signing this waiver; and that I may request a hearing before a judge to further explain this waiver; and
 

 _ By signing this waiver I agree to an increase in the attorney fee that might otherwise be owed if the constitutional provision listed above is not waived. Without prior court approval, the increased fee that I agree to may be up to the maximum contingency fee percentages set forth in Rule Regulating The Florida Bar 4-1.5(f)(4)(B)(i). Depending on the circumstances of my case, the maximum agreed upon fee may range from 33 1/3% to 40% of any recovery up to $1 million; plus 20% to 30% of any portion of the recovery between $1 million and $2 million; plus 15% to 20% of any recovery exceeding $2 million; and
 

 _ I have three (3) business days following execution of this waiver in which to cancel this waiver; and
 

 _ I wish to engage the legal services of the lawyers or law firms listed below in an action or claim for medical liability the fee for which is contingent in whole or in part upon the successful prosecution or settlement thereof, but I am unable to do so because of the provisions of the constitutional limitation set forth above. In consideration of the lawyers’ or law firms’ agreements to represent me and my desire to employ the lawyers or law firms listed below, I hereby knowingly, willingly, and voluntarily waive any and all rights and privileges that I may have under the constitutional provision set forth above, as apply to the contingency fee agreement only. Specifically, I waive the percentage restrictions that are the subject of the constitutional provision and confirm the fee percentages set forth in the contingency fee agreement; and
 

 _ I have selected the lawyers or law firms listed below as my counsel of choice in this matter and would not be able to engage their services without this waiv
 
 *103
 
 er; and I expressly state that this waiver is made freely and voluntarily, with full knowledge of its terms, and that all questions have been answered to my satisfaction.
 

 ACKNOWLEDGMENT BY CLIENT FOR PRESENTATION TO THE COURT
 

 The undersigned client hereby acknowledges, under oath, the following:
 

 I have read and understand this entire waiver of my rights under the constitutional provision set forth above.
 

 I am not under the influence of any substance, drug, or condition (physical, mental, or emotional) that interferes with my understanding of this entire waiver in which I am entering and all the consequences thereof.
 

 I have entered into and signed this waiver freely and voluntarily.
 

 I authorize my lawyers or law firms listed below to present this waiver to the appropriate court, if required for purposes of approval of the contingency fee agreement. Unless the court requires my attendance at a hearing for that purpose, my lawyers or law firms are authorized to provide this waiver to the court for its consideration without my presence.
 

 [[Image here]]
 

 [[Image here]]
 

 ATTORNEY
 

 (C) Before a lawyer enters into a contingent fee contract for representation of a client in a matter set forth in this rule, the lawyer shall provide the client with a copy of the statement of client’s rights and shall afford the client a full and complete opportunity to understand each of the rights as set forth therein. A copy of the statement, signed by both the client and the lawyer, shall be given to the client to retain and the lawyer shall keep a copy in the client’s file. The statement shall be retained by the lawyer with the written fee contract and closing statement under the same conditions and requirements as subdivision (f)(5).
 

 (D) As to lawyers not in the same firm, a division of any fee within subdivision (f)(4) shall be on the following basis:
 

 (i) To the lawyer assuming primary responsibility for the legal services on behalf of the client, a minimum of 75% of the total fee.
 

 (ii) To the lawyer assuming secondary responsibility for the legal services on behalf of the client, a maximum of 25% of the total fee. Any fee in excess of 25% shall be presumed to be clearly excessive.
 

 (iii) The 25% limitation shall not apply to those cases in which 2 or more lawyers or firms accept substantially equal active participation in the providing of legal services. In such circumstances counsel shall apply to the court in which the matter would be filed, if litigation is necessary, or if such court will not accept jurisdiction for the fee divi
 
 *104
 
 sion, the circuit court wherein the cause of action arose, for authorization of the fee division in excess of 25%, based upon a sworn petition signed by all counsel that shall disclose in detail those services to be performed. The application for authorization of such a contract may be filed as a separate proceeding before suit or simultaneously with the filing of a complaint, or within 10 days of execution of a contract for division of fees when new counsel is engaged. Proceedings thereon may occur before service of process on any party and this aspect of the file may be sealed. Authorization of such contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive. An application under this subdivision shall contain a certificate showing service on the client and, if the application is denied, a copy of the petition and order denying the petition shall be served on The Florida Bar in Tallahassee by the member of the bar who filed the petition. Counsel may proceed with representation of the client pending court approval, (iv) The percentages required by this subdivision shall be applicable after deduction of any fee payable to separate counsel retained especially for appellate purposes.
 

 (5) In the event there is a recovery, upon the conclusion of the representation, the lawyer shall prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating lawyer or law firm. A copy of the closing statement shall be executed by all participating lawyers, as well as the client, and each shall receive a copy. Each participating lawyer shall retain a copy of the written fee contract and closing statement for 6 years after execution of the closing statement. Any contingent fee contract and closing statement shall be available for inspection at reasonable times by the client, by any other person upon judicial order, or by the appropriate disciplinary agency.
 

 (6) In cases in which the client is to receive a recovery that will be paid to the client on a future structured or periodic basis, the contingent fee percentage shall be calculated only on the cost of the structured verdict or settlement or, if the cost is unknown, on the present money value of the structured verdict or settlement, whichever is less. If the damages and the fee are to be paid out over the long term future schedule, this limitation does not apply. No attorney may negotiate separately with the defendant for that attorney’s fee in a structured verdict or settlement when separate negotiations would place the attorney in a position of conflict.
 

 (g) Division of Fees Between Lawyers in Different Firms. Subject to the provisions of subdivision (f)(4)(D), a division of fee between lawyers who are not in the same firm may be made only if the total fee is reasonable and:
 

 (1) the division is in proportion to the services performed by each lawyer; or
 

 (2) by written agreement with the client:
 

 (A) each lawyer assumes joint legal responsibility for the representation and agrees to be available for consultation with the client; and
 

 (B) the agreement fully discloses that a division of fees will be made and the basis upon which the division of fees will be made.
 

 
 *105
 
 (h) Credit Plans. A lawyer or law firm may accept payment under a credit plan. No higher fee shall be charged and no additional charge shall be imposed by reason of a lawyer’s or law firm’s participation in a credit plan.
 

 (i) Arbitration Clauses. A lawyer shall not make an agreement with a potential client prospectively providing for mandatory arbitration of fee disputes without first advising that person in writing that the potential client should consider obtaining independent legal advice as to the advisability of entering into an agreement containing such mandatory arbitration provisions. A lawyer shall not make an agreement containing such mandatory arbitration provisions unless the agreement contains the following language in bold print:
 

 NOTICE: This agreement contains provisions requiring arbitration of fee disputes. Before you sign this agreement you should consider consulting with another lawyer about the advisability of making an agreement with mandatory arbitration requirements. Arbitration pi’oceedings are ways to resolve disputes without use of the court system. By entering into agreements that require arbitration as the way to resolve fee disputes, you give up (waive) your right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration.
 

 STATEMENT OF CLIENT’S RIGHTS FOR CONTINGENCY FEES
 

 Before you, the prospective client, arrange a contingent fee agreement with a lawyer, you should understand this statement of your rights as a client. This statement is not a part of the actual contract between you and your lawyer, but, as a prospective client, you should be aware of these rights:
 

 1. There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate or percentage as in any other contract. If you do not reach an agreement with 1 lawyer you may talk with other lawyers.
 

 2. Any contingent fee contract must be in writing and you have 3 business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within 3 business days of signing the contract. If you withdraw from the contract within the first 3 business days, you do not owe the lawyer a fee although you may be responsible for the lawyer’s actual costs during that time. If your lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the 3-day period, you may have to pay a fee for work the lawyer has done.
 

 3. Before hiring a lawyer, you, the client, have the right to know about the lawyer’s education, training, and experience. If you ask, the lawyer should tell you specifically about the lawyer’s actual experience dealing with cases similar to yours. If you ask, the lawyer should provide information about special training or knowledge and give you this information in writing if you request it.
 

 4. Before signing a contingent fee contract -with you, a lawyer must advise you whether the lawyer intends to handle your ease alone or whether other lawyers will be helping with the case. If your lawyer
 
 *106
 
 intends to refer the case to other lawyers, the lawyer should tell you what kind of fee sharing arrangement will be made with the other lawyers. If lawyers from different law firms will represent you, at least 1 lawyer from each law firm must sign the contingent fee contract.
 

 5. If your lawyer intends to refer your case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other lawyers, you should sign a new contract that includes the new lawyers. You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interests and is legally responsible for the acts of the other lawyers involved in the case.
 

 6. You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case. If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent. Your lawyer should give a reasonable estimate about future necessary costs. If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right to know periodically how much money your lawyer has spent on your behalf. You also have the right to decide, after consulting with your lawyer, how much money is to be spent to prepare a case. If you pay the expenses, you have the right to decide how much to spend. Your lawyer should also inform you whether the fee will be based on the gross amount recovered or on the amount recovered minus the costs.
 

 7. You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case. Those adverse consequences might include money that you might have to pay to your lawyer for costs and liability you might have for attorney’s fees, costs, and expenses to the other side.
 

 8. You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money. The statement must list all of the financial details of the entire case, including the amount recovered, all expenses, and a precise statement of your lawyer’s fee. Until you approve the closing statement your lawyer cannot pay any money to anyone, including you, without an appropriate order of the court. You also have the right to have every lawyer or law firm working on your case sign this closing statement.
 

 9. You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of your lawyer’s ability.
 

 10. You, the client, have the right to make the final decision regarding settlement of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial must be immediately communicated and you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.
 

 11. If at any time you, the client, believe that your lawyer has charged an excessive or illegal fee, you have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call 850/561-5600, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire
 
 *107
 
 another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit, unless your fee contract provides for arbitration. You can request, but may not require, that a provision for arbitration (under Chapter 682, Florida Statutes, or under the fee arbitration rule of the Rules Regulating The Florida Bar) be included in your fee contract.
 

 [[Image here]]
 

 Comment
 

 Bases or rate of fees and costs
 

 When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee. The conduct of the lawyer and client in prior relationships is relevant when analyzing the requirements of this rule. In a new client-lawyer relationship, however, an understanding as to the fee should be promptly established. It is not necessary to recite all the factors that underlie the basis of the fee but only those that are directly involved in its computation. It is sufficient, for example, to state the basic rate is an hourly charge or a fixed amount or an estimated amount, or to identify the factors that may be taken into account in finally fixing the fee. Although hourly billing or a fixed fee may be the most common bases for computing fees in an area of practice, these may not be the only bases for computing fees. A lawyer should, where appropriate, discuss alternative billing methods with the client. When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. A written statement concerning the fee reduces the possibility of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer’s customary fee schedule is sufficient if the basis or rate of the fee is set forth.
 

 General overhead should be accounted for in a lawyer’s fee, whether the lawyer charges hourly, flat, or contingent fees. Filing fees, transcription, and the like should be charged to the client at the actual amount paid by the lawyer. A lawyer may agree with the client to charge a reasonable amount for in-house costs or services. In-house costs include items such as copying, faxing, long distance telephone, and computerized research. In-house services include paralegal services, investigative services, accounting services, and courier services. The lawyer should sufficiently communicate with the client regarding the costs charged to the client so that the client understands the amount of costs being charged or the method for calculation of those costs. Costs appearing in sufficient detail on closing statements and approved by the parties to the transaction should meet the requirements of this rule.
 

 Rule 4-1.8(e) should be consulted regarding a lawyer’s providing financial assistance to a client in connection with litigation.
 

 In order to avoid misunderstandings concerning the nature of legal fees, written documentation is required when any aspect of the fee is nonrefundable. A written contract provides a method to resolve misunderstandings and to protect the lawyer in the event of continued misunderstanding. Rule 4-1.5(e) does not require the client to sign a written document me
 
 *108
 
 morializing the terms of the fee. A letter from the lawyer to the client setting forth the basis or rate of the fee and the intent of the parties in regard to the nonrefundable nature of the fee is sufficient to meet the requirements of this rule.
 

 All legal fees and contracts for legal fees are subject to the requirements of the Rules Regulating The Florida Bar. In particular, the test for reasonableness of legal fees found in rule 4-1.5(b) applies to all types of legal fees and contracts related to them.
 

 Terms of payment
 

 A lawyer may require advance payment of a fee but is obliged to return any unearned portion. See rule 4 — 1.16(d). A lawyer is not, however, required to return retainers that, pursuant to an agreement with a client, are not refundable. A lawyer may accept property in payment for services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to rule 4-1.8(i). However, a fee paid in property instead of money may be subject to special scrutiny because it involves questions concerning both the value of the services and the lawyer’s special knowledge of the value of the property.
 

 An agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client’s interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to define the extent of services in light of the client’s ability to pay. A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures. When there is doubt whether a contingent fee is consistent with the client’s best interest, the lawyer should offer the client alternative bases for the fee and explain their implications. Applicable law may impose limitations on contingent fees, such as a ceiling on the percentage.
 

 Prohibited contingent fees
 

 Subdivision (f)(3)(A) prohibits a lawyer from charging a contingent fee in a domestic relations matter when payment is contingent upon the securing of a divorce or upon the amount of alimony or support or property settlement to be obtained. This provision does not preclude a contract for a contingent fee for legal representation in connection with the recovery of post-judgment balances due under support, alimony, or other financial orders because such contracts do not implicate the same policy concerns.
 

 Contingent fee regulation
 

 Subdivision (e) is intended to clarify that whether the lawyer’s fee contract complies with these rules is a matter between the lawyer and client and an issue for professional disciplinary enforcement. The rules and subdivision (e) are not intended to be used as procedural weapons or defenses by others. Allowing opposing parties to assert noncompliance with these rules as a defense, including whether the fee is fixed or contingent, allows for potential inequity if the opposing party is allowed to escape responsibility for their actions solely through application of these rules.
 

 Rule 4-1.5(f)(4) should not be construed to apply to actions or claims seeking property or other damages arising in the commercial litigation context.
 

 
 *109
 
 Rule 4-1.5(f)(4)(B) is intended to apply only to contingent aspects of fee agreements. In the situation where a lawyer and client enter a contract for part noncon-tingent and part contingent attorney’s fees, rule 4 — 1.5(f)(4)(B) should not be construed to apply to and prohibit or limit the noncontingent portion of the fee agreement. An attorney could properly charge and retain the noncontingent portion of the fee even if the matter was not successfully prosecuted or if the noncontingent portion of the fee exceeded the schedule set forth in rule 4-1.5(f)(4)(B). Rule 4-1.5(f)(4)(B) should, however, be construed to apply to any additional contingent portion of such a contract when considered together with earned noncontingent fees. Thus, under such a contract a lawyer may demand or collect only such additional contingent fees as would not cause the total fees to exceed the schedule set forth in rule 4 — 1.5(f)(4)(B).
 

 The limitations in rule 4-1.5(f)(4)(B)(i)c. are only to be applied in the case where all the defendants admit liability at the time they file their initial answer and the trial is only on the issue of the amount or extent of the loss or the extent of injury suffered by the client. If the trial involves not only the issue of damages but also such questions as proximate cause, affirmative defenses, seat belt defense, or other similar matters, the limitations are not to be applied because of the contingent nature of the case being left for resolution by the trier of fact.
 

 Rule 4 — 1.5(f)(4)(B)(ii) provides the limitations set forth in subdivision (f)(4)(B)(i) may be waived by the client upon approval by the appropriate judge. This waiver provision may not be used to authorize a lawyer to charge a client a fee that would exceed rule 4-1.5(a) or (b). It is contemplated that this waiver provision will not be necessary except where the client wants to retain a particular lawyer to represent the client or the case involves complex, difficult, or novel questions of law or fact that would justify a contingent fee greater than the schedule but not a contingent fee that would exceed rule 4 — 1.5(b).
 

 Upon a petition by a client, the trial court reviewing the waiver request must grant that request if the trial court finds the client: (a) understands the right to have the limitations in rule 4 — 1.5(f)(4)(B) applied in the specific matter; and (b) understands and approves the terms of the proposed contract. The consideration by the trial court of the waiver petition is not to be used as an opportunity for the court to inquire into the merits or details of the particular action or claim that is the subject of the contract.
 

 The proceedings before the trial court and the trial court’s decision on a waiver request are to be confidential and not subject to discovery by any of the parties to the action or by any other individual or entity except The Florida Bar. However, terms of the contract approved by the trial court may be subject to discovery if the contract (without court approval) was subject to discovery under applicable ease law or rules of evidence.
 

 Rule 4-1.5(f)(4)(B)(iii) is added to acknowledge the provisions of article 1, section 26 of the Florida Constitution, and to create an affirmative obligation on the part of an attorney contemplating a contingency fee contract to notify a potential client with a medical liability claim of the limitations provided in that constitutional provision. This addition to the rule is adopted prior to any judicial interpretation of the meaning or scope of the constitutional provision and this rule is not intended to make any substantive interpretation of the meaning or scope of that provision. The rule also provides that a client who wishes to waive the rights of the constitutional
 
 *110
 
 provision, as those rights may relate to attorney’s fees, must do so in the form contained in the rule.
 

 Rule 4-1.5(f)(6) prohibits a lawyer from charging the contingent fee percentage on the total, future value of a recovery being paid on a structured or periodic basis. This prohibition does not apply if the lawyer’s fee is being paid over the same length of time as the schedule of payments to the client.
 

 Contingent fees are prohibited in criminal and certain domestic relations matters. In domestic relations cases, fees that include a bonus provision or additional fee to be determined at a later time and based on results obtained have been held to be impermissible contingency fees and therefore subject to restitution and disciplinary sanction as elsewhere stated in these Rules Regulating The Florida Bar.
 

 Fees that provide for a bonus or additional fees and that otherwise are not prohibited under the Rules Regulating The Florida Bar can be effective tools for structuring fees. For example, a fee contract calling for a flat fee and the payment of a bonus based on the amount of property retained or recovered in a general civil action is not prohibited by these rules. However, the bonus or additional fee must be stated clearly in amount or formula for calculation of the fee (basis or rate). Courts have held that unilateral bonus fees are unenforceable. The test of reasonableness and other requirements of this rule apply to permissible bonus fees.
 

 Division of fee
 

 A division of fee is a single billing to a client covering the fee of 2 or more lawyers who are not in the same firm. A division of fee facilitates association of more than 1 lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist. Subject to the provisions of subdivision (f)(4)(D), subdivision (g) permits the lawyers to divide a fee on either the basis of the proportion of services they render or by agreement between the participating lawyers if all assume responsibility for the representation as a whole and the client is advised and does not object. It does require disclosure to the client of the share that each lawyer is to receive. Joint responsibility for the representation entails the obligations stated in rule 4-5.1 for purposes of the matter involved.
 

 Disputes over fees
 

 Since the fee arbitration rule (Chapter 14) has been established by the bar to provide a procedure for resolution of fee disputes, the lawyer should conscientiously consider submitting to it. Where law prescribes a procedure for determining a lawyer’s fee, for example, in representation of an executor or administrator, a class, or a person entitled to a reasonable fee as part of the measure of damages, the lawyer entitled to such a fee and a lawyer representing another party concerned with the fee should comply with the prescribed procedure.
 

 Referral fees and practices
 

 A secondary lawyer shall not be entitled to a fee greater than the limitation set forth in rule 4 — 1.5(f)(4)(D)(ii) merely because the lawyer agrees to do some or all of the following: (a) consults with the client; (b) answers interrogatories; (c) attends depositions; (d) reviews pleadings; (e) attends the trial; or (f) assumes joint legal responsibility to the client. However, the provisions do not contemplate that a secondary lawyer who does more than the above is necessarily entitled to a larger percentage of the fee than that allowed by the limitation.
 

 
 *111
 
 The provisions of rule 4-1.5(f)(4)(D)(iii) only apply where the participating lawyers have for purposes of the specific case established a co-counsel relationship. The need for court approval of a referral fee arrangement under rule 4 — 1.5(f)(4)(D)(iii) should only occur in a small percentage of cases arising under rule 4 — 1.5(f)(4) and usually occurs prior to the commencement of litigation or at the onset of the representation. However, in those cases in which litigation has been commenced or the representation has already begun, approval of the fee division should be sought within a reasonable period of time after the need for court approval of the fee division arises.
 

 In determining if a co-counsel relationship exists, the court should look to see if the lawyers have established a special partnership agreement for the purpose of the specific case or matter. If such an agreement does exist, it must provide for a sharing of services or responsibility and the fee division is based upon a division of the services to be rendered or the responsibility assumed. It is contemplated that a co-counsel situation would exist where a division of responsibility is based upon, but not limited to, the following: (a) based upon geographic considerations, the lawyers agree to divide the legal work, responsibility, and representation in a convenient fashion. Such a situation would occur when different aspects of a case must be handled in different locations; (b) where the lawyers agree to divide the legal work and representation based upon their particular expertise in the substantive areas of law involved in the litigation; or (c) where the lawyers agree to divide the legal work and representation along established lines of division, such as liability and damages, causation and damages, or other similar factors.
 

 The trial court’s responsibility when reviewing an application for authorization of a fee division under rule 4 — 1.5(f) (4) (D) (iii) is to determine if a co-counsel relationship exists in that particular case. If the court determines a co-counsel relationship exists and authorizes the fee division requested, the court does not have any responsibility to review or approve the specific amount of the fee division agreed upon by the lawyers and the client.
 

 Rule 4-1.5(f)(4)(D)(iv) applies to the situation where appellate counsel is retained during the trial of the case to assist with the appeal of the case. The percentages set forth in subdivision (f)(4)(D) are to be applicable after appellate counsel’s fee is established. However, the effect should not be to impose an unreasonable fee on the client.
 

 Credit Plans
 

 Credit plans include credit cards. If a lawyer accepts payment from a credit plan for an advance of fees and costs, the amount must be held in trust in accordance with chapter 5, Rules Regulating The Florida Bar, and the lawyer must add the lawyer’s own money to the trust account in an amount equal to the amount charged by the credit plan for doing business with the credit plan.
 

 RULE 4-1.8 CONFLICT OF INTEREST; PROHIBITED AND OTHER TRANSACTIONS
 

 (a) Business Transactions With or Acquiring Interest Adverse to Client. A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, except a lien granted by law to secure a lawyer’s fee or expenses, unless:
 

 (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and
 
 *112
 
 are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client;
 

 (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and
 

 (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer’s role in the transaction, including whether the lawyer is representing the client in the transaction.
 

 (b) Using Information to Disadvantage of Client. A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these rules.
 

 (c) Gifts to Lawyer or Lawyer’s Family. A lawyer shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the lawyer or a person related to the lawyer any substantial gift unless the lawyer or other recipient of the gift is related to the client. For purposes of this subdivision, related persons include a spouse, child, grandchild, parent, grandparent, or other relative with whom the lawyer or the client maintains a close, familial relationship.
 

 (d) Acquiring Literary or Media Rights. Prior to the conclusion of representation of a client, a lawyer shall not make or negotiate an agreement giving the lawyer literary or media rights to a portrayal or account based in substantial part on information relating to the representation.
 

 (e) Financial Assistance to Client. A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:
 

 (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and
 

 (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.
 

 (f) Compensation by Third Party. A lawyer shall not accept compensation for representing a client from one other than the client unless:
 

 (1) the client gives informed consent;
 

 (2) there is no interference with the lawyer’s independence of professional judgment or with the client-lawyer relationship; and
 

 (3) information relating to representation of a client is protected as required by rule 4-1.6.
 

 (g) Settlement of Claims for Multiple Clients. A lawyer who represents 2 or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client gives informed consent, in a writing signed by the client. The lawyer’s disclosure shall include the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.
 

 (h) Limiting Liability for Malpractice. A lawyer shall not make an agreement prospectively limiting the lawyer’s liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement. A lawyer shall not settle a claim for such liability with an unrepresented client or former client without first advising that
 
 *113
 
 person in writing that independent representation is appropriate in connection therewith.
 

 (i) Acquiring Proprietary Interest in Cause of Action. A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:
 

 (1) acquire a lien granted by law to secure the lawyer’s fee or expenses; and
 

 (2) contract with a client for a reasonable contingent fee.
 

 (j) Representation of Insureds. When a lawyer undertakes the defense of an insured other than a governmental entity, at the expense of an insurance company, in regard to an action or claim for personal injury or for property damages, or for death or loss of services resulting from personal injuries based upon tortious conduct, including product liability claims, the Statement of Insured Client’s Rights shall be provided to the insured at the commencement of the representation. The lawyer shall sign the statement certifying the date on which the statement was provided to the insured. The lawyer shall keep a copy of the signed statement in the client’s file and shall retain a copy of the signed statement for 6 years after the representation is completed. The statement shall be available for inspection at reasonable times by the insured, or by the appropriate disciplinary agency. Nothing in the Statement of Insured Client’s Rights shall be deemed to augment or detract from any substantive or ethical duty of a lawyer or affect the extradiscipli-nary consequences of violating an existing substantive legal or ethical duty; nor shall any matter set forth in the Statement of Insured Client’s Rights give rise to an independent cause of action or create any presumption that an existing legal or ethical duty has been breached.
 

 STATEMENT OF INSURED CLIENT’S RIGHTS
 

 An insurance company has selected a lawyer to defend a lawsuit or claim against you. This Statement of Insured Client’s Rights is being given to you to assure that you are aware of your rights regarding your legal representation. This disclosure statement highlights many, but not all, of your rights when your legal representation is being provided by the insurance company.
 

 1.
 
 Your Lawyer.
 
 If you have questions concerning the selection of the lawyer by the insurance company, you should discuss the matter with the insurance company and the lawyer. As a client, you have the right to know about the lawyer’s education, training, and experience. If you ask, the lawyer should tell you specifically about the lawyer’s actual experience dealing with cases similar to yours and give you this information in writing, if you request it. Your lawyer is responsible for keeping you reasonably informed regarding the case and promptly complying with your reasonable requests for information. You are entitled to be informed of the final disposition of your case within a reasonable time.
 

 2.
 
 Fees and Costs.
 
 Usually the insurance company pays all of the fees and costs of defending the claim. If you are responsible for directly paying the lawyer for any fees or costs, your lawyer must promptly inform you of that.
 

 3.
 
 Directing the Lawyer.
 
 If your policy, like most insurance policies, provides for the insurance company to control the defense of the lawsuit, the lawyer will be taking instructions from the insurance company. Under such policies, the lawyer cannot act solely on your instructions, and
 
 *114
 
 at the same time, cannot act contrary to your interests. Your preferences should be communicated to the lawyer.
 

 4.
 
 Litigation Guidelines.
 
 Many insurance companies establish guidelines governing how lawyers are to proceed in defending a claim. Sometimes those guidelines affect the range of actions the lawyer can take and may require authorization of the insurance company before certain actions are undertaken. You are entitled to know the guidelines affecting the extent and level of legal services being provided to you. Upon request, the lawyer or the insurance company should either explain the guidelines to you or provide you with a copy. If the lawyer is denied authorization to provide a service or undertake an action the lawyer believes necessary to your defense, you are entitled to be informed that the insurance company has declined authorization for the service or action.
 

 5.
 
 Confidentiality.
 
 Lawyers have a general duty to keep secret the confidential information a client provides, subject to limited exceptions. However, the lawyer chosen to represent you also may have a duty to share with the insurance company information relating to the defense or settlement of the claim. If the lawyer learns of information indicating that the insurance company is not obligated under the policy to cover the claim or provide a defense, the lawyer’s duty is to maintain that information in confidence. If the lawyer cannot do so, the lawyer may be required to withdraw from the representation without disclosing to the insurance company the nature of the conflict of interest which has arisen. Whenever a waiver of the lawyer-client confidentiality privilege is needed, your lawyer has a duty to consult with you and obtain your informed consent. Some insurance companies retain auditing companies to review the billings and files of the lawyers they hire to represent policyholders. If the lawyer believes a bill review or other action releases information in a manner that is contrary to your interests, the lawyer should advise you regarding the matter.
 

 6.
 
 Conflicts of Interest.
 
 Most insurance policies state that the insurance company will provide a lawyer to represent your interests as well as those of the insurance company. The lawyer is responsible for identifying conflicts of interest and advising you of them. If at any time you believe the lawyer provided by the insurance company cannot fairly represent you because of conflicts of interest between you and the company (such as whether there is insurance coverage for the claim against you), you should discuss this with the lawyer and explain why you believe there is a conflict. If an actual conflict of interest arises that cannot be resolved, the insurance company may be required to provide you with another lawyer.
 

 7.
 
 Settlement.
 
 Many policies state that the insurance company alone may make a final decision regarding settlement of a claim, but under some policies your agreement is required. If you want to object to or encourage a settlement within policy limits, you should discuss your concerns with your lawyer to learn your rights and possible consequences. No settlement of the case requiring you to pay money in excess of your policy limits can be reached without your agreement, following full disclosure.
 

 8.
 
 Your Risk.
 
 If you lose the case, there might be a judgment entered against you for more than the amount of your insurance, and you might have to pay it. Your lawyer has a duty to advise you about this risk and other reasonably foreseeable adverse results.
 

 
 *115
 
 9.
 
 Hiring Your Own Lawyer.
 
 The lawyer provided by the insurance company is representing you only to defend the lawsuit. If you desire to pursue a claim against the other side, or desire legal services not directly related to the defense of the lawsuit against you, you will need to make your own arrangements with this or another lawyer. You also may hire another lawyer, at your own expense, to monitor the defense being provided by the insurance company. If there is a reasonable risk that the claim made against you exceeds the amount of coverage under your policy, you should consider consulting another lawyer.
 

 10.
 
 Reporting Violations.
 
 If at any time you believe that your lawyer has acted in violation of your rights, you have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar call (850) 561-5839 or you may access the Bar at www.FlaBar.org.
 

 IF YOU HAVE ANY QUESTIONS ABOUT YOUR RIGHTS, PLEASE ASK FOR AN EXPLANATION.
 

 CERTIFICATE
 

 The undersigned hereby certifies that this Statement of Insured Client’s Rights has been provided to.(name of insured/client(s)). by .(mail/hand delivery). at .(address of insured/client(s) to which mailed or delivered)., on.(date).
 

 [[Image here]]
 

 (k) Imputation of Conflicts. While lawyers are associated in a firm, a prohibition in the foregoing subdivisions (a) through (i) that applies to any one of them shall apply to all of them.
 

 Comment
 

 Business transactions between client and lawyer
 

 A lawyer’s legal skill and training, together with the relationship of trust and confidence between lawyer and client, create the possibility of overreaching when the lawyer participates in a business, property, or financial transaction with a client. The requirements of subdivision (a) must be met even when the transaction is not closely related to the subject matter of the representation. The rule applies to lawyers engaged in the sale of goods or services related to the practice of law. See rule 4-5.7. It does not apply to ordinary fee arrangements between client and lawyer, which are governed by rule 4-1.5, although its requirements must be met when the lawyer accepts an interest in the client’s business or other nonmonetary property as payment for all or part of a fee. In addition, the rule does not apply to standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others, for example, banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities services. In such transactions the lawyer has no advantage in dealing with the client, and the restrictions in subdivision (a) are unnecessary and impracticable. Likewise, subdivision (a) does not prohibit a lawyer from acquiring or asserting a lien granted by law to secure the lawyer’s fee or expenses.
 

 Subdivision (a)(1) requires that the transaction itself be fair to the client and that its essential terms be communicated to the client, in writing, in a manner that
 
 *116
 
 can be reasonably understood. Subdivision (a)(2) requires that the client also be advised, in writing, of the desirability of seeking the advice of independent legal counsel. It also requires that the client be given a reasonable opportunity to obtain such advice. Subdivision (a)(3) requires that the lawyer obtain the client’s informed consent, in a writing signed by the client, both to the essential terms of the transaction and to the lawyer’s role. When necessary, the lawyer should discuss both the material risks of the proposed transaction, including any risk presented by the lawyer’s involvement, and the existence of reasonably available alternatives and should explain why the advice of independent legal counsel is desirable. See terminology (definition of informed consent).
 

 The risk to a client is greatest when the client expects the lawyer to represent the client in the transaction itself or when the lawyer’s financial interest otherwise poses a significant risk that the lawyer’s representation of the client will be materially limited by the lawyer’s financial interest in the transaction. Here the lawyer’s role requires that the lawyer must comply, not only with the requirements of subdivision (a), but also with the requirements of rule 4-1.7. Under that rule, the lawyer must disclose the risks associated with the lawyer’s dual role as both legal adviser and participant in the transaction, such as the risk that the lawyer will structure the transaction or give legal advice in a way that favors the lawyer’s interests at the expense of the client. Moreover, the lawyer must obtain the client’s informed consent. In some cases, the lawyer’s interest may be such that rule 4-1.7 will preclude the lawyer from seeking the client’s consent to the transaction.
 

 If the client is independently represented in the transaction, subdivision (a)(2) of this rule is inapplicable, and the subdivision (a)(1) requirement for full disclosure is satisfied either by a written disclosure by the lawyer involved in the transaction or by the client’s independent counsel. The fact that the client was independently represented in the transaction is relevant in determining whether the agreement was fair and reasonable to the client as subdivision (a)(1) further requires.
 

 Gifts to lawyers
 

 A lawyer may accept a gift from a client, if the transaction meets general standards of fairness and if the lawyer does not prepare the instrument bestowing the gift. For example, a simple gift such as a present given at a holiday or as a token of appreciation is permitted. If a client offers the lawyer a more substantial gift, subdivision (c) does not prohibit the lawyer from accepting it, although such a gift may be voidable by the client under the doctrine of undue influence, which treats client gifts as presumptively fraudulent. In any event, due to concerns about overreaching and imposition on clients, a lawyer may not suggest that a substantial gift be made to the lawyer or for the lawyer’s benefit, except where the lawyer is related to the client as set forth in subdivision (c). If effectuation of a substantial gift requires preparing a legal instrument such as a will or conveyance, however, the client should have the detached advice that another lawyer can provide and the lawyer should advise the client to seek advice of independent counsel. Subdivision (c) recognizes an exception where the client is a relative ofrelated by blood or marriage to the do-nee or the gift is not substantial.
 

 This rule does not prohibit a lawyer from seeking to have the lawyer or a partner or associate of the lawyer named as personal representative of the client’s estate or to another potentially lucrative fiduciary position. Nevertheless, such ap
 
 *117
 
 pointments will be subject to the general conflict of interest provision in rule 4-1.7 when there is a significant risk that the lawyer’s interest in obtaining the appointment will materially limit the lawyer’s independent professional judgment in advising the client concerning the choice of a personal representative or other fiduciary. In obtaining the client’s informed consent to the conflict, the lawyer should advise the client concerning the nature and extent of the lawyer’s financial interest in the appointment, as well as the availability of alternative candidates for the position.
 

 Literary rights
 

 An agreement by which a lawyer acquires literary or media rights concerning the conduct of the representation creates a conflict between the interests of the client and the personal interests of the lawyer. Measures suitable in the representation of the client may detract from the publication value of an account of the representation. Subdivision (d) does not prohibit a lawyer representing a client in a transaction concerning literary property from agreeing that the lawyer’s fee shall consist of a share in ownership in the property if the arrangement conforms to rule 4-1.5 and subdivision (a) and (i).
 

 Financial assistance
 

 Lawyers may not subsidize lawsuits or administrative proceedings brought on behalf of their clients, including making or guaranteeing loans to their clients for living expenses, because to do so would encourage clients to pursue lawsuits that might not otherwise be brought and because such assistance gives lawyers too great a financial stake in the litigation. These dangers do not warrant a prohibition on a lawyer advancing a client court costs and litigation expenses, including the expenses of diagnostic medical examination used for litigation purposes and the reasonable costs of obtaining and presenting evidence, because these advances are virtually indistinguishable from contingent fees and help ensure access to the courts. Similarly, an exception allowing lawyers representing indigent clients to pay court costs and litigation expenses regardless of whether these funds will be repaid is warranted.
 

 Person paying for lawyer’s services
 

 Lawyers are frequently asked to represent a client under circumstances in which a third person will compensate the lawyer, in whole or in part. The third person might be a relative or friend, an indemnitor (such as a liability insurance company), or a co-client (such as a corporation sued along with one or more of its employees). Because third-party payers frequently have interests that differ from those of the client, including interests in minimizing the amount spent on the representation and in learning how the representation is progressing, lawyers are prohibited from accepting or continuing such representations unless the lawyer determines that there will be no interference with the lawyer’s independent professional judgment and there is informed consent from the client. See also rule 4 — 5.4(d) (prohibiting interference with a lawyer’s professional judgment by one who recommends, employs or pays the lawyer to render legal services for another).
 

 Sometimes, it will be sufficient for the lawyer to obtain the client’s informed consent regarding the fact of the payment and the identity of the third-party payer. If, however, the fee arrangement creates a conflict of interest for the lawyer, then the lawyer must comply with rule 4-1.7. The lawyer must also conform to the requirements of rule 4-1.6 concerning confidentiality. Under rule 4-1.7(a), a conflict of interest exists if there is significant risk that the lawyer’s representation of the
 
 *118
 
 client will be materially limited by the lawyer’s own interest in the fee arrangement or by the lawyer’s responsibilities to the third-party payer (for example, when the third-party payer is a co-client). Under rule 4-1.7(b), the lawyer may accept or continue the representation with the informed consent of each affected client, unless the conflict is nonconsentable under that subdivision. Under rule 4-1.7(b), the informed consent must be confirmed in writing or clearly stated on the record at a hearing.
 

 Aggregate settlements
 

 Differences in willingness to make or accept an offer of settlement are among the risks of common representation of multiple clients by a single lawyer. Under rule 4-1.7, this is one of the risks that should be discussed before undertaking the representation, as part of the process of obtaining the clients’ informed consent. In addition, rule 4-1.2(a) protects each client’s right to have the final say in deciding whether to accept or reject an offer of settlement and in deciding whether to enter a guilty or nolo contendere plea in a criminal case. The rule stated in this subdivision is a corollary of both these rules and provides that, before any settlement offer or plea bargain is made or accepted on behalf of multiple clients, the lawyer must inform each of them about all the material terms of the settlement, including what the other clients will receive or pay if the settlement or plea offer is accepted. See also terminology (definition of informed consent). Lawyers representing a class of plaintiffs or defendants, or those proceeding derivatively, must comply with applicable rules regulating notification of class members and other procedural requirements designed to ensure adequate protection of the entire class.
 

 Acquisition of interest in litigation
 

 Subdivision (i) states the traditional general rule that lawyers are prohibited from acquiring a proprietary interest in litigation. This general rule, which has its basis in common law champerty and maintenance, is subject to specific exceptions developed in decisional law and continued in these rules, such as the exception for reasonable contingent fees set forth in rule 4-1.5 and the exception for certain advances of the costs of litigation set forth in subdivision (e).
 

 This rule is not intended to apply to customary qualification and limitations in legal opinions and memoranda.
 

 Representation of insureds
 

 As with any representation of a client when another person or client is paying for the representation, the representation of an insured client at the request of the insurer creates a special need for the lawyer to be cognizant of the potential for ethical risks. The nature of the relationship between a lawyer and a client can lead to the insured or the insurer having expectations inconsistent with the duty of the lawyer to maintain confidences, avoid conflicts of interest, and otherwise comply with professional standards. When a lawyer undertakes the representation of an insured client at the expense of the insurer, the lawyer should ascertain whether the lawyer will be representing both the insured and the insurer, or only the insured. Communication with both the insured and the insurer promotes their mutual understanding of the role of the lawyer in the particular representation. The Statement of Insured Client’s Rights has been developed to facilitate the lawyer’s performance of ethical responsibilities. The highly variable nature of insurance and the responsiveness of the insurance industry in developing new types of coverages for risks
 
 *119
 
 arising in the dynamic American economy render it impractical to establish a statement of rights applicable to all forms of insurance. The Statement of Insured Client’s Rights is intended to apply to personal injury and property damage tort cases. It is not intended to apply to workers’ compensation cases. Even in that relatively narrow area of insurance coverage, there is variability among policies. For that reason, the statement is necessarily broad. It is the responsibility of the lawyer to explain the statement to the insured. In particular cases, the lawyer may need to provide additional information to the insured.
 

 Because the purpose of the statement is to assist laypersons in understanding their basic rights as clients, it is necessarily abbreviated. Although brevity promotes the purpose for which the statement was developed, it also necessitates incompleteness. For these reasons, it is specifically provided that the statement shall not serve to establish any legal rights or duties, nor create any presumption that an existing legal or ethical duty has been breached. As a result, the statement and its contents should not be invoked by opposing parties as grounds for disqualification of a lawyer or for procedural purposes. The purpose of the statement would be subverted if it could be used in such a manner.
 

 The statement is to be signed by the lawyer to establish that it was timely provided to the insured, but the insured client is not required to sign it. It is in the best interests of the lawyer to have the insured client sign the statement to avoid future questions, but it is considered impractical to require the lawyer to obtain the insured client’s signature in all instances.
 

 Establishment of the statement and the duty to provide it to an insured in tort cases involving personal injury or property damage should not be construed as lessening the duty of the lawyer to inform clients of their rights in other circumstances. When other types of insurance are involved, when there are other third-party payors of fees, or when multiple clients are represented, similar needs for fully informing clients exist, as recognized in rules 4-1.7(c) and 4 — 1.8(f).
 

 Imputation of prohibitions
 

 Under subdivision (k), a prohibition on conduct by an individual lawyer in subdivisions (a) through (i) also applies to all lawyers associated in a firm with the personally prohibited lawyer. For example, 1 lawyer in a firm may not enter into a business transaction with a client of another member of the firm without complying with subdivision (a), even if the first lawyer is not personally involved in the representation of the client.
 

 RULE 4-1.9 CONFLICT OF INTEREST; FORMER CLIENT
 

 A lawyer who has formerly represented a client in a matter shall not thereafter:
 

 (a) represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client unless the former client gives informed consent; or
 

 (b) use information relating to the representation to the disadvantage of the former client except as rule 4-1.6these rules would permit or require with respect to a client or when the information has become generally known-; or
 

 (c) reveal information relating to the representation except as these rules would permit or require with respect to a client.
 

 Comment
 

 After termination of a client-lawyer relationship, a lawyer may not represent another client except in conformity with this
 
 *120
 
 rule. The principles in rule 4-1.7 determine whether the interests of the present and former client are adverse. Thus, a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client. So also a lawyer who has prosecuted an accused person could not properly represent the accused in a subsequent civil action against the government concerning the same transaction.
 

 The scope of a “matter” for purposes of rule 4-1.9(a) may depend on the facts of a particular situation or transaction. The lawyer’s involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. Similar considerations can apply to the reassignment of military lawyers between defense and prosecution functions within the same military jurisdiction. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.
 

 Matters are “substantially related” for purposes of this rule if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client. For example, a lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations; however, the lawyer would not be precluded, on the grounds of substantial relationship, from defending a tenant of the completed shopping center in resisting eviction for nonpayment of rent.
 

 Lawyers owe confidentiality obligations to former clients, and thus information acquired by the lawyer in the course of representing a client may not subsequently be used by the lawyer to the disadvantage of the client without the former client’s consent. For example, a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person’s spouse in seeking a divorce. However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about that client when later representing another client. Information that has been widely disseminated by the media to the public, or that typically would be obtained by any reasonably prudent lawyer who had never represented the former client, should be considered generally known and ordinarily will not be disqualifying. The essential question is whether, but for having represented the former client, the lawyer would know or discover the information.
 

 Information acquired in a prior representation may have been rendered obsolete by the passage of time. In the case of an organizational client, general knowledge of the client’s policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation. A former client is not required to reveal the confidential information learned by the lawyer in order to
 
 *121
 
 establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.
 

 The provisions of this rule are for the protection of clients and can be waived if the former client gives informed consent. See terminology.
 

 With regard to an opposing party’s raising a question of conflict of interest, see comment to rule 4-1.7. With regard to disqualification of a firm with which a lawyer is associated, see rule 4-1.10.
 

 RULE 4-1.18 DUTIES TO PROSPECTIVE CLIENT
 

 (a) Prospective Client. A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
 

 (b) Confidentiality of Information. Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as rule 4-1.9 would permit with respect to' information of a former client.
 

 (c) Subsequent Representation. A lawyer subject to subdivision (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be used to the disadvantage of that person in the matter, except as provided in subdivision (d). If a lawyer is disqualified from representation under this rule, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in subdivision (d).
 

 (d)Permissible Representation. When the lawyer has received disqualifying information as defined in subdivision (c), representation is permissible if:
 

 (1) both the affected client and the prospective client have given informed consent, confirmed in writing; or
 

 (2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and
 

 (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
 

 (ii) written notice is promptly given to the prospective client.
 

 Comment
 

 Prospective clients, like clients, may disclose information to a lawyer, place documents or other property in the lawyer’s custody, or rely on the lawyer’s advice. A lawyer’s discussions with a prospective client usually are limited in time and depth and leave both the prospective client and the lawyer free (and the lawyer sometimes required) to proceed no further. Hence, prospective clients should receive some but not all of the protection afforded clients.
 

 Not all persons who communicate information to a lawyer are entitled to protection under this rule. A person who communicates information unilaterally to a lawyer, without any reasonable expectation that the lawyer is willing to discuss the possibility of forming a client-lawyer relationship, is not a “prospective client” within the meaning of subdivision (a).
 

 
 *122
 
 It is often necessary for a prospective client to reveal information to the lawyer during an initial consultation prior to the decision about formation of a client-lawyer relationship. The lawyer often must learn such information to determine whether there is a conflict of interest with an existing client and whether .the matter is one that the lawyer is willing to undertake. Subdivision (b) prohibits the lawyer from using or revealing that information, except as permitted by rule 4-1.9, even if the client or lawyer decides not to proceed with the representation. The duty exists regardless of how brief the initial conference may be.
 

 In order to avoid acquiring disqualifying information from a prospective client, a lawyer considering whether to undertake a new matter should limit the initial interview to only such information as reasonably appears necessary for that purpose. Where the information indicates that a conflict of interest or other reason for non-representation exists, the lawyer should so inform the prospective client or decline the representation. If the prospective client wishes to retain the lawyer, and if consent is possible under rule 4-1.7, then consent from all affected present or former clients must be obtained before accepting the representation.
 

 A lawyer may condition conversations with a prospective client on the person’s informed consent that no information disclosed during the consultation will prohibit the lawyer from representing a different client in the matter. See terminology for the definition of informed consent. If the agreement expressly so provides, the prospective client may also consent to the lawyer’s subsequent use of information received from the prospective client.
 

 Even in the absence of an agreement, under subdivision (c), the lawyer is not prohibited from representing a client with interests adverse to those of the prospective client in the same or a substantially related matter unless the lawyer has received from the prospective client information that could be used to the disadvantage of the prospective client in the matter.
 

 Under subdivision (c), the prohibition in this rule is imputed to other lawyers as provided in rule 4-1.10, but, under subdivision (d)(1), the prohibition and its imputation may be avoided if the lawyer obtains the informed consent, confirmed in writing, of both the prospective and affected clients. In the alternative, the prohibition and its imputation may be avoided if the conditions of subdivision (d)(2) are met and all disqualified lawyers are timely screened and written notice is promptly given to the prospective client. See Rule-terminology (requirements for screening procedures). ■Paragraph-Subdivision (d)(2)(i) does not prohibit the screened lawyer from receiving a salary or partnership share established by prior independent agreement, but that lawyer may not receive compensation directly related to the matter in which the lawyer is disqualified.
 

 Notice, including a general description of the subject matter about which the lawyer was consulted, and of the screening procedures employed, generally should be given as soon as practicable after the need for screening becomes apparent.
 

 The duties under this rule presume that the prospective client consults the lawyer in good faith. A person who consults a lawyer simply with the intent of disqualifying the lawyer from the matter, with no intent of possibly hiring the lawyer, has engaged in a sham and should not be able to invoke this rule to create a disqualification.
 

 For the duty of competence of a lawyer who gives assistance on the merits of a matter to a prospective client, see rule 4-
 
 *123
 
 1.1. For a lawyer’s duties when a prospective client entrusts valuables or papers to the lawyer’s care, see chapter 5, Rules Regulating The Florida Bar.
 

 4-2. COUNSELOR
 

 RULE 4-2.4 LAWYER SERVING AS THIRD-PARTY NEUTRAL
 

 (a) Definition. A lawyer serves as a third-party neutral when the lawyer assists 2 or more persons who are not clients of the lawyer to reach a resolution of a dispute or other matter that has arisen between them. Service as a third-party neutral may include service as an arbitrator, a mediator, or in such other capacity as will enable the lawyer to assist the parties to resolve the matter.
 

 (b) Communication With Unrepresented Parties. A lawyer serving as a third-party neutral shall inform unrepresented parties that the lawyer is not representing them. When the lawyer knows or reasonably should know that a party does not understand the lawyer’s role in the matter, the lawyer shall explain the difference between the lawyer’s role as a third-party neutral and a lawyer’s role as one who represents a client.
 

 Comment
 

 Alternative dispute resolution has become a substantial part of the civil justice system. Aside from representing clients in dispute resolution processes, lawyers often serve as third-party neutrals. A third-party neutral is a person, such as a mediator, arbitrator, conciliator, or evaluator, who assists the parties, represented or unrepresented, in the resolution of a dispute or in the arrangement of a transaction. "Whether a third-party neutral serves primarily as a facilitator, evaluator, or decisionmaker depends on the particular process that is either selected by the parties or mandated by a court.
 

 The role of a third-party neutral is not unique to lawyers, although, in some court-connected contexts, only lawyers are allowed to serve in this role or to handle certain types of cases. In performing this role, the lawyer may be subject to court rules or other law that apply either to third-party neutrals generally or to lawyers serving as third-party neutrals. Lawyer-neutrals may also be subject to various codes of ethics, such as the Code of Ethics for Arbitration in Commercial Disputes prepared by a joint committee of the American Bar Association and the American Arbitration Association, or the Model Standards of Conduct for Mediators jointly prepared by the American Bar Association, the American Arbitration Association and the Society of Professionals in Dispute Resolution. A Florida Bar member who is a certified mediator is governed by the applicable law and rules relating to certified mediators.
 

 Unlike nonlawyers who serve as third-party neutrals, lawyers serving in this role may experience unique problems as a result of differences between the role of a third-party neutral and a lawyer’s service as a client representative. The potential for confusion is significant when the parties are unrepresented in the process. Thus, subdivision (b) requires a lawyer-neutral to inform unrepresented parties that the lawyer is not representing them. For some parties, particularly parties who resolution processes, this information will be sufficient. For others, particularly those who are using the process for the first time, more information will be required. Where appropriate, the lawyer should inform unrepresented parties of the important differences between the lawyer’s role as third-party neutral and a lawyer’s role as a client representative, including the inapplicability of the attorney-client ev-
 
 *124
 
 identiary privilege. The extent of disclosure required under this subdivision will depend on the particular parties involved and the subject matter of the proceeding, as well as the particular features of the cess selected.
 

 A lawyer who serves as a third-party neutral subsequently may be asked to serve as a lawyer representing a client in the same matter. The conflicts of interest that arise for both the individual lawyer and the lawyer’s law firm are addressed in rule 4-1.12.
 

 ■Lawyers, who-represent-clients in alternative — dispute-resolution—processes are governed by the Rules of Professional Conduct, — When—the—dispute-resolution process takes place before a tribunal, as in binding arbitration (see terminologyjj-the lawyer-s-duty-- of-candor, is- governed by r-ule^l-3T3-.-Qtherwiser the lawyer’s duty of candor-toward-both-the-third-party neutral and ■ other parties is governed by rule-44⅛
 

 4-3. ADVOCATE
 

 RULE 4-3.3 CANDOR TOWARD THE TRIBUNAL
 

 (a)False Evidence; Duty to Disclose. A lawyer shall not knowingly:
 

 (1) make a false statement of material-fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
 

 (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;
 

 (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
 

 (4)permit any witness-, — including—a criminal defendant, to offer testimony-er ethemevidence that the lawyer knows to be false. A lawyer may not offer testimony that the lawyer knows to be false in the form of a narrative unless so ordered by the tribunal. If a lawyer, the lawyer’s client, or a witness called by the lawyer has offered material evidence and thereafterthe lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.
 

 (-b)-E-xtent-of- Lawyer’s Duties. — The duties-stated — in-subdivision (a) continue beyond the conclusion of-the-proceeding and-apply-even if compliance requires dis-elesu-re-of-j-nfermation-otherwise protected by-rule 4-1.6.
 

 (b) Criminal or Fraudulent Conduct. A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging, or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.
 

 (c) Evidence Believed to Be False, A lawyer may refuse-to-offer-evidence that the-lawyer reasonably believes — is—false.-
 

 (dc) Ex Parte Proceedings. In an ex parte proceeding a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.
 

 (d) Extent of Lawyer’s Duties. The duties stated in this rule continue beyond the conclusion of the proceeding and apply even if compliance requires disclosure of
 
 *125
 
 information otherwise protected by rule 4-1.6.
 

 Comment
 

 This rule governs the conduct of a lawyer who is representing a client in the proceedings of a tribunal. See terminology for the definition of “tribunal.” It also applies when the lawyer is representing a client in an ancillary proceeding conducted pursuant to the tribunal’s adjudicative authority, such as a deposition. Thus, for example, subdivision (a)(4) requires a lawyer to take reasonable remedial measures if the lawyer comes to know that a client who is testifying in a deposition has offered evidence that is false.
 

 The advocate’s task isThis rule sets forth the special duties of lawyers as officers of the court to avoid conduct that undermines the integrity of the adjudicative process. A lawyer acting as an advocate in an adjudicative proceeding has an obligation to present the client’s case with persuasive force. Performance of that duty while maintaining confidences of the client is qualified by the advocate’s duty of candor to the tribunal. -However,- an advo-eate — does—notConsequently, although a lawyer in an adversary proceeding is not required to present a disinterested exposition of the law or to vouch for the evidence submitted in a causey, the lawyer must not allow the tribunal is responsible for assessing-its-probative-valueto be misled by false statements of law or fact or evidence that the lawyer knows to be false.
 

 Lawyers who represent clients in alternative dispute resolution processes are governed by the Rules of Professional Conduct. When the dispute resolution process takes place before a tribunal, as in binding arbitration (see terminology), the lawyer’s duty of candor is governed by rule 4-3.3. Otherwise, the lawyer’s duty of candor toward both the third-party neutral and other parties is governed by rule 4-4.1.
 

 Representations by a lawyer
 

 An advocate is responsible for pleadings and other documents prepared for litigation, but is usually not required to have personal knowledge of matters asserted therein, for litigation documents ordinarily present assertions by the client, or by someone on the client’s behalf, and not assertions by the lawyer. Compare rule 4-3.1. However, an assertion purporting to be on the lawyer’s own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry. There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation. The obligation prescribed in rule 4-1.2(d) not to counsel a client to commit or assist the client in committing a fraud applies in litigation. Regarding compliance with rule 4-1.2(d), see the comment to that rule. See also the comment to rule 4-8.4(b).
 

 Misleading legal argument
 

 Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities. Furthermore, as stated in subdivision (a)(3), an advocate has a duty to disclose directly adverse authority in the controlling jurisdiction that has not been disclosed by the opposing party. The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case.
 

 False evidence
 

 When-evidence -that -a- lawyer knows to be-false-is-provided-by a-person who is -not
 
 *126
 
 the clienVthe-lawyer must refuse to offer it regardless of- the client’s wishes.
 

 When false evidence-is--offered by the client, howev-exy-a-conflict may arise between — the—lawyer’s—duty to — keep the client’s revelations.confidential and the duty^of-eandor-to-the court. — Upon ascertaining that-material- evidence is false, the lawyer- should seek to persuade-the -client that the evidence should not be offered or, if it-ha-sdaeen-offered, that its false character-should — immediately be -disclosed- — If the persuasion — is-ineffective, the lawyer must-take reasonable remedial measures.
 

 Subdivision (a)(4) requires that the lawyer refuse to offer evidence that the lawyer knows to be false, regardless of the client’s wishes. This duty is premised on the lawyer’s obligation as an officer of the court to prevent the trier of fact from being misled by false evidence. A lawyer does not violate this rule if the lawyer offers the evidence for the purpose of establishing its falsity.
 

 If a lawyer knows that the client intends to testify falsely or wants the lawyer to introduce false evidence, the lawyer should seek to persuade the client that the evidence should not be offered. If the persuasion is ineffective and the lawyer continues to represent the client, the lawyer must refuse to offer the false evidence. If only a portion of a witness’s testimony will be false, the lawyer may call the witness to testify but may not elicit or otherwise permit the witness to present the testimony that the lawyer knows is false.
 

 The duties stated in this rule apply to all lawyers, including defense counsel in criminal cases.
 

 The prohibition against offering false evidence only applies if the lawyer knows that the evidence is false. A lawyer’s reasonable belief that evidence is false does not preclude its presentation to the trier of fact.
 

 Except in the defense of a criminally accused, tThe rule generally recognized is that, if necessary to rectify the situation, an advocate must disclose the existence of the client’s deception to the court. Such a disclosure can result in grave consequences to the client, including not only a sense of betrayal but also loss of the case and perhaps a prosecution for perjury. But the alternative is that the lawyer cooperate in deceiving the court, thereby subverting the truth-finding process that the adversary system is designed to implement. See rule 4-1.2(d). Furthermore, unless it is clearly understood that the lawyer will act upon the duty to disclose the existence of false evidence, the client can simply reject the lawyer’s advice to reveal the false evidence and insist that the lawyer keep silent. Thus, the client could in effect coerce the lawyer into being a party to fraud on the court.
 

 Perjury by a criminal defendant
 

 Whether.an advocate for a criminally accused has-the-same duty of disclosure has been-intensely debated. — While- it is agreed that-the lawyer should seek to persuade the-el-ient-to refrain from perjurious testimony, there ha-s-been-disputo concerning-the-Iawyer’s duty when that persuasion fails! — If the confrontation with the client occurs before-trial, the lawyer ordinarily can withdraw. — Withdrawal before trial may not be-possible -if trial is imminent;- if the confrontation with the client does not take-place until the-trial itself, or if no other couBsel-is-available.
 

 The most-difficult situation, therefore, arises~in a criminal case where tho accused insists — on—testifying - when the — lawyer knows that — the--testimony is perjurious. The -lawyer’s effort-to-rectify the situation ean-increase the likelihood of the client’s being convicted.-as well as opening — the
 
 *127
 
 possibility of a prosecution for perjury.On the other hand, if the lawyer-does-not exercise control over the proof, the lawyer participates, although in a-merely-passive way, in deception-of the court.
 

 Although -the-efi:ering of perjured-testimony or false evidence is considered a fraud- on- the tribunal, these situations are distinguishable from that of a client-who, upon being arrested, provides false identification to-a law-enforcement officer. — The client’s past act of lying to a law enforcement-officer does not constitute a fraud on the tribunal, and thus does not trigger the disclosure obligation under this rule, because a -false-statement to an ■ arresting-officer is unsworn and occurs prior to the institution- of -a-court proceeding. — If the client testifies, the -lawyer-must-attempt-te have the client-respond to any questions truthfully or by asserting- an applicable privilege. — Any-false-statements by the client in the course of the-court-proceeding will-trigger the duties under ■ this rule.
 

 Remedial measures
 

 If perjured testimony or false evidence has been offered, the advocate’s proper course ordinarily is to remonstrate with the client confidentially if circumstances permit. If that fails, the advocate should seek-to-withdraw if that will remedy the situatiem — Subject to the caveat expressed in the next section- of--this-comment; — if withdrawal ■ will- -not-remedy-the-situation- or--is-impossible and the advocate deter-mlnes-that disclosure is the only measure that 'will avert a fraud on the court, the advocate should make disclosure.to the eoarfiln any case, the advocate should ensure disclosure is made to the court. It is for the court then to determine what should be done — making a statement about the matter to the trier of fact, ordering a mistrial, or perhaps nothing. If the false testimony was that of the client, the client may controvert the lawyer’s version of them communication when the lawyer discloses the situation to the court. If there is an issue whether the client has committed perjury, the lawyer cannot represent the client in resolution of the issue and a mistrial may be unavoidable. An unscrupulous client might in this way attempt to produce a series of mistrials and thus escape prosecution. However, a second such encounter could be construed as a deliberate abuse of the right to counsel and as such a waiver of the right to further representation. This commentary is not intended to address the situation where a client or prospective client seeks legal advice specifically about a defense to a charge of perjury where the lawyer did not represent the client at the time the client gave the testimony giving rise to the charge.
 

 Gonstifafional-r-equirements
 

 The — general—rule—that - an — advocate must disclose the existence-of-perjury-with-respect to a material fact, even that of a client — applies to defense counsel-in criminal -cases,--as--well- -as- in other instances. ■However — the—definition- -of — the—lawyer’s ethical — duty^-in—such a situation — may—be qualified by - constitutional- -provisions for due process- -and.the -right- to- -counsel- -in criminal cases.
 

 Refusing to offer proof believed to be false
 

 Generally ■ speaking, - -Although subdivision (a)(4) only prohibits a lawyer has au-thorityfrom offering evidence the lawyer knows to be false, it permits the lawyer to refuse to offer testimony or other proof that the lawyer reasonably believes is un-trustworthyfalse. Offering such proof may reflect adversely on the lawyer’s ability to discriminate in the quality of evidence and thus impair the lawyer’s effectiveness as an advocate. In criminal cases, however, a lawyer may^-in-some jurisdictions, be denied this authority by constitutional- requirements- governing-the-r-ight-to-counsel.
 

 
 *128
 
 A lawyer may not assist the client or any witness in offering false testimony or other false evidence, nor may the lawyer permit the client or any other witness to testify falsely in the narrative form unless ordered to do so by the tribunal. If a lawyer knows that the client intends to commit perjury, the lawyer’s first duty is to attempt to persuade the client to testify truthfully. If the client still insists on committing perjury, the lawyer must threaten to disclose the client’s intent to commit perjury to the judge. If the threat of disclosure does not successfully persuade the client to testify truthfully, the lawyer must disclose the fact that the client intends to lie to the tribunal and, per 4-1.6, information sufficient to prevent the commission of the crime of perjury.
 

 The lawyer’s duty not to assist witnesses, including the lawyer’s own client, in offering false evidence stems from the Rules of Professional Conduct, Florida statutes, and caselaw.
 

 Rule 4-1.2(d) prohibits the lawyer from assisting a client in conduct that the lawyer knows or reasonably should know is criminal or fraudulent.
 

 Rule 4-3.4(b) prohibits a lawyer from fabricating evidence or assisting a witness to testify falsely.
 

 Rule 4-8.4(a) prohibits the lawyer from violating the Rules of Professional Conduct or knowingly assisting another to do so.
 

 Rule 4^8.4(b) prohibits a lawyer from committing a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer.
 

 Rule 4-8.4(c) prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.
 

 Rule 4 — 8.4(d) prohibits a lawyer from engaging in conduct that is prejudicial to the administration of justice.
 

 Rule 4-1.6(b) requires a lawyer to reveal information to the extent the lawyer reasonably believes necessary to prevent a client from committing a crime.
 

 This rule, 4-3.3(a)(2), requires a lawyer to reveal a material fact to the tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client, and 4-3.3(a)(4) prohibits a lawyer from offering false evidence and requires the lawyer to take reasonable remedial measures when false material evidence has been offered.
 

 Rule 4-1.16 prohibits a lawyer from representing a client if the representation will result in a violation of the Rules of Professional Conduct or law and permits the lawyer to withdraw from representation if the client persists in a course of action that the lawyer reasonably believes is criminal or fraudulent or repugnant or imprudent. Rule 4-1.16(e) recognizes that notwithstanding good cause for terminating representation of a client, a lawyer is obliged to continue representation if so ordered by a tribunal.
 

 To permit or assist a client or other witness to testify falsely is prohibited by section 837.02, Florida Statutes (1991), which makes perjury in an official proceeding a felony, and by section 777.011, Florida Statutes (1991), which proscribes aiding, abetting, or counseling commission of a felony.
 

 Florida caselaw prohibits lawyers from presenting false testimony or evidence.
 
 Kneale v. Williams,
 
 [158 Fla. 811,] 30 So.2d 284 (Fla.1947), states that perpetration of a fraud is outside the scope of the professional duty of an attorney and no privilege attaches to communication between an attorney and a client with respect to transactions constituting the making of a false claim or the perpetration of a fraud.
 
 Dodd v. The Florida Bar,
 
 118 So.2d 17 (Fla.1960), reminds us that “the
 
 *129
 
 courts are ... dependent on members of the bar to ... present the true facts of each cause ... to enable the judge or the jury to [decide the facts] to which the law may be applied. When an attorney ... allows false testimony ... [the attorney] ... makes it impossible for the scales [of justice] to balance.” See
 
 The Fla. Bar v. Agar,
 
 394 So.2d 405 (1981), and
 
 The Fla. Bar v. Simons,
 
 391 So.2d 684 (Fla.1980).
 

 The United States Supreme Court in
 
 Nix v. Whiteside,
 
 475 U.S. 157[, 106 S.Ct. 988, 89 L.Ed.2d 123] (1986), answered in the negative the constitutional issue of whether it is ineffective assistance of counsel for an attorney to threaten disclosure of a client’s (a criminal defendant’s) intention to testify falsely.
 

 Ex parte proceedings
 

 Ordinarily, an advocate has the limited responsibility of presenting 1 side of the matters that a tribunal should consider in reaching a decision; the conflicting position is expected to be presented by the opposing party. However, in an ex parte proceeding, such as an application for a temporary injunction, there is no balance of presentation by opposing advocates. The object of an ex parte proceeding is nevertheless to yield a substantially just result. The judge has an affirmative responsibility to accord the absent party just consideration. The lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision.
 

 4-7. INFORMATION ABOUT LEGAL SERVICES
 

 4-7.2 COMMUNICATIONS CONCERNING A LAWYER’S SERVICES
 

 The following shall apply to any communication conveying information about a lawyer’s or a law firm’s services except as provided in subdivisions (e) and (f) of rule 4-7.1:
 

 (a) Required Content of Advertisements and Unsolicited Written Communications.
 

 (1)
 
 Name of Lavxyer or Lavxyer Referral Service.
 
 All advertisements and written communications pursuant to these rules shall include the name of at least 1 lawyer or the lawyer referral service responsible for their content.
 

 (2)
 
 Location of Practice.
 
 All advertisements and written communications provided for under these rules shall disclose, by city or town, 1 or more bona fide office locations of the lawyer or lawyers who will actually perform the services advertised. If the office location is outside a city or town, the county in which the office is located must be disclosed. A lawyer referral service shall disclose the geographic area in which the lawyer practices when a referral is made. For the purposes of this rule, a bona fide office is defined as a physical location maintained by the lawyer or law firm where the lawyer or law firm reasonably expects to furnish legal services in a substantial way on a regular and continuing basis.
 

 (b) Permissible Content of Advertisements and Unsolicited Written Communications. If the content of an advertisement in any public media or unsolicited written communication is limited to the following information, the advertisement or unsolicited written communication-4s-exempt-from the filing and review requirement and, if true-and-not-prohibited-by few, shall be presumed to be permissible and not to be misleading or deceptive under these rules.
 

 
 *130
 

 (1)Lawyers and Law Firms.
 
 A lawyer or law firm may include the following information in advertisements and unsolicited written communications:
 

 (A) the name of the lawyer or law firm subject to the requirements of this rule and rule 4-7.9, a listing of lawyers associated with the firm, office locations and parking arrangements, disability accommodations, telephone numbers, website addresses, and electronic mail addresses, office and telephone service hours, and a designation such as “attorney” or “law firm”;
 

 (B) date of admission to The Florida Bar and any other bars, current membership or positions held in The Florida Bar or its sections or committees, former membership or positions held in The Florida Bar or its sections or committees with dates of membership, former positions of employment held in the legal profession with dates the positions were held, years of experience practicing law, number of lawyers in the advertising law firm, and a listing of federal courts and jurisdictions other than Florida where the lawyer is licensed to practice;
 

 (C) technical and professional licenses granted by the state or other recognized licensing authorities and educational degrees received, including dates and institutions;
 

 (D) military service, including branch and dates of service;
 

 (E) foreign language ability;
 

 (F) fields of law in which the lawyer practices, including official certification logos, subject to the requirements of subdivision (c)(6) of this rule regarding use of terms such as certified, specialist, and expert;
 

 (G) prepaid or group legal service plans in which the lawyer participates;
 

 (H) acceptance of credit cards;
 

 (I) fee for initial consultation and fee schedule, subject to the requirements of subdivisions (c)(7) and (c)(8) of this rule regarding cost disclosures and honoring advertised fees;
 

 (J) common salutary language such as “best wishes,” “good luck,” “happy holidays,” or “pleased to announce”;
 

 (K) punctuation marks and common typographical marks;
 

 (L) an illustration of the scales of justice not deceptively similar to official certification logos or The Florida Bar logo, a gavel, traditional renditions of Lady Justice, the Statue of Liberty, the American flag, the American eagle, the State of Florida flag, an unadorned set of law books, the inside or outside of a courthouse, column(s), diploma(s), or a photograph of the lawyer or lawyers who are members of or employed by the firm against a plain background consisting of a single solid color or a plain unadorned set of law books.
 

 (2)
 
 Lawyer Referral Services.
 
 A lawyer referral service may advertise its name, location, telephone number, the referral fee charged, its hours of operation, the process by which referrals are made, the areas of law in which referrals are offered, the geographic area in which the lawyers practice to whom those responding to the advertisement will be referred, and, if applicable, its nonprofit status, its status as a lawyer referral service approved by The Florida Bar, and the logo of its sponsoring bar association.
 

 (3)
 
 Public Service Announcements.
 
 A lawyer or law firm may be listed as a sponsor of a public service announcement or charitable, civic, or community
 
 *131
 
 program or event as long as the information about the lawyer or law firm is limited to the permissible content set forth in subdivision (b)(1) of this rule.
 

 (c) Prohibitions and General Regulations Governing Content of Advertisements and Unsolicited Written Communications.
 

 (1)
 
 Statements About Legal Services.
 
 A lawyer shall not make or permit to be made a false, misleading, or deceptive communication about the lawyer or the lawyer’s services. A communication violates this rule if it:
 

 (A) contains a material misrepresentation of fact or law;
 

 (B) is false or misleading;
 

 (C) fails to disclose material information necessary to prevent the information supplied from being false or misleading;
 

 (D) is unsubstantiated in fact;
 

 (E) is deceptive;
 

 (F) contains any reference to past successes or results obtained;
 

 (G) promises results;
 

 (H) states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law;
 

 (I) compares the lawyer’s services with other lawyers’ services, unless the comparison can be factually substantiated; or
 

 (J) contains a testimonial.
 

 (2)
 
 Descriptive Statements.
 
 A lawyer shall not make statements describing or characterizing the quality of the lawyer’s services in advertisements and unsolicited written communications.
 

 (3)
 
 Prohibited Visual and Verbal Portrayals and Illustrations.
 
 A lawyer shall not include in any advertisement or unsolicited written communication any visual or verbal descriptions, depictions, illustrations, or portrayals of persons, things, or events that are deceptive, misleading, manipulative, or likely to confuse the viewer.
 

 (4)
 
 Advertising Areas of Practice.
 
 A lawyer or law firm shall not advertise for legal employment in an area of practice in which the advertising lawyer or law firm does not currently practice law.
 

 (5)
 
 Stating or Implying Florida Bar Approval.
 
 A lawyer or law firm shall not make any statement that directly or impliedly indicates that the communication has received any kind of approval from The Florida Bar.
 

 (6)
 
 Communication of Fields of Practice.
 
 A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law. A lawyer shall not state or imply that the lawyer is “certified,” “board certified,” a “specialist,” or an “expert” except as follows:
 

 (A) Florida Bar Certified Lawyers. A lawyer who complies with the Florida certification plan as set forth in chapter 6, Rules Regulating The Florida Bar, may inform the public and other lawyers of the lawyer’s certified areas of legal practice. Such communications should identify The Florida Bar as the certifying organization and may state that the lawyer is “certified,” “board certified,” a “specialist in (area of certification),” or an “expert in (area of certification).”
 

 (B) Lawyers Certified by Organizations Other Than The Florida Bar or Another State Bar. A lawyer certified by an organization other than The Florida Bar or another state bar may inform the public and other lawyers of the lawyer’s certified area(s) of legal practice by stating that the lawyer is
 
 *132
 
 “certified,” “board certified,” a “specialist in (area of certification),” or an “expert in (area of certification)” if:
 

 (i) the organization’s program has been accredited by The Florida Bar as provided elsewhere in these Rules Regulating The Florida Bar; and,
 

 (ii) the member includes the full name of the organization in all communications pertaining to such certification.
 

 (C) Certification by Other State Bars. A lawyer certified by another state bar may inform the public and other lawyers of the lawyer’s certified area(s) of legal practice and may state in communications to the public that the lawyer is “certified,” “board certified,” a “specialist in (area of certification),” or an “expert in (area of certification)” if:
 

 (i) the state bar program grants certification on the basis of standards reasonably comparable to the standards of the Florida certification plan as set forth in chapter 6, Rules Regulating The Florida Bar, as determined by The Florida Bar; and,
 

 (ii) the member includes the name of the state bar in all communications pertaining to such certification.
 

 (7)
 
 Disclosure of Liability For Expenses Other Than Fees.
 
 Every advertisement and unsolicited written communication that contains information about the lawyer’s fee, including those that indicate no fee will be charged in the absence of a recovery, shall disclose whether the client will be liable for any expenses in addition to the fee.
 

 (8)
 
 Period for Which Advertised Fee Must Be Honored.
 
 A lawyer who advertises a specific fee or range of fees for a particular service shall honor the advertised fee or range of fees for at least 90 days unless the advertisement specifies a shorter period; provided that, for advertisements in the yellow pages of telephone directories or other media not published more frequently than annually, the advertised fee or range of fees shall be honored for no less than 1 year following publication.
 

 (9)
 
 Firm Name.
 
 A lawyer shall not advertise services under a name that violates the provisions of rule 4-7.9.
 

 (10)
 
 Language of Required Statements.
 
 Any words or statements required by this subchapter to appear in an advertisement or direct mail communication must appear in the same language in which the advertisement appears. If more than 1 language is used in an advertisement or direct mail communication, any words or statements required by this subchapter must appear in each language used in the advertisement or direct mail communication.
 

 (11)
 
 Appearance of Required Statements.
 
 Any words or statements required by this subchapter to appear in an advertisement or direct mail communication must be clearly legible if written or intelligible if spoken aloud.
 

 (12)
 
 Payment by Nonadvertising Lawyer.
 
 No lawyer shall, directly or indirectly, pay all or a part of the cost of an advertisement by a lawyer not in the same firm. Rule 4 — 1.5(f)(4)(D) (regarding the division of contingency fees) is not affected by this provision even though the lawyer covered by rule 4-1.5(f)(4)(D)(ii) advertises.
 

 (13)
 
 Referrals to Another Lawyer.
 
 If the case or matter will be referred to another lawyer or law firm, the communication shall include a statement so advising the prospective client.
 

 
 *133
 
 (14)
 
 Payment for Recommendations; Lawyer Referral Service Fees.
 
 A lawyer shall not give anything of value to a person for recommending the lawyer’s services, except that a lawyer may pay the reasonable cost of advertising or written or recorded communication permitted by these rules, may pay the usual charges of a lawyer referral service or other legal service organization, and may purchase a law practice in accordance with rule 4-1.17.
 

 (15)
 
 Use of Celebrity Prohibited.
 
 A lawyer shall not include in any advertisement or unsolicited written communication any celebrity whose voice or image is recognizable to the public.
 

 (16)
 
 Prohibited Sounds.
 
 A lawyer shall not include in any advertisement or unsolicited written communication any sound that is deceptive, misleading, manipulative, or that is likely to confuse the listener.
 

 Comment
 

 This rule governs all communications about a lawyer’s services, including advertising permitted by this subchapter. Whatever means are used to make known a lawyer’s services, statements about them must be truthful. This precludes any material misrepresentation or misleading omission, such as where a lawyer states or implies certification or recognition as a specialist other than in accordance with this rule, where a lawyer implies that any court, tribunal, or other public body or official can be improperly influenced, or where a lawyer advertises a particular fee or a contingency fee without disclosing whether the client will also be liable for costs. Another example of a misleading omission is an advertisement for a law firm that states that all the firm’s lawyers are juris doctors but does not disclose that a juris doctorate is a law degree rather than a medical degree of some sort and that virtually any law firm in the United States can make the same claim. Although this rule permits lawyers to list the jurisdictions and courts to which they are admitted, it also would be misleading for a lawyer who does not list other jurisdictions or courts to state that the lawyer is a member of The Florida Bar. Standing by itself, that otherwise truthful statement implies falsely that the lawyer possesses a qualification not common to virtually all lawyers practicing in Florida.
 

 Prohibited information
 

 The prohibition in subdivision (c)(1)(F) precludes advertisements about results obtained on behalf of a client, such as the amount of a damage award or the lawyer’s record in obtaining favorable verdicts. Such information may create the unjustified expectation that similar results can be obtained for others without reference to the specific factual and legal circumstances.
 

 The prohibition in subdivision (c)(l)(I) of comparisons that cannot be factually substantiated would preclude a lawyer from representing that the lawyer or the lawyer’s law firm is “the best,” “one of the best,” or “one of the most experienced” in a field of law.
 

 The prohibition in subdivision (c)(l)(J) precludes endorsements or testimonials, whether from clients or anyone else, because they are inherently misleading to a person untrained in the law. Potential clients are likely to infer from the testimonial that the lawyer will reach similar results in future cases. Because the lawyer cannot directly make this assertion, the lawyer is not permitted to indirectly make that assertion through the use of testimonials.
 

 
 *134
 
 Subdivision (c)(3) prohibits visual or verbal descriptions, depictions, portrayals, or illustrations in any advertisement which create suspense, or contain exaggerations or appeals to the emotions, call for legal services, or create consumer problems through characterization and dialogue ending with the lawyer solving the problem. Illustrations permitted under
 
 Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio,
 
 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985), are informational and not misleading, and are therefore permissible. As an example, a drawing of a fist, to suggest the lawyer’s ability to achieve results, would be barred. Examples of permissible illustrations would include a graphic rendering of the scales of justice to indicate that the advertising attorney practices law, a picture of the lawyer, or a map of the office location.
 

 Communication of fields of practice
 

 This rule permits a lawyer or law firm to indicate areas of practice in communications about the lawyer’s or law firm’s services, such as in a telephone directory or other advertising, provided the advertising lawyer or law firm actually practices in those areas of law at the time the advertisement is disseminated. If a lawyer practices only in certain fields, or will not accept matters except in such fields, the lawyer is permitted so to indicate. However, no lawyer who is not certified by The Florida Bar, by another state bar with comparable standards, or an organization accredited by The Florida Bar may be described to the public as a “specialist” or as “specializing,” “certified,” “board certified,” being an “expert” or having “expertise in,” or any variation of similar import. A lawyer may indicate that the lawyer concentrates in, focuses on, or limits the lawyer’s practice to particular areas of practice as long as the statements are true.
 

 Paying others to recommend a lawyer
 

 A lawyer is allowed to pay for advertising permitted by this rule and for the purchase of a law practice in accordance with the provisions of rule 4-1.17, but otherwise is not permitted to pay or provide other tangible benefits to another person for procuring professional work. However, a legal aid agency or prepaid legal services plan may pay to advertise legal services provided under its auspices. Likewise, a lawyer may participate in lawyer referral programs and pay the usual fees charged by such programs, subject, however, to the limitations imposed by rule 4-7.10. This rule does not prohibit paying regular compensation to an assistant, such as a secretary or advertising consultant, to prepare communications permitted by this rule.
 

 Required disclosures
 

 Required disclosures would be ineffective if they appeared in an advertisement so briefly or minutely as to be overlooked or ignored. Thus, required information must be legible if written or intelligible if spoken aloud to ensure that the recipient receives the information.
 

 Use of sounds
 

 The prohibition against deceptive, misleading, or manipulative sounds precludes, for example, the sound of sirens or car crashes.
 

 RULE 4-7.4 DIRECT CONTACT WITH PROSPECTIVE CLIENTS
 

 (a) Solicitation. Except as provided in subdivision (b) of this rule, a lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, in person or otherwise, when a significant motive for the lawyer’s doing so
 
 *135
 
 is the lawyer’s pecuniary gain. A lawyer shall not permit employees or agents of the lawyer to solicit feon the lawyer’s behalf. A lawyer shall not enter into an agreement for, charge, or collect a fee for professional employment obtained in violation of this rule. The term “solicit” includes contact in person, by telephone, telegraph, or facsimile, or by other communication directed to a specific recipient and includes (i) any written form of communication directed to a specific recipient and not meeting the requirements of subdivision (b) of this rule, and (ii) any electronic mail communication directed to a specific recipient and not meeting the requirements of subdivision (c) of rule 4-7.6.
 

 (b) Written Communication Sent on an Unsolicited Basis.
 

 (1) A lawyer shall not send, or knowingly permit to be sent, on the lawyer’s behalf or on behalf of the lawyer’s firm or partner, an associate, or any other lawyer affiliated with the lawyer or the lawyer’s firm, an unsolicited written communication directly or indirectly to a prospective client for the purpose of obtaining professional employment if:
 

 (A) the written communication concerns an action for personal injury or wrongful death or otherwise relates to an accident or disaster involving the person to whom the communication is addressed or a relative of that person, unless the accident or disaster occurred more than 30 days prior to the mailing of the communication;
 

 (B) the written communication concerns a specific matter and the lawyer knows or reasonably should know that the person to whom the communication is directed is represented by a lawyer in the matter;
 

 (C) it has been made known to the lawyer that the person does not want to receive such communications from the lawyer;
 

 (D) the communication involves coercion, duress, fraud, overreaching, harassment, intimidation, or undue influence;
 

 (E) the communication contains a false, fraudulent, misleading, or deceptive statement or claim or is improper under subdivision (c)(1) of rule 4-7.2;-©j?
 

 (F) the lawyer knows or reasonably should know that the physical, emotional, or mental state of the person makes it unlikely that the person would exercise reasonable judgment in employing a lawyers or
 

 (G) the communication concerns a request for an injunction for protection against any form of physical violence and is addressed to the respondent in the injunction petition, if the lawyer knows or reasonably should know that the respondent named in the injunction petition has not yet been served with notice of process in the matter.
 

 (2) Written communications to prospective clients for the purpose of obtaining professional employment are subject to the following requirements:
 

 (A) Written communications to a prospective client are subject to the requirements of rule 4-7.2.
 

 (B) The first page of such written communications shall be plainly marked “advertisement” in red ink, and the lower left corner of the face of the envelope containing a written communication likewise shall carry a prominent, red “advertisement” mark. If the written communication is in the form of a self-mailing brochure or pamphlet, the “advertisement” mark in red ink shall appear on the address panel of the brochure or pamphlet and
 
 *136
 
 on the inside of the brochure or pamphlet. Brochures solicited by clients or prospective clients need not contain the “advertisement” mark.
 

 (C) Written communications mailed to prospective clients shall be sent only by regular U.S. mail, not by registered mail or other forms of restricted delivery.
 

 (D) Every written communication shall be accompanied by a written statement detailing the background, training and experience of the lawyer or law firm. This statement must include information about the specific experience of the advertising lawyer or law firm in the area or areas of law for which professional employment is sought. Every written communication disseminated by a lawyer referral service shall be accompanied by a written statement detailing the background, training, and experience of each lawyer to whom the recipient may be referred.
 

 (E) If a contract for representation is mailed -with the written communication, the top of each page of the contract shall be marked “SAMPLE” in red ink in a type size 1 size larger than the largest type used in the contract and the words “DO NOT SIGN” shall appear on the client signature line.
 

 (F) The first sentence of any written communication prompted by a specific occurrence involving or affecting the intended recipient of the communication or a family member shall be: “If you have already retained a lawyer for this matter, please disregard this letter.”
 

 (G) Written communications shall not be made to resemble legal pleadings or other legal documents. This provision does not preclude the mailing of brochures and pamphlets.
 

 (H) If a lawyer other than the lawyer whose name or signature appears on the communication will actually handle the case or matter, any written communication concerning a specific matter shall include a statement so advising the client.
 

 (I) Any written communication prompted by a specific occurrence involving or affecting the intended recipient of the communication or a family member shall disclose how the lawyer obtained the information prompting the communication. The disclosure required by this rule shall be specific enough to help the recipient understand the extent of the lawyer’s knowledge regarding the recipient’s particular situation.
 

 (J) A written communication seeking employment by a specific prospective client in a specific matter shall not reveal on the envelope, or on the outside of a self-mailing brochure or pamphlet, the nature of the client’s legal problem.
 

 Comment
 

 There is a potential for abuse inherent in direct solicitation by a lawyer of prospective clients known to need legal services. It subjects the person to the private importuning of a trained advocate, in a direct interpersonal encounter. A prospective client often feels overwhelmed by the situation giving rise to the need for legal services and may have an impaired capacity for reason, judgment, and protective self-interest. Furthermore, the lawyer seeking the retainer is faced with a conflict stemming from the lawyer’s own interest, which may color the advice and representation offered the vulnerable prospect.
 

 
 *137
 
 The situation is therefore fraught with the possibility of undue influence, intimidation, and overreaching. This potential for abuse inherent in direct solicitation of prospective clients justifies the 30-day restriction, particularly since lawyer advertising permitted under these rules offers an alternative means of communicating necessary information to those who may be in need of legal services.
 

 Advertising makes it possible for a prospective client to be informed about the need for legal services, and about the qualifications of available lawyers and law firms, without subjecting the prospective client to direct personal persuasion that may overwhelm the client’s judgment.
 

 The use of general advertising to transmit information from lawyer to prospective client, rather than direct private contact, will help to assure that the information flows cleanly as well as freely. Advertising is out in public view, thus subject to scrutiny by those who know the lawyer. This informal review is itself likely to help guard against statements and claims that might constitute false or misleading communications. Direct private communications from a lawyer to a prospective elient are not subject to such third-party scrutiny and consequently are much more likely to approach (and perhaps cross) the dividing line between accurate representations and those that are false and misleading.
 

 Direct written communications seeking employment by specific prospective clients generally present less potential for abuse or overreaching than in-person solicitation and are therefore not prohibited for most types of legal matters, but are subject to reasonable restrictions, as set forth in this rule, designed to minimize or preclude abuse and overreaching and to ensure lawyer accountability if such should occur. This rule allows targeted mail solicitation of potential plaintiffs or claimants in personal injury and wrongful death causes of action or other causes of action that relate to an accident, disaster, death, or injury, but only if mailed at least 30 days after the incident. This restriction is reasonably required by the sensitized state of the potential clients, who may be either injured or grieving over the loss of a family member, and the abuses that experience has shown exist in this type of solicitation.
 

 Letters of solicitation and their envelopes must be clearly marked “advertisement.” This will avoid the recipient’s perceiving that there is a need to open the envelope because it is from a lawyer or law firm, only to find the recipient is being solicited for legal services. With the envelope and letter marked “advertisement,” the recipient can choose to read the solicitation, or not to read it, without fear of legal repercussions.
 

 In addition, the lawyer or law firm should reveal the source of information used to determine that the recipient has a potential legal problem. Disclosure of the information source will help the recipient to understand the extent of knowledge the lawyer or law firm has regarding the recipient’s particular situation and will avoid misleading the recipient into believing that the lawyer has particularized knowledge about the recipient’s matter if the lawyer does not. The lawyer or law firm must disclose sufficient information or explanation to allow the recipient to locate for himself or herself the information that prompted the communication from the lawyer.
 

 This rule would not prohibit a lawyer from contacting representatives of organizations or groups that may be interested in establishing a group or prepaid legal plan for its members, insureds, beneficiaries, or other third parties for the purpose of informing such entities of the availability of
 
 *138
 
 and details concerning the plan or arrangement that the lawyer or the lawyer’s law firm is willing to offer. This form of communication is not directed to a specific prospective client known to need legal services related to a particular matter. Rather, it is usually addressed to an individual acting in a fiduciary capacity seeking a supplier of legal services for others who may, if they choose, become prospective clients of the lawyer. Under these circumstances, the activity that the lawyer undertakes in communicating with such representatives and the type of information transmitted to the individual are functionally similar to and serve the same purpose as advertising permitted under other rules in this subchapter.
 

 RULE 4-7.7 EVALUATION OF ADVERTISEMENTS
 

 (a) Filing and Advisory Opinion. Subject to the exemptions stated in rule 4-7.8, any lawyer who advertises services through any public media or through written communications sent on an unsolicited basis to prospective clients shall file a copy of each such advertisement with The Florida Bar at its headquarters address in Tallahassee for evaluation of compliance with these rules.
 

 (1)
 
 Television and Radio Advertisements.
 
 The following shall apply to television and radio advertisements:
 

 (A) Prior Review of Television and Radio Advertisements. All television and radio advertisements required to be filed for review must be filed at least 4520 days prior to the lawyer’s first dissemination of the advertisement so as to provide a 15-day evaluation period plus 5 days’ mailing time.
 

 (B) Voluntary Prior Filing. A lawyer may obtain an advisory opinion concerning the compliance of a contemplated television or radio advertisement prior to production of the advertisement by submitting to The Florida Bar a script, a printed copy of any on-screen text, a description of any visual images to be used in a television advertisement, and the fee specified in this rule. The voluntary prior submission shall not satisfy the filing and evaluation requirements of these rules, but The Florida Bar shall charge no additional fee for evaluation of the completed advertisement for which a complete voluntary prior filing has been made.
 

 (C) Evaluation of Advertisements. The Florida Bar shall evaluate all advertisements filed with it pursuant to this rule for compliance with the applicable rules set forth in this subchapter 4-7. The Florida Bar shall complete its evaluation and shall notify the lawyer whether the advertisement is in compliance with subchapter 4-7 within 15 days of receipt of a complete filing plus 5 days’ mailing time. If The Florida Bar does not send any communication to the filer within 15 days of receipt of a complete filing, the advertisement will be deemed approved.
 

 (D) Substantiating Information. Evaluation of television and radio advertisements conducted under this subdivision is limited to determination of compliance with subchapter 4-7 and does not extend to substantiation of factual claims or statements contained in the advertisements. Notice of compliance with subchapter 4-7 does not alter the lawyer’s responsibility for the accuracy of factual claims or statements.
 

 (E) Notice of Evaluation; Effect of Use of Advertisement. A lawyer may disseminate a television or radio advertisement upon receipt of notifica
 
 *139
 
 tion by The Florida Bar that the advertisement complies with subchapter 4-7. A lawyer who disseminates an advertisement not in compliance with subchapter 4-7, whether the advertisement was filed or not, is subject to discipline and sanctions as provided in these Rules Regulating The Florida Bar.
 

 (F) Reliance on Notice of Compliance. A finding of compliance by The Florida Bar in television and radio advertisements shall be binding on The Florida Bar in a grievance proceeding unless the advertisement contains a misrepresentation that is not apparent from the face of the advertisement.
 

 (2)
 
 Other Advertisements.
 
 The following shall apply to advertisements other than television and radio:
 

 (A) Filing and Review. All other advertisements required to be filed for review must be filed either prior to or concurrently with the lawyer’s first dissemination of the advertisement or written communication.
 

 (B) Voluntary Prior Filing. A lawyer may obtain an advisory opinion concerning the compliance of a contemplated advertisement or written communication that is not required to be filed prior to its first use in advance of disseminating the advertisement or communication by submitting the material and fee specified in subdivision (b) of this rule to The Florida Bar at least 15 days prior to such dissemination. If The Florida Bar finds that the advertisement complies with these rules, the lawyer’s voluntary submission shall be deemed to satisfy the filing requirement set forth in this rule.
 

 (C) Evaluation of Advertisements. The Florida Bar shall evaluate all advertisements and written communications filed with it pursuant to this subdivision for compliance with the applicable rules set forth in this sub-chapter 4-7. The Florida Bar shall complete its evaluation within 15 days of receipt of a complete filing unless The Florida Bar determines that there is reasonable doubt that the advertisement or written communication is in compliance with the rules and that further examination is warranted but cannot be completed within the 15-day period, and so advises the filer within the 15-day period. In the latter event, The Florida Bar shall complete its review as promptly as the circumstances reasonably allow. If The Florida Bar does not send any communication to the filer within 15 days of receipt of a complete filing, the advertisement will be deemed approved. The 15-day evaluation period shall not apply to advertisements that are exempt from the filing requirement as set forth in rule 4-7.8, but The Florida Bar shall complete its review as promptly as the circumstances reasonably allow. A lawyer may not obtain an advisory opinion concerning communications that are not subject to subchapter 4-7 as listed in rule 4 — 7.1(d) through (f).
 

 (D) Substantiating Information. If requested to do so by The Florida Bar, the filing lawyer shall submit information to substantiate representations made or implied in that lawyer’s advertisement or written communication.
 

 (E) Notice of Noncompliance. When The Florida Bar determines that an advertisement or written communication is not in compliance with
 
 *140
 
 the applicable rules, The Florida Bar shall advise the lawyer that dissemination or continued dissemination of the advertisement or written communication may result in professional discipline.
 

 (F) Reliance on Notice of Compliance. A finding of compliance by The Florida Bar shall be binding on The Florida Bar in a grievance proceeding, unless the advertisement contains a misrepresentation that is not apparent from the face of the advertisement.
 

 (b) Contents of Filing. A filing with The Florida Bar as required or permitted by subdivision (a) shall consist of:
 

 (1) a copy of the advertisement or communication in the form or forms in which it is to be disseminated and is readily capable of duplication by The Florida Bar (e.g., videotapes, audiotapes, print media, photographs of outdoor advertising);
 

 (2) a transcript, if the advertisement or communication is on videotape or audiotape;
 

 (3) a printed copy of all text used in the advertisement, including both spoken language and on-screen text;
 

 (4) an accurate English translation, if the advertisement appears in a language other than English;
 

 (5) a sample envelope in which the written communication will be enclosed, if the communication is to be mailed;
 

 (6) a statement listing all media in which the advertisement or communication will appear, the anticipated frequency of use of the advertisement or communication in each medium in which it will appear, and the anticipated time period during which the advertisement or communication will be used; and
 

 (7)a fee paid to The Florida Bar, in an amount of $150 for submissions timely filed as provided in subdivision (a), or $250 for submissions not timely filed. This fee shall be used to offset the cost of evaluation and review of advertisements submitted under these rules and the cost of enforcing these rules.
 

 (c) Change of Circumstances; Refiling Requirement. If a change of circumstances occurring subsequent to The Florida Bar’s evaluation of an advertisement or written communication raises a substantial possibility that the advertisement or communication has become false or misleading as a result of the change in circumstances, the lawyer shall promptly refile the advertisement or a modified advertisement with The Florida Bar at its headquarters address in Tallahassee along with an explanation of the change in circumstances and an additional fee set by the board of governors but not exceeding $100.
 

 (d) Maintaining Copies of Advertisements. A copy or recording of an advertisement or written or recorded communication shall be submitted to The Florida Bar in accordance with the requirements of rule 4-7.7, and the lawyer shall retain a copy or recording for 3 years after its last dissemination along with a record of when and where it was used. If identical written communications are sent to 2 or more prospective clients, the lawyer may comply with this requirement by filing 1 of the identical written communications and retaining for 3 years a single copy together with a list of the names and addresses of persons to whom the written communication was sent.
 

 Comment
 

 This rule has a dual purpose: to enhance the court’s and the bar’s ability to monitor advertising practices for the protection of the public and to assist members
 
 *141
 
 of the bar to conform their advertisements to the requirements of these rules.
 

 Television and radio advertisements are a special form of media requiring special regulation. The unique characteristics of electronic media, including the pervasiveness of television and radio, the numbers of viewers reached by the electronic media, the ease with which these media are abused, the passiveness of the viewer or listener, the short span of usage of individual television and radio advertisements, and the inability of the bar to patrol the airwaves, make the electronic media especially subject to regulation in the public interest. Advertisements in television and radio have short lifespans, sometimes running their course within weeks. Television and radio advertisements can reach thousands of viewers even with one showing. Therefore, review of electronic media prior to its use is justified in electronic media, but may not be appropriate for advertisements in the other media. Upon receiving a complete filing, prior to a television or radio advertisement’s first use, The Florida Bar will advise the filing lawyer in writing whether the advertisement complies with subchapter 4-7. The opinion will be binding on The Florida Bar in a grievance proceeding, unless the advertisement contains a misrepresentation that is not apparent from the face of the advertisement.
 

 For all other advertisements required to be filed for review, the rule gives lawyers the option of submitting their advertisements to The Florida Bar for review prior to first use or submitting their advertisements at the time of first use. In either event, The Florida Bar will advise the filing lawyer in writing whether the advertisement appears to comply with the rules. The Florida Bar’s opinion will be binding on The Florida Bar in a grievance proceeding. A lawyer who wishes to obtain a safe harbor from discipline can, therefore, submit the lawyer’s advertisement and obtain The Florida Bar’s opinion prior to disseminating the advertisement. A lawyer who voluntarily files an advertisement and obtains a notice of compliance is therefore immune from grievance liability unless the advertisement contains a misrepresentation that is not apparent from the face of the advertisement. A lawyer who wishes to be able to rely on The Florida Bar’s opinion as demonstrating the lawyer’s good faith effort to comply with these rules has the responsibility of supplying The Florida Bar with all information material to a determination of whether an advertisement is false or misleading.
 

 RULE 4-7.10 LAWYER REFERRAL SERVICES
 

 (a) When Lawyers May Accept Referrals. A lawyer shall not accept referrals from a lawyer referral service, and it shall be a violation of these Rules Regulating The Florida Bar to do so, unless the service:
 

 (1) engages in no communication with the public and in no direct contact with prospective clients in a manner that would violate the Rules of Professional Conduct if the communication or contact were made by the lawyer;
 

 (2) receives no fee or charge that constitutes a division or sharing of fees, unless the service is a not-for-profit service approved by The Florida Bar pursuant to chapter 8 of these rules;
 

 (8) refers clients only to persons lawfully permitted to practice law in Florida when the services to be rendered constitute the practice of law in Florida;
 

 (4) carries or requires each lawyer participating in the service to carry professional liability insurance in an amount not less than $100,000 per claim or occurrence;
 

 
 *142
 
 (5) furnishes The Florida Bar, on a quarterly basis, with' -the names and Florida bar membership numbers of all lawyers participating in the service;-an4
 

 (6) furnishes The Florida Bar, on a quarterly basis, the names of all persons authorized to act on behalf of the service;
 

 (7) responds in writing, within 15 days, to any official inquiry by bar counsel when bar counsel is seeking information described in this subdivision or conducting an investigation into the conduct of the service or an attorney who accepts referrals from the service;
 

 (8) neither represents nor implies to the public that the service is endorsed or approved by The Florida Bar, unless the service is subject to chapter 8 of these rules;
 

 (9) uses its actual legal name or a registered fictitious name in all communications with the public; and
 

 (10) affirmatively states in all advertisements that it is a lawyer referral service.
 

 (b) Responsibility of Lawyer. A lawyer who accepts referrals from a lawyer referral service is responsible for ensuring that any advertisements or written communications used by the service comply with the requirements of the Rules Regulating The Florida Bar, and that the service is in compliance with the provisions of this subchapter. It shall be a violation of these Rules Regulating The Florida Bar and a failure of such responsibility if the lawyer knows or should have known that the service is not in compliance with applicable rules or if the lawyer failed to seek information necessary to determine compliance.
 

 (c) Definition of Lawyer Referral Service. A “lawyer referral service” is:
 

 (1) any person, group of persons, association, organization, or entity that receives a fee oi-ehargeany consideration, monetary or otherwise, given in exchange for referring or causing the direct or indirect referral of a potential client to a lawyer drawnselected from a specific group or panel of lawyers; or
 

 (2) any group or pooled advertising program operated by any person, group of persons, association, organization, or entity wherein the legal services advertisements utilize a common telephone number and potential clients are then referred only to lawyers or law firms participating in the group or pooled advertising program.
 

 A pro bono referral program, in which the participating lawyers do not pay a fee or charge of any kind to receive referrals or to belong to the referral panel, and are undertaking the referred matters without expectation of remuneration, is not a lawyer referral service within the definition of this rule.
 

 Comment
 

 Every citizen of the state should have ready access to the legal system. A person’s access to the legal system is enhanced by the assistance of a lawyer qualified to handle that person’s legal needs. Many of the citizens of the state who are potential consumers of legal services encounter difficulty in identifying and locating lawyers who are willing and qualified to consult with them about their legal needs. Lawyer referral services can facilitate the identification and intelligent selection of lawyers qualified to render assistance. However, because a potential for abuse exists, the participation of lawyers in referral services must be regulated to ensure protection of the public.
 

 It is in the public interest that a person seeking the assistance of counsel receive accurate information to select or be
 
 *143
 
 matched with counsel qualified to render the needed services. Therefore, a lawyer should not participate in a lawyer referral service that communicates misleading information to the public or that directly contacts prospective clients about available legal services in a manner that constitutes impermissible solicitation.
 

 One who avails oneself of legal services is well served only if those services are rendered by a lawyer who exercises independent legal judgment. The division or sharing of a fee risks the creation of an obligation that impairs a lawyer’s ability to exercise independent legal judgment. Therefore, the public interest usually compels the ethical prohibition against the division or sharing of fees and that ethical prohibition should likewise apply to the division or sharing of fees with a lawyer referral service. The prohibition does not extend to the lawyer’s paying a pre-ar-ranged, fixed-sum participation fee. Furthermore, the prohibition does not apply when the referring agency is a not-for-profit service operated by a bona fide state or local bar association under the supervision of and approved by The Florida Bar in order to ensure that such service fulfills the public-interest purposes of a lawyer referral service and to ensure that the risk of impairment of the lawyer’s ability to exercise independent legal judgment is in that circumstance minimal.
 

 It is in the public interest that a person receive legal services only from someone who is qualified to render them. Lawyers should strive to prevent harm resulting from the rendering of legal services by persons not legally qualified to do so. Therefore, a lawyer should not participate in a lawyer referral service that refers clients to persons not lawfully permitted to practice law in Florida when the services to be rendered constitute the practice of law in Florida.
 

 The quasi-institutionalization of legal services by a lawyer referral service implies that the service has screened the qualifications and financial responsibility of its participating lawyers. That implication may be misleading and does not exist when a prospective client directly selects a lawyer at arm’s length. Therefore, it is in the public interest that only lawyers who have established a certain amount of financial responsibility for professional liability participate in .a lawyer referral service. Accordingly, a lawyer should participate in a lawyer referral service only if the service requires proof of that financial responsibility.
 

 To enable The Florida Bar to fulfill its obligation to protect the public from unethical or other improper conduct by those who practice law in Florida, The Florida Bar must have available to it the identity of all lawyers participating in a lawyer referral service. Therefore, a lawyer should participate in a lawyer referral service only if the service furnishes The Florida Bar with the names of its participating lawyers and complies with all other applicable rules.
 

 4-8. MAINTAINING THE INTEGRITY OF THE PROFESSION
 

 RULE 4-8.4 MISCONDUCT
 

 A lawyer shall not:
 

 (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
 

 (b) commit a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer in other respects;
 

 
 *144
 
 (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, except that it shall not be professional misconduct for a lawyer for a criminal law enforcement agency or regulatory agency to advise others about or to supervise another in an undercover investigation, unless prohibited by law or rule, and it shall not be professional misconduct for a lawyer employed in a capacity other than as a lawyer by a criminal law enforcement agency or regulatory agency to participate in an undercover investigation, unless prohibited by law or rule;
 

 (d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic;
 

 (e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law;
 

 (f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law;
 

 (g) fail to respond, in writing, to any official inquiry by bar counsel or a disciplinary agency, as defined elsewhere in these rules, when bar counsel or the agency is conducting an investigation into the lawyer’s conduct. A written response shall be made:
 

 (1)within 15 days of the date of the initial written investigative inquiry by bar counsel, grievance committee, or board of governors;
 

 (2) within 10 days of the date of any follow-up written investigative inquiries by bar counsel, grievance committee, or board of governors;
 

 (3) within the time stated in any subpoena issued under these Rules Regulating The Florida Bar (without additional time allowed for mailing);
 

 (4) as provided in the Florida Rules of Civil Procedure or order of the referee in matters assigned to a referee; and
 

 (5) as provided in the Florida Rules of Appellate Procedure or order of the Supreme Court of Florida for matters pending action by that court.
 

 Except as stated otherwise herein or in the applicable rules, all times for response shall be calculated as provided elsewhere in these Rules Regulating The Florida Bar and may be extended or shortened by the inquirerbar counsel or the disciplinary agency making the official inquiry upon good cause shown;.
 

 Failure to respond to an official inquiry with no good cause shown may be a matter of contempt and processed in accordance with rule 3 — 7.11(f) of these Rules Regulating The Florida Bar.
 

 (h) willfully refuse, as determined by a court of competent jurisdiction, to timely pay a child support obligation; or
 

 (i) engage in sexual conduct with a client or a representative of a client that exploits or adversely affects the interests of the client or the lawyer-client relationship. including, but not limited to:
 

 (-l-)-requiring 0r demanding sexual relations with a client or a-representative of a client incident to or as a condition of a legal representation;
 

 (2) employing coercion, intimidation, or-undue influence-in-entering into sexu
 
 *145
 
 al relations with a client or a Representative of a clienfl-or-
 

 (3) continuing-to-represent a client if the lawyer’s sexual relations.with the client or a representative of-the client cause the lawyer-to-render incompetent representation.
 

 If the sexual conduct commenced after the lawyer-client relationship was formed it shall be presumed that the sexual conduct exploits or adversely affects the interests of the client or the lawyer-client relationship. A lawyer may rebut this presumption by proving by a preponderance of the evidence that the sexual conduct did not exploit or adversely affect the interests of the client or the lawyer-client relationship.
 

 The prohibition and presumption stated in this rule do not apply to a lawyer in the same firm as another lawyer representing the client if the lawyer involved in the sexual conduct does not personally provide legal services to the client and is screened from access to the file concerning the legal representation.
 

 Comment
 

 Lawyers are subject to discipline when they violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another, as when they request or instruct an agent to do so on the lawyer’s behalf. Subdivision (a), however, does not prohibit a lawyer from advising a client concerning action the client is legally entitled to take, provided that the client is not used to indirectly violate the Rules of Professional Conduct.
 

 Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving “moral turpitude.” That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or-breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.
 

 A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists. The provisions of rule 4-1.2(d) concerning a good faith challenge to the validity, scope, meaning, or application of the law apply to challenges of legal regulation of the practice of law.
 

 Subdivision (c) recognizes instances where lawyers in criminal law enforcement agencies or regulatory agencies advise others about or supervise others in undercover investigations, and provides an exception to allow the activity without the lawyer engaging in professional misconduct. The exception acknowledges current, acceptable practice of these agencies. Although the exception appears in this rule, it is also applicable to rules 4-4.1 and 4 — 4.3. However, nothing in the rule allows the lawyer to engage in such conduct if otherwise prohibited by law or rule.
 

 Subdivision (d) of this rule proscribes conduct that is prejudicial to the administration of justice. Such proscription includes the prohibition against discriminate-
 
 *146
 
 ry conduct committed by a lawyer while performing duties in connection with the practice of law. The proscription extends to any characteristic or status that is not relevant to the proof of any legal or factual issue in dispute. Such conduct, when directed towards litigants, jurors, witnesses, court personnel, or other lawyers, whether based on race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, physical characteristic, or any other basis, subverts the administration of justice and undermines the public’s confidence in our system of justice, as well as notions of equality. This subdivision does not prohibit a lawyer from representing a client as may be permitted by applicable law, such as, by way of example, representing a client accused of committing discriminatory conduct.
 

 Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer’s abuse of public office can suggest an inability to fulfill the professional role of attorney. The same is true of abuse of positions of private trust such as trustee, executor, administrator, guardian, or agent and officer, director, or manager of a corporation or other organization.
 

 A lawyer’s obligation to respond to an inquiry by a disciplinary agency is stated in subdivision (g) of this rule and subdivision (h)(2) of rule 3-7.6(h)(2). While response is mandatory, the lawyer may deny the charges or assert any available privilege or immunity or interpose any disability that prevents disclosure of a certain matter. A response containing a proper invocation thereof is sufficient under the Rules Regulating The Florida Bar. This obligation is necessary to ensure the proper and efficient operation of the disciplinary system.
 

 Subdivision (h) of this rule was added to make consistent the treatment of attorneys who fail to pay child support with the treatment of other professionals who fail to pay child support, in accordance with the provisions of section 61.13015, Florida Statutes. That section provides for the suspension or denial of a professional license due to delinquent child support payments after all other available remedies for the collection of child support have been exhausted. Likewise, subdivision (h) of this rule should not be used as the primary means for collecting child support, but should be used only after all other available remedies for the collection of child support have been exhausted. Before a grievance may be filed or a grievance procedure initiated under this subdivision, the court that entered the child support order must first make a finding of willful refusal to pay. The child support obligation at issue under this rule includes both domestic (Florida) and out-of-state (URESA) child support obligations, as well as arrear-ages.
 

 Subdivision (i) proscribes exploitation of the client andor the lawyer-client relationship by means of commencement of sexual conduct. The lawyer-client relationship is grounded on mutual trust. A sexual relationship that exploits that trust compromises the lawyer-client relationship. — For purposes of this subdivision, client means an individual, or a representative of-the client, including but not limited to a duly authorised constituent of a corporate or other non-personal entity,-and lawyer refers only to the lawyer(s) engaged in the legal representation, and-not other members of the law firm. — Attorneys have a duty to exercise independent professional judgment on behalf of clients. Engaging in sexual relationships with clients has the capacity to impair the exercise of that judgment.
 

 
 *147
 
 Sexual conduct between a lawyer and client violates this rule, regardless of when the sexual conduct began when compared to the commencement of the lawyer-client relationship, if the sexual conduct exploits the lawyer-client relationship, negatively affects the client’s interest, creates a conflict of interest between the lawyer and client, or negatively affects the exercise of the lawyer’s independent professional .judgment in representing the client.
 

 Subdivision (i) creates a presumption that sexual conduct between a lawyer and client exploits or adversely affects the interests of the client or the lawyer-client relationship if the sexual conduct is entered into after the lawyer-client relationship begins. A lawyer charged with a violation of this rule may rebut this presumption by a preponderance of the evidence that the sexual conduct did not exploit the lawyer-client relationship, negatively affect the client’s interest, create a conflict of interest between the lawyer and client, or negatively affect the exercise of the lawyer’s independent professional judgment in representing the client.
 

 For purposes of this rule, a “representative of a client” is an agent of the client who supervises, directs, or regularly consults with the organization’s lawyer concerning a client matter or has authority to obligate the organization with respect to the matter, or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.
 

 CHAPTER 5. RULES REGULATING TRUST ACCOUNTS
 

 5-1. GENERALLY
 

 RULE 5-1.1 TRUST ACCOUNTS
 

 (a) Nature of Money or Property Entrusted to Attorney.
 

 (1)
 
 Trust Account Required; Commingling Prohibited.
 
 A lawyer shall hold in trust, separate from the lawyer’s own property, funds and property of clients or third persons that are in a lawyer’s possession in connection with a representation. All funds, including advances for fees, costs, and expenses, shall be kept in a separate bank or savings and loan association account maintained in the state where the lawyer’s office is situated or elsewhere with the consent of the client or third person and clearly labeled and designated as a trust account. A lawyer may maintain funds belonging to the lawyer in the trust account in an amount no more than is reasonably sufficient to pay bank charges relating to the trust account.
 

 (2)
 
 Compliance With Client Directives.
 
 Trust funds may be separately held and maintained other than in a bank or savings and loan association account if the lawyer receives written permission from the client to do so and provided that written permission is received before maintaining the funds other than in a separate account.
 

 (3)
 
 Safe Deposit Boxes.
 
 If a member of the bar uses a safe deposit box to store trust funds or property, the member shall advise the institution in which the deposit box is located that it may include property of clients or third persons.
 

 (b) Application of Trust Funds or Property to Specific Purpose. Money or other property entrusted to an attorney for a specific purpose, including advances for fees, costs, and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of an attorney are not subject to counterclaim or setoff for attorney’s fees, and a refusal to account for and deliver over such property
 
 *148
 
 upon demand shall be deemed a conversion.
 

 (c) Liens Permitted. This subchapter does not preclude the retention of money or other property upon which the lawyer has a valid lien for services nor does it preclude the payment of agreed fees from the proceeds of transactions or collection.
 

 (d) Controversies as to Amount of Fees. Controversies as to the amount of fees are not grounds for disciplinary proceedings unless the amount demanded is clearly excessive, extortionate, or fraudulent. In a controversy alleging a clearly excessive, extortionate, or fraudulent fee, announced willingness of an attorney to submit a dispute as to the amount of a fee to a competent tribunal for determination may be considered in any determination as to intent or in mitigation of discipline; provided, such willingness shall not preclude admission of any other relevant admissible evidence relating to such controversy, including evidence as to the withholding of funds or property of the client, or to other injury to the client occasioned by such controversy.
 

 (e) Notice of Receipt of Trust Funds; Delivery; Accounting. Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
 

 (f) Disputed Ownership of Trust Funds. When in the course of representation a lawyer is in possession of property in which 2 or more persons (1 of whom may be the lawyer) claim interests, the property shall be treated by the lawyer as trust property, but the portion belonging to the lawyer or law firm shall be withdrawn within a reasonable time after it becomes due unless the right of the lawyer or law firm to receive it is disputed, in which event the portion in dispute shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.
 

 (g)Interest on Trust Accounts (IOTA) Program.
 

 (1)
 
 Definitions.
 
 As used herein, the term:
 

 (A) “nominal or short term” describes funds of a client or third person that, pursuant to subdivision (3), below, the lawyer has determined cannot practicably be invested for ■ the benefit-of — the client or third person earn income for the client or third person in excess of the costs to secure the income;
 

 (B) “Foundation” means The Florida Bar Foundation, Inc.;
 

 (C) “IOTA account” means an interest or dividend-bearing trust account benefiting The Florida Bar Foundation established in an eligible institution for the deposit of nominal or short-term funds of clients or third persons;
 

 (D) “Eligible Institution” means any bank or savings and loan association authorized by federal or state laws to do business in Florida and insured by the Federal Savings and Loan Insurance Corporation, or any successor insurance corporation(s) established by federal or state laws, or any open-end investment company registered with the Securities and Ex
 
 *149
 
 change Commission and authorized by federal or state laws to do business in Florida, all of which must meet the requirements set out in subdivision (5), below.
 

 (E) “Interest or dividend-bearing trust account” means a federally insured checking account or investment product, including a daily financial institution repurchase agreement or a money market fund. A daily financial institution repurchase agreement must be fully collateralized by, and an open-end money market fund must consist solely of, United States Government Securities. A daily financial institution repurchase agreement may be established only with an eligible institution that is deemed to be “well capitalized” or “adequately capitalized” as defined by applicable federal statutes and regulations. An open-end money market fund must hold itself out as a money market fund as defined by applicable federal statutes and regulations under the Investment Company Act of 1940, and have total assets of at least $250,000,000 million. The funds covered by this rule shall be subject to withdrawal upon request and without delay.
 

 (2)Required Participation.
 
 All nominal or short-term funds belonging to clients or third persons that are placed in trust with any member of The Florida Bar practicing law from an office or other business location within the state of Florida shall be deposited into one or more IOTA accounts, unless the funds may earn income for the client or third person in excess of the costs incurred to secure the income, except as provided elsewhere in this chapter. Only trust funds that are nominal or short term shall be deposited into an IOTA account. The member shall certify annually, in writing, that the member is in compliance with, or is exempt from, the provisions of this rule.
 

 (3)
 
 Determination of Nominal or Short-Term Funds.
 
 The lawyer shall exercise good faith judgment in determining upon receipt whether the funds of a client or third person are nominal or short term. In the exercise of this good faith judgment, the lawyer shall consider such factors as:
 

 (A) the amount of a client’s or third person’s funds to be held by the lawyer or law firm;
 

 (B) the period of time such funds are expected to be held;
 

 (C) the likelihood of delay in the relevant transaction(s) or proceeding(s);
 

 (D) the cost to the lawyer or law firm of establishing and maintaining an interest-bearing account or other appropriate investment for the benefit of the client or third person; and
 

 (E) minimum balance requirements and/or service charges or fees imposed by the eligible institution.
 

 The determination of whether a client’s or third person’s funds are nominal or short term shall rest in the sound judgment of the lawyer or law firm. No lawyer shall be charged with ethical impropriety or other breach of professional conduct based on the exercise of such good faith judgment.
 

 (4)
 
 Notice to Foundation.
 
 Lawyers or law firms shall advise the Foundation, at Post Office Box 1553, Orlando, Florida 32802-1553, of the establishment of an IOTA account for funds covered by this rule. Such notice shall include: the IOTA account number as assigned by the eligible institution; the name of the lawyer or law firm on the IOTA account; the eligible institution name; the eligible
 
 *150
 
 institution address; and the name and Florida Bar attorney number of the lawyer, or of each member of The Florida Bar in a law firm, practicing from an office or other business location within the state of Florida that has established the IOTA account.
 

 (5)Eligible Institution Participation in IOTA.
 
 Participation in the IOTA program is voluntary for banks, savings and loan associations, and investment companies. Institutions that choose to offer and maintain IOTA accounts must meet the following requirements:
 

 (A) Interest Rates and Dividends. Eligible institutions shall maintain IOTA accounts which pay the highest interest rate or dividend generally available from the institution to its non-IOTA account customers when IOTA accounts meet or exceed the same minimum balance or other account eligibility qualifications, if any.
 

 (B) Determination of Interest Rates and Dividends. In determining the highest interest rate or dividend generally available from the institution to its non-IOTA accounts in compliance with subdivision (5)(A), above, eligible institutions may consider factors, in addition to the IOTA account balance, customarily considered by the institution when setting interest rates or dividends for its customers, provided that such factors do not discriminate between IOTA accounts and accounts of non-IOTA customers, and that these factors do not include that the account is an IOTA account.
 

 (C) Remittance and Reporting Instructions. Eligible institutions shall:
 

 (i)calculate and remit interest or dividends on the balance of the deposited funds, in accordance with the institution’s standard practice for non-IOTA account customers, less reasonable service charges or fees, if any, in connection with the deposited funds, at least quarterly, to the Foundation;
 

 (ii) transmit with each remittance to the Foundation a statement showing the name of the lawyer or law firm from whose IOTA account the remittance is sent, the lawyer’s or law firm’s IOTA account number as assigned by the institution, the rate of interest applied, the period for which the remittance is made, the total interest or dividend earned during the remittance period, the amount and description of any service charges or fees assessed during the remittance period, and the net amount of interest or dividend remitted for the period; and
 

 (iii) transmit to the depositing lawyer or law firm, for each remittance, a statement showing the amount of interest or dividend paid to the Foundation, the rate of interest applied, and the period for which the statement is made.
 

 (6)
 
 Small Fund Amounts.
 
 The Foundation may establish procedures for a lawyer or law firm to maintain an interest-free trust account for client and third-person funds that are nominal or short term when their nominal or short-term trust funds cannot reasonably be expected to produce or have not produced interest income net of reasonable eligible institution service charges or fees.
 

 (7)
 
 Confidentiality and Disclosure.
 
 The Foundation shall protect the confidentiality of information regarding a lawyer’s or law firm’s trust account obtained by virtue of this rule. However, the Foundation shall, upon an official written inquiry of The Florida Bar made
 
 *151
 
 in the course of an investigation conducted under these Rules Regulating The Florida Bar, disclose requested relevant information about the location and account numbers of lawyer or law firm trust accounts.
 

 (h) Interest on Funds That Are Not Nominal or Short-Term. A lawyer who holds funds for a client or third person and who determines that the funds are not nominal or short-term as defined elsewhere in this subchapter shall not receive benefit from interest on funds held in trust.
 

 (i) Unidentifiable Trust Fund Accumulations and Trust Funds Held for Missing Owners. When an attorney’s trust account contains an unidentifiable accumulation of trust funds or property, or trust funds or property held for missing owners, such funds or property shall be so designated. Diligent search and inquiry shall then be made by the attorney to determine the beneficial owner of any unidentifiable accumulation or the address of any missing owner. If the beneficial owner of an unidentified accumulation is determined, the funds shall be properly identified as the lawyer’s trust property. If a missing beneficial owner is located, the trust funds or property shall be paid over or delivered to the beneficial owner if the owner is then entitled to receive the same. Trust funds and property that remain unidentifiable and funds or property that are held for missing owners after being designated as such shall, after diligent search and inquiry fail to identify the beneficial owner or owner’s address, be disposed of as provided in applicable Florida law.
 

 (j) Disbursement Against Uncollected Funds. A lawyer generally may not use, endanger, or encumber money held in trust for a client for purposes of carrying out the business of another client without the permission of the owner given after full disclosure of the circumstances. However, certain categories of trust account deposits are considered to carry a limited and acceptable risk of failure so that disbursements of trust account funds may be made in reliance on such deposits without disclosure to and permission of clients owning trust account funds subject to possibly being affected. Except for disbursements based upon any of the 6 categories of limited-risk uncollected deposits enumerated below, a lawyer may not disburse funds held for a client or on behalf of that client unless the funds held for that client are collected funds. For purposes of this provision, “collected funds” means funds deposited, finally settled, and credited to the lawyer’s trust account. Notwithstanding that a deposit made to the lawyer’s trust account has not been finally settled and credited to the account, the lawyer may disburse funds from the trust account in reliance on such deposit:
 

 (1) when the deposit is made by certified check or cashier’s check;
 

 (2) when the deposit is made by a check or draft representing loan proceeds issued by a federally or state-chartered bank, savings bank, savings and loan association, credit union, or other duly licensed or chartered institutional lender;
 

 (3) when the deposit is made by a bank check, official check, treasurer’s check, money order, or other such instrument issued by a bank, savings and loan association, or credit union when the lawyer has reasonable, and prudent grounds to believe the instrument will clear and constitute collected funds in the lawyer’s trust account within a reasonable period of time;
 

 (4) when the deposit is made by a check drawn on the trust account of a lawyer licensed to practice in the state
 
 *152
 
 of Florida or on the escrow or trust account of a real estate broker licensed under applicable Florida law when the lawyer has a reasonable and prudent belief that the deposit will clear and constitute collected funds in the lawyer’s trust account within a reasonable period of time;
 

 (5) when the deposit is made by a check issued by the United States, the State of Florida, or any agency or political subdivision of the State of Florida;
 

 (6) when the deposit is made by a check or draft issued by an insurance company, title insurance company, or a licensed title insurance agency authorized to do business in the state of Florida and the lawyer has a reasonable and prudent belief that the instrument will clear and constitute collected funds in the trust account within a reasonable period of time.
 

 A lawyer’s disbursement of funds from a trust account in reliance on deposits that are not yet collected funds in any circumstances other than those set forth above, when it results in funds of other clients being used, endangered, or encumbered without authorization, may be grounds for a finding of professional misconduct. In any event, such a disbursement is at the risk of the lawyer making the disbursement. If any of the deposits fail, the lawyer, upon obtaining knowledge of the failure, must immediately act to protect the property of the lawyer’s other clients. However, if the lawyer accepting any such check personally pays the amount of any failed deposit or secures or arranges payment from sources available to the lawyer other than trust account funds of other clients, the lawyer shall not be considered guilty of professional misconduct.
 

 (k) Overdraft Protection Prohibited. An attorney shall not authorize overdraft protection for any account that contains trust funds.
 

 Comment
 

 A lawyer must hold property of others with the care required of a professional fiduciary. This chapter requires maintenance of a bank or savings and loan association account, clearly labeled as a trust account and in which only client or third party trust funds are held.
 

 Securities should be kept in a safe deposit box, except when some other form of safekeeping is warranted by special circumstances.
 

 All property that is the property of clients or third persons should be kept separate from the lawyer’s business and personal property and, if money, in 1 or more trust accounts, unless requested otherwise in writing by the client. Separate trust accounts may be warranted when administering estate money or acting in similar fiduciary capacities.
 

 A lawyer who holds funds for a client or third person and who determines that the funds are not nominal or short term as defined elsewhere in this subchapter should hold the funds in a separate interest-bearing account with the interest accruing to the benefit of the client or third person unless directed otherwise in writing by the client or third person.
 

 Lawyers often receive funds from which the lawyer’s fee will be paid. The lawyer is not required to remit to the client funds that the lawyer reasonably believes represent fees owed. However, a lawyer may not hold funds to coerce a client into accepting the lawyer’s contention. The disputed portion of the funds must be kept in a trust account and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration. The undisputed portion of the funds shall be promptly distributed.
 

 
 *153
 
 Third parties, such as a client’s creditors, may have lawful claims against funds or other property in a lawyer’s custody. A lawyer may have a duty under applicable law to protect such third-party claims against wrongful interference by the client. When the lawyer has a duty under applicable law to protect the third-party claim and the third-party claim is not frivolous under applicable law, the lawyer must refuse to surrender the property to the client until the claims are resolved. However, a lawyer should not unilaterally assume to arbitrate a dispute between the client and the third party, and, where appropriate, the lawyer should consider the possibility of depositing the property or funds in dispute into the registry of the applicable court so that the matter may be adjudicated.
 

 The obligations of a lawyer under this chapter are independent of those arising from activity other than rendering legal services. For example, a lawyer who serves only as an escrow agent is governed by the applicable law relating to fiduciaries even though the lawyer does not render legal services in the transaction and is not governed by this rule.
 

 Each lawyer is required to be familiar with and comply with the Rules Regulating Trust Accounts as adopted by the Supreme Court of Florida.
 

 Money or other property entrusted to a lawyer for a specific purpose, including advances for fees, costs, and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of a lawyer are not subject to counterclaim or setoff for attorney’s fees, and a refusal to account for and deliver over such property upon demand shall be a conversion. This does not preclude the retention of money or other property upon which a lawyer has a valid lien for services or to preclude the payment of agreed fees from the proceeds of transactions or collections.
 

 Advances for fees and costs (funds against which costs and fees are billed) are the property of the client or third party paying same on a client’s behalf and are required to be maintained in trust, separate from the lawyer’s property. Retainers are not funds against which future services are billed. Retainers are funds paid to guarantee the future availability of the lawyer’s legal services and are earned by the lawyer upon receipt. Retainers, being funds of the lawyer, may not be placed in the client’s trust account.
 

 The test of excessiveness found elsewhere in the Rules Regulating The Florida Bar applies to all fees for legal services including retainers, nonrefundable retainers, and minimum or flat fees.
 

 RULE 5-1.2 TRUST ACCOUNTING RECORDS AND PROCEDURES
 

 (a) Applicability. The provisions of these rules apply to all trust funds received or disbursed by members of The Florida Bar in the course of their professional practice of law as members of The Florida Bar except special trust funds received or disbursed by an attorney as guardian, personal representative, receiver, or in a similar capacity such as trustee under a specific trust document where the trust funds are maintained in a segregated special trust account and not the general trust account and wherein this special trust position has been created, approved, or sanctioned by law or an order of a court that has authority or duty to issue orders pertaining to maintenance of such special trust account. These rules shall apply to matters wherein a choice of laws analysis indicates that such matters are governed by the laws of Florida.
 

 
 *154
 
 (b) Minimum Trust Accounting Records. The following are the minimum trust accounting records that shall be maintainedr. These records may be maintained in their original format or stored in digital media as long as the copies include all data contained in the original documents and may be produced when required.
 

 (1) A separate bank or savings and loan association account or accounts in the name of the lawyer or law firm and clearly labeled and designated as a “trust account.”
 

 (2) Original or duplicateclearly legible copies of deposit slips if the copies include all data on the originals and, in the case of currency or coin, an additional cash receipts book, clearly identifying:
 

 (A) the date and source of all trust funds received; and
 

 (B) the client or matter for which the funds were received.
 

 (3) Original canceled checks or clearly legible copies of original canceled checks, all of which must be numbered consecutively, or, if the financial institution wherein the-femst-account-is maintained — does—not return the — original c-hecks, copies that include all endorsements, as provided-by-the financial institution if the copies include all endorsements and all other data and tracking information.
 

 (4) Other documentary support for all disbursements and transfers from the trust account.
 

 (5) A separate cash receipts and disbursements journal, including columns for receipts, disbursements, transfers, and the account balance, and containing at least:
 

 (A) the identification of the client or matter for which the funds were received, disbursed, or transferred;
 

 (B) the date on which all trust funds were received, disbursed, or transferred;
 

 (C) the check number for all disbursements; and
 

 (D) the reason for which all trust funds were received, disbursed, or transferred.
 

 (6) A separate file or ledger with an individual card or page for each client or matter, showing all individual receipts, disbursements, or transfers and any unexpended balance, and containing:
 

 (A) the identification of the client or matter for which trust funds were received, disbursed, or transferred;
 

 (B) the date on which all trust funds were received, disbursed, or transferred;
 

 (C) the check number for all disbursements; and
 

 (D) the reason for which all trust funds were received, disbursed, or transferred.
 

 (7) All bank or savings and loan association statements for all trust accounts.
 

 (c) Minimum Trust Accounting Procedures. The minimum trust accounting procedures that shall be followed by all members of The Florida Bar (when a choice of laws analysis indicates that the laws of Florida apply) who receive or disburse trust money or property are as follows:
 

 (1) The lawyer shall cause to be made monthly:
 

 (A) reconciliations of all trust bank or savings and loan association accounts, disclosing the balance per bank, deposits in transit, outstanding checks identified by date and check number, and any other items neces
 
 *155
 
 sary to reconcile the balance per bank with the balance per the checkbook and the cash receipts and disbursements journal; and
 

 (B) a comparison between the total of the reconciled balances of all trust accounts and the total of the trust ledger cards or pages, together with specific descriptions of any differences between the 2 totals and reasons therefor.
 

 (2) At least annually, the lawyer shall prepare a detailed listing identifying the balance of the unexpended trust money held for each client or matter.
 

 (3) The above reconciliations, comparisons, and listings shall be retained for at least 6 years.
 

 (4) The lawyer or law firm shall authorize, at the time the account is opened, and request any bank or savings and loan association where the lawyer is a signatory on a trust account to notify Staff Counsel, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, in the event the account is overdrawn or any trust check is dishonored or returned due to insufficient funds or uncollected funds, absent bank error.
 

 (5) The lawyer shall file with The Florida Bar between June 1 and August 15 of each year a trust accounting certificate showing compliance with these rules on a form approved by the board of governors.
 

 (d) Record Retention. A lawyer or law firm that receives and disburses client or thirdjparty funds or property shall maintain the records required by this chapter for 6 years subsequent to the final conclusion of each representation in which the trust funds or property were received.
 

 (e) Audits. Any of the following shall be cause for The Florida Bar to order an audit of a trust account:
 

 (1) failure to file the trust account certificate required by rule 5 — 1.2(c)(5);
 

 (2) return of a trust account check for insufficient funds or for uncollected funds, absent bank error;
 

 (3) filing of a petition for creditor relief on behalf of an attorney;
 

 (4) filing of felony charges against an attorney;
 

 (5) adjudication of insanity or incompetence or hospitalization of the attorney under The Florida Mental Health Act;
 

 (6) filing of a claim against the attorney with the Clients’ Security Fund;
 

 (7) when requested by a grievance committee or the board of governors; os
 

 (8) upon court orders or
 

 (9) upon entry of an order of disbarment, on consent or otherwise.
 

 (f) Cost of Audit. Audits conducted in any of the circumstances enumerated in this rule shall be at the cost of the attorney audited only when the audit reveals that the attorney was not in substantial compliance with the trust accounting requirements. It shall be the obligation of any attorney who is being audited to produce all records and papers concerning property and funds held in trust and to provide such explanations as may be required for the audit. Records of general accounts are not required to be produced except to verify that trust money has not been deposited thereto. If it has been determined that trust money has been deposited into a general account, all of the transactions pertaining to any firm account will be subject to audit.
 

 (g) Failure to Comply With Subpoena for Trust Accounting Records. Failure of a member to timely produce trust ac
 
 *156
 
 counting records shall be considered as a matter of contempt and process in the manner provided in subdivision (d) and (f) of rule 3-7.11, Rules Regulating The Florida Bar.
 

 (1) Members of the bar are under-an obligation to maintain trust accounting records as required by these rules and, as a condition of the-pr-ivilege of practicing law in Florida, may-not assert any privilege personal to the lawyer-that may be applicable to production of same in these disciplinary proceedings^-
 

 (2) Notice — of- noncompliance with a subpoena may-be filed with the Supreme Court of'Florida- only if a-grievance committee or a referee shall-first find that no good cause exists-for failure to- comply: — A grievance-committee or- referee shall hear the issue-of — noncompliance and issue findings.thereon within 30 days of- the-request for-issuance of the notice of noncompliance:
 

 (3) After notice is-filed with the Supreme Court-of-Florida by The-F-lorida Bar that a member of-the bar has failed to fully comply-with a properly-issued-subpoena directing-the-production of any trust, accounting records that are required by these-rules, unless good-cause for the failure to comply is -shown-r-the member may be suspended from the practice of law in Florida, by order of the Supreme Court-of-F-lorida, until such time as the member fully complies-with-the subpoenar-and/or until further-order of the court.
 

 (4) Any member-subjeet to suspension-under this rule may petition-the-courtr within 10 days-ef the filing of the-noti-Ger to withhold entry of the order-of-saspension or at any time-after entry of an order of suspension — may petition the court to terminate or modify the order of suspension. — If-the-eourt determines it necessary to refer the-petition to terminate or -modify the suspension to a referee for receipt of-ev-idence, the referee proceedings-shall be conducted-in-⅛⅛ same-manner-a-s proceedings before-a referee on a petition to withhold, terminate, or modify an-order- of emergency suspension, as elsewhere provided — ⅛ these-r-ulesr
 

 CHAPTER 6. LEGAL SPECIALIZATION AND EDUCATION PROGRAMS
 

 6-3. FLORIDA CERTIFICATION PLAN
 

 RULE 6-3.5 STANDARDS FOR CERTIFICATION
 

 (a) Standards for Certification. The minimum standards for certification are prescribed below. Each area of certification established under this chapter may contain higher or additional standards if approved by the Supreme Court of Florida.
 

 (b) Eligibility for Application. A member in good standing of The Florida Bar who is currently engaged in the practice of law and who meets the area’s standards may apply for certification. From the date the application is filed to the date the certificate is issued, the applicant must continue to practice law and remain a member in good standing of The Florida Bar. The certificate issued by the board of legal specialization and education shall state that the lawyer is a “Board Certified (area of certification) Lawyer.”
 

 (c) Minimum Requirements for Qualifying for Certification With Examination. Minimum requirements for qualifying for certification by examination are as follows:
 

 (1) A minimum of 5 years substantially engaged in the practice of law. The “practice of law” means legal work per
 
 *157
 
 formed primarily for purposes of rendering legal advice or representation. Service as a judge of any court of record shall be deemed to constitute the practice of law. Employment by the government of the United States, any state (including subdivisions of the state such as counties or municipalities), or the District of Columbia, and employment by a public or private corporation or other business shall be deemed to constitute the practice of law if the individual was required as a condition of employment to be a member of the bar of any state or the District of Columbia. If otherwise permitted in the particular standards for the area in which certification is sought, the practice of law in a foreign nation state, U.S. territory, or U.S. protectorate, or employment in a position that requires as a condition of employment that the employee be licensed to practice law in such foreign nation state, U.S. territory, or U.S. protectorate, shall be counted as up to, but no more than, 3 of the 5 years required for certification.
 

 (2) A satisfactory showing of substantial involvement in the particular area for which certification is sought during 3 of the last 5 years preceding the application for certification.
 

 (3) A satisfactory showing of such continuing legal education in a particular field of law for which certification is sought as set by that area’s standards but in no event less than 10 certification hours per year.
 

 (4) Passing a written and/or oral examination applied uniformly to all applicants to demonstrate sufficient knowledge, skills, and proficiency in the area for which certification is sought and in the various areas relating to such field. The examination shall include professional responsibility and ethics. The award of an LL.M. degree from an approved law school in the area for which certification is sought within 8 years of application may substitute as the written examination required in this subdivision if the area’s standards so provide.
 

 (5) Current certification by an approved organization in the area for which certification is sought within 5 years of filing an application may, at the option of the certification committee, substitute as partial equivalent credit, including the written examination required in subdivision (c)(4). Approval will be by the board of legal specialization and education following a positive or negative recommendation from the certification committee.
 

 (6) Peer review shall be used to solicit information to assess competence in the specialty field, and professionalism and ethics in the practice of law. To qualify for board certification, an applicant must be recognized as having achieved a level of competence indicating special knowledge, skills, and proficiency in handling the usual matters in the specialityspe-cialty field. The applicant shall also be evaluated as to character, ethics, and reputation for professionalism. An applicant otherwise qualified may be denied certification on the basis of peer review. Certification may also be withheld pending the outcome of any disciplinary complaint or malpractice action.
 

 As part of the peer review process, the board of legal specialization and education and its area committees shall review an applicant’s professionalism, ethics, and disciplinary record. Such review shall include both disciplinary complaints and malpractice actions. The process may also include solicitation of public input and independent inquiry apart from written references. Peer review is mandatory for all
 
 *158
 
 applicants and may not be eliminated by equivalents.
 

 (d) Minimum Requirements for Qualification Without Examination. When certification without examination is available in an area, the minimum requirements for such certification are as follows:
 

 (1) Aa minimum of 20 years in the practice on a full-time basis,;
 

 (2) Aa satisfactory showing of competence and substantial involvement in the particular area for which certification is sought during 5 of the last 10 years, including the year immediately preceding the application for certification. Substantial involvement in the particular area of law for the 1 year immediately preceding the application may be waived for good cause shown,;
 

 (3) Aa satisfactory showing of such continuing legal education in a particular field of law for which certification is sought as set by that area’s standards but in no event less than 15 hours per year,;
 

 (4) ^satisfactory peer review and professional ethics record in accordance with subdivision (c)(6),; and
 

 (5) payment of any fees required by the plan.
 

 (e) Certification Without Examination.fg) When ^certification without examination is available in an area, it may be granted only:
 

 (Al) to individuals who apply within 2 years after the date on which the particular area is approved by the Supreme Court of Florida; or
 

 (B-2) as otherwise permitted in the particular standards for the area for which certification is sought.
 

 (6)-Payment of any fees required by ■the plan.
 

 RULE 6-3.9 MANNER OF CERTIFICATION
 

 (a) Listing Area of Certification. A member having received a certificate in an area may list the area on the member’s letterhead, business cards, and office door, in the yellow pages of the telephone directory, in approved law lists, and by such other means permitted by the Rules of Professional Conduct. The listing may be made by stating one or more of the following: “Board Certified (area of certification) Lawyer;” or-“Specialist in (area of certification),;” or use of initials “B.C.S.,” to indicate Board Certified Specialist. If the initials “B.C.S.” are used, the area(s) in which the member is board certified must be identified; if used in court documents or a non-advertising context, the initials may stand alone.
 

 (b) Members of Law Firms. No law firm may list an area of certification for the firm, but membership in the firm does not impair an individual’s eligibility to list areas of certification in accordance with this chapter. Except for the firm listing in the telephone directory, a law firm may show next to the names of any firm members their certification area(s).
 

 6-10. CONTINUING LEGAL EDUCATION REQUIREMENT RULE
 

 RULE 6-10.3 MINIMUM CONTINUING LEGAL EDUCATION STANDARDS
 

 (a) Applicability. Every member except those exempt under rule 6-10.3(c)(4) and (5) shall comply and report compliance with the continuing legal education requirement.
 

 (b) Minimum Hourly Continuing Legal Education Requirements. Each member shall complete a minimum of 30 credit hours of approved continuing legal education activity every 3 years. Five of
 
 *159
 
 the 30 hours must be in approved legal ethics, professionalism, bias elimination, substance abuse, or mental illness awareness programs. Courses offering credit in professionalism must be approved by the center for professionalism. These 5 hours are to be included in, and not in addition to, the regular 30-hour requirement. If a member completes more than 30 hours during any reporting cycle, the excess credits cannot be carried over to the next reporting cycle.
 

 (c) Exemptions. Eligibility for an exemption, in accordance with policies adopted under this rule, is available for;
 

 (1) Aactive military servicer;
 

 (2) Uundue hardship*;
 

 (3) Nnonresident members not delivering legal services or advice on matters or issues governed by Florida law*;
 

 (4) Mmembers of the full-time federal judiciary who are prohibited from engaging in the private practice of law*;
 

 (5) ¿justices of the Supreme Court of Florida and judges of the district courts of appeal, circuit courts, and county courts, and such other judicial officers and employees as may be designated by the Supreme Court of Florida.-; and,
 

 (6) linactive members of The Florida Bar.
 

 (d) Course Approval. Course approval shall be set forth in policies adopted pursuant to this rule. Special policies shall be adopted for courses sponsored by governmental agencies for employee attorneys that shall exempt such courses from any course approval fee and may exempt such courses from other requirements as determined by the board of legal specialization and education.
 

 (e) Accreditation of Hours. Accreditation standards shall be as-set forth in the policies adopted pursuant tounder this rule. If a course is presented or sponsored by or has received credit approval from an organized state bar (whether integrated or voluntary), such course shall be deemed an approved course for purposes of this rule if the course meets the criteria for accreditation established by policies adopted under this rule.
 

 (f) Full-time Government Employees. Credit hours shall be given full-time government employees for courses presented by governmental agencies. Application for credit approval may be submitted by the full-time government attorney before or after attendance, without charge.
 

 (g) Skills Training Preadmission. The board of legal specialization and education may approve for CLER credit a basic skills or entry level training program developed and presented by a governmental entity. If approved, credit earned through attendance at such course, within 8 months prior to admission to The Florida Bar, shall be applicable under rule 6-10.3(b).
 

 RULE 6-10.4 REPORTING REQUIREMENTS
 

 (a) Reports Required. Each member except those exempt under rule 6-10.3(c)(4) and (5) shall file a report showing compliance or noncompliance with the continuing legal education requirement. Such report shall be in the form prescribed by the board of legal specialization and education.
 

 (b) Time for Filing. The report shall be filed with The Florida Bar no later than the last day of such member’s applicable reporting period as set-for-th in-the rules Bar.
 

 RULE 6-10.5 DELINQUENCY AND APPEAL
 

 (a) Delinquency. If a member fails to complete and report the minimum re
 
 *160
 
 quired continuing legal education hours by the end of the applicable reporting period, the member shall be deemed delinquent in accordance with rule 1-3.6, Rules Regulating The Florida Bar.
 

 (b) Appeal to the Board of Governors. A member deemed delinquent may appeal to the bBoard of gGovernors of The Florida Bar. Appeals to the board of governors shall be governed by the policies promulgated under these rules.
 

 (c) Appeal to the Supreme Court of Florida. A decision of the board of governors may be appealed by the affected member to the Supreme Court of Florida. Appeals to-the court shall be-governed by the policies promulgated under these rules. Such review shall be by petition for review in accordance with the procedures set forth in rule 9.100, Florida Rules of Appellate Procedure.
 

 (d) Exhaustion of Remedies. A member must exhaust each of the remedies provided under these rules in the order enumerated before proceeding to the next remedy.
 

 (e) Tolling Time for Compliance. An appeal shall toll the time a member has for showing compliance with continuing legal education requirements.
 

 RULE 6-10.6 REINSTATEMENT
 

 Any member deemed delinquent for failure to meet the continuing legal education requirement may be reinstated by the executive ■ director upon.-a showing that the noncompliance has-been- ■ corrected and upon- payment to The Florida Bar of a uniform reinstatement fee, as established by the board of governorsin accordance with rule 1-3.7, Rules Regulating The Florida Bar.
 

 CHAPTER 10. RULES GOVERNING THE INVESTIGATION AND PROSECUTION OF THE UNLICENSED PRACTICE OF LAW
 

 10-6. PROCEDURES FOR INVESTIGATION
 

 RULE 10-6.3 RECOMMENDATIONS AND DISPOSITION OF COMPLAINTS
 

 (a) Circuit Committee Action. Upon concluding its investigation, the circuit committee shall forward a report to bar counsel regarding the disposition of those cases closed, those cases where a cease and desist affidavit has been accepted, those cases where a cease and desist affidavit with monetary penalty has been recommended, and those cases where litigation is recommended. A majority of those present is required for all circuit committee recommendations; however, the vote may be taken by mail or telephone rather than at a formal meeting. All recommendations for a cease and desist affidavit with monetary penalty shall be reviewed by the standing committee for final approval. All recommendations for litigation under these rules shall be reviewed by the standing committee and a designated reviewer for final approval prior to initiating litigation.
 

 (b) Action by Bar Counsel. Bar counsel shall review the disposition reports of the circuit committee. If bar counsel objects to any action taken by the circuit committee, bar counsel shall forward such objection to the circuit committee within 10 days of receipt of the circuit committee report. Bar counsel shall place the action and objection before the standing committee for review at its next scheduled meeting. The standing committee shall review the circuit committee action and the objection, and shall vote on the final disposition of the case. Once a case is closed or a cease and desist affidavit is accepted by
 
 *161
 
 the circuit committee or by the standing committee, bar counsel shall inform the complainant and, if contacted, the respondent of the disposition of the complaint.
 

 (c) Review by Designated Reviewer. A designated reviewer shall review recommendations by the standing committee that litigation be initiated. The designated reviewer shall act on the recommendation within 21 days following the mailing date of the notice of standing committee action, otherwise the standing committee action shall become final. If the designated reviewer disagrees with all or any part of the recommendation for litigation, the designated reviewer shall make a report and recommendation to the board of governors and the board will make a final determination regarding the litigation. — The designated" reviewer shall-miake-the-report and recommendation within 21 days following the-mailing date of the notice-of-standing committee action, otherwise the standing committee action shall become final.
 

 10-7. PROCEEDINGS BEFORE A REFEREE
 

 RULE 10-7.1 PROCEEDINGS FOR INJUNCTIVE RELIEF
 

 (a) Filing Complaints. Complaints for civil injunctive relief shall be by petition filed in the Supreme Court of Florida by The Florida Bar in its name.
 

 (b) Petitions for Injunctive Relief. Each such petition shall be processed in the Supreme Court of Florida in accordance with the following procedure:
 

 (1) The petition shall not be framed in technical language but shall with reasonable clarity set forth the facts constituting the unlicensed practice of law. A demand for relief may be included in the petition but shall not be required.
 

 (2) The court, upon consideration of any petition so filed, may issue its order to show cause directed to the respondent commanding the respondent to show cause, if there be any, why the respondent should not be enjoined from the unlicensed practice of law alleged, and further requiring the respondent to file with the court and serve upon UPL staff counsel within 20 days after service on the respondent of the petition and order to show cause a written answer admitting or denying each of the matters set forth in the petition. The legal sufficiency of the petition may, at the option of the respondent, be raised by motion to dismiss filed prior to or at the time of the filing of the answer. The filing of a motion to dismiss prior to the filing of an answer shall postpone the time for the filing of an answer until 10 days after disposition of the motion. The order and petition shall be served upon the respondent in the manner provided for service of process by Florida Rule of Civil Procedure 1.070(b). Service of all other pleadings shall be governed by the provisions of Florida Rule of Civil Procedure 1.080.
 

 (3) Any party may request oral argument upon any question of law raised by the initial pleadings. The court may, in its discretion, set the matter for oral argument upon the next convenient motion day or at such time as it deems appropriate.
 

 (4) If no response or defense is filed within the time permitted, the allegations of the petition shall be taken as true for purposes of that action. The court will then, upon its motion or upon motion of any party, decide the case upon its merits, granting such relief and issuing such order as might be appropriate; or it may refer the petition for further proceedings according to rule 10 — 7.1(b)(6).
 

 
 *162
 
 (5) If a response or defense filed by a respondent raises no issue of material fact, any party, upon motion, may request summary judgment and the court may rule thereon as a matter of law.
 

 (6) The court may, upon its motion or upon motion of any party, enter a judgment on the pleadings or refer questions of fact to a referee for determination.
 

 (c) Proceedings Before the Referee. Proceedings before the referee shall be in accordance with the following:
 

 (1) The proceedings shall be held in the county where the respondent resides or where the alleged offense was committed, whichever shall be designated by the court.
 

 (2) Within 60 days of the order assigning the case to the referee, the referee shall conduct a case management conference. The purpose of the conference is to set a schedule for the proceedings, including discovery deadlines and a final hearing date. The referee shall enter a written order in the proceedings reflecting the schedule determined at the conference and, if civil penalties are requested, containing a notice to the respondent regarding the respondent’s burden to show an inability to pay a civil penalty as set forth elsewhere in these rules.
 

 (3) Subpoenas for the attendance of witnesses and the production of documentary evidence shall be issued in the name of the court by the referee upon request of a party. Failure or refusal to comply with any subpoena shall be contempt of court and may be punished by the court or by any circuit court where the action is pending or where the con-temnor may be found, as if said refusal were a contempt of that court.
 

 (4) The Florida Rules of Civil Procedure, including those provisions pertaining to discovery, not inconsistent with these rules shall apply in injunctive proceedings before the referee. The powers and jurisdiction generally reposed in the court under those rules may in this action be exercised by the referee. The Florida Bar may in every case amend its petition 1 time as of right, within 60 days after the filing of the order referring the matter to a referee.
 

 (5)Review of interlocutory rulings of the referee may be had by petition to the court filed within 30 days after entry of the ruling complained of. A supporting brief or memorandum of law and a transcript containing conformed copies of pertinent portions of the record in the form of an appendix shall be filed with the court by a party seeking such review. Any opposing party may file a responsive brief or memorandum of law and appendix containing any additional portions of the record deemed pertinent to the issues raised within 10 days thereafter. The petitioner may file a reply brief or memorandum of law within 5 days of the date of service of the opposing party’s responsive brief or memorandum of law. Any party may request oral argument at the time that party’s brief or memorandum of law is filed or due. Interlocutory review hereunder shall not stay the cause before the referee unless the referee or the court on its motion or on motion of any party shall so order.
 

 (d) Referee’s Report.
 

 (1)
 
 Generally.
 
 At the conclusion of the hearing, the referee shall file a written report with the court stating findings of fact, conclusions of law, a statement of costs incurred and recommendations as to the manner in which costs should be taxed as provided elsewhere in this chapter, and a recommendation for final disposition of the cause which may in-
 
 *163
 
 elude the imposition of a civil penalty not to exceed $1000 per incident and a recommendation for restitution as provided elsewhere in this chapter. The original record shall be filed with the report. Copies of the referee’s report shall be served upon all parties by the referee at the time it is filed with the court.
 

 (2)
 
 Costs.
 
 The referee shall have discretion to recommend the assessment of costs. Taxable costs of the proceeding shall include only:
 

 (A) investigative costs;
 

 (B) court reporters’ fees;
 

 (C) copy costs;
 

 (D) telephone charges;
 

 (E) fees for translation services;
 

 (F) witness expenses, including travel and out-of-pocket expenses;
 

 (G) travel and out-of-pocket expenses of the referee; and
 

 (H) travel and out-of-pocket expenses of counsel in the proceedings, including those of the respondent if acting as counsel; and
 

 (I) any other costs which may properly be taxed in civil litigation.
 

 (3)
 
 Restitution.
 
 The referee shall have discretion to recommend that the respondent be ordered to pay restitution, which shall be-paid before costs. In such instances, the amount of restitution shall be specifically set forth in the referee’s report and shall not exceed the amount paid to respondent by eomplain-ant(s). The referee’s report shall also state the name(s) of the complainant(s) to whom restitution is to be made, the amount of restitution to be made, and the date by which it shall be completed. The referee shall have discretion over the timing of payments and over how those payments are to be distributed to multiple complainants. In determining the amount of restitution to be paid to complainant(s), the referee shall consider testimony and/or any documentary evidence that shows the amount paid to respondent by complainant(s) including:
 

 (A) cancelled checks;
 

 (B) credit card receipts;
 

 (C) receipts from respondent; and
 

 (D) any other documentation evidencing the amount of payment.
 

 The referee shall also have discretion to recommend that restitution shall bear interest at the legal rate provided for judgments in this state. Nothing in this section shall preclude an individual from seeking redress through civil proceedings to recover fees or other damages.
 

 (4)
 
 Civil Penalty.
 
 Except in cases where the parties have entered into a stipulated injunction, prior to recommending the imposition of a civil penalty, the referee shall determine whether the respondent has the ability to pay the penalty. The respondent has the burden to show the inability to pay a penalty. A respondent asserting an inability to pay shall file with the referee a completed affidavit containing the statutory financial information required to be submitted to the clerk of court when determining indigent status and stating that the affidavit is signed under oath and under penalty of perjury. In making a determination of whether the respondent has the ability to pay a penalty, the referee shall consider the applicable statutory criteria used by the clerk of court when determining indigent status and the applicable statutory factors considered by a court when reviewing that determination. If the referee finds that the respondent does not have the ability to pay a penalty, this shall be stated in the referee’s report along -with a recitation of the evidence upon which the ref
 
 *164
 
 eree made this finding. If the referee finds that the respondent does have the ability to pay a penalty, this shall be stated in the referee’s report along with a recitation of the evidence upon which the referee made this finding.
 

 (45)
 
 Stipulated Injunction.
 
 Should the parties enter into a stipulated injunction prior to the hearing, the stipulation shall be filed with the referee. The referee may approve the stipulation or reject the stipulation and schedule a hearing as provided elsewhere in these rules. If accepted, the stipulation and original record shall then be filed with the court for final approval of the stipulation and entry of an injunction. A written report as described in rule 10-7.1(d)(1) shall be filed by the referee along with the stipulation. The respondent may agree to pay restitution in the stipulation. In such instances the amount of restitution, to whom it shall be made, how payments are to be made, the date by which it shall be completed, and whether interest as provided elsewhere in this chapter will be paid, shall be specifically set forth in the stipulation.
 

 (6)
 
 Timing of Payment.
 
 Should the referee recommend the imposition of restitution, costs, or a civil penalty, the respondent shall pay the award in the following order: restitution, costs, civil penalty.
 

 (e) Record.
 

 (1)
 
 Contents.
 
 The record shall include all items properly filed in the cause including pleadings, recorded testimony, if transcribed, exhibits in evidence, and the report of the referee.
 

 (2)
 
 Preparation and Filing.
 
 The referee, with the assistance of bar counsel, shall prepare the record, certify that the record is complete, serve a copy of the index of the record on the respondent and The Florida Bar, and file the record with the office of the clerk of the Supreme Court of Florida.
 

 (3)Supplementing or Removing Items from the Record.
 
 The respondent and The Florida Bar may seek to supplement the record or have items removed from the record by filing a motion with the referee for such purpose, provided such motion is filed within 15 days of the service of the index. Denial of a motion to supplement the record or to remove an item from the record may be reviewed in the same manner as provided for in the rule on appellate review under these rules.
 

 (ef) Review by the Supreme Court of Florida.
 

 (1) Objections to the report of the referee shall be filed with the court by any party aggrieved, within 30 days after the filing of the report, or in the case where a party seeks review of a referee’s denial to supplement or remove an item from the record, within 30 days after the court issues its ruling on that matter. Denial of a motion to supplement the record or to remove an item from the record may be reviewed in the same manner as provided for in the rule on appellate review under these rules.
 

 If the objector desires, a brief or memorandum of law in support of the objections may be filed at the time the objections are filed. Any other party may file a responsive brief or memorandum of law within 20 days of service of the objector’s brief or memorandum of law. The objector may file a reply brief or memorandum of law within 10 days of service of the opposing party’s responsive brief or memorandum of law. Oral argument will be allowed at the court’s discretion and will be governed by the
 
 *165
 
 provisions of the Florida Rules of Appellate Procedure.
 

 (2) Upon the expiration of the time to file objections to the referee’s report, the court shall review the report of the referee, together with any briefs or memoranda of law or objections filed in support of or opposition to such report. After review, the court shall determine as a matter of law whether the respondent has engaged in the unlicensed practice of law, whether the respondent’s activities should be enjoined by appropriate order, whether costs should be awarded, whether restitution should be ordered, whether civil penalties should be awarded, and whether further relief shall be granted. Any order of the court that contains an orderthe imposition of restitution or civil penalties shall contain a requirement that the respondent provide-a monthly written report send the restitution or penalty to the UPL Department of The Florida Bar detailing — the—complainant(s)- to- whom restitution — has—been—made—and—fee amounts paid. The restitution shall be made payable to the complainant(s) specified in the court’s order. The Florida Bar shall remit all restitution received to the complainant(s). If The Florida Bar cannot locate the complainant(s) within 4 months, the restitution shall be returned to the respondent. The civil penalty shall be made payable to the Supreme Court of Florida. The Florida Bar shall remit all penalties received to the court. In the event respondent fails to pay the restitution as ordered by the court, The Florida Bar is authorized to file a petition for indirect criminal contempt as provided elsewhere in this chapter.
 

 (⅛) Issuance of Preliminary or Temporary Injunction. Nothing set forth in this rule shall be construed to limit the authority of the court, upon proper application, to issue a preliminary or temporary injunction, or at any stage of the proceedings to enter any such order as the court deems proper when public harm or the possibility thereof is made apparent to the court, in order that such harm may be summarily prevented or speedily enjoined.
 

 RULE 10-7.2 PROCEEDINGS FOR INDIRECT CRIMINAL CONTEMPT
 

 (a) Petitions for Indirect Criminal Contempt. Nothing set forth herein shall be construed to prohibit or limit the right of the court to issue a permanent injunction in lieu of or in addition to any punishment imposed for an indirect criminal contempt.
 

 (1) Upon receiving a sworn petition of the president, executive director of The Florida Bar, or the chair of the standing committee alleging facts indicating that a person, firm, or corporation is or may be unlawfully practicing law or has failed to pay restitution as provided elsewhere in this chapter, and containing a prayer for a contempt citation, the court may issue an order directed to the respondent, stating the essential allegations charged and requiring the respondent to appear before a referee appointed by the court to show cause why the respondent should not be held in contempt of this court for the unlicensed practice of law or for the failure to pay restitution as ordered. The referee shall be a circuit judge of the state of Florida. The order shall specify the time and place of the hearing, and a reasonable time shall be allowed for preparation of the defense after service of the order on the respondent.
 

 (2) The respondent, personally or by counsel, may move to dismiss the order to show cause, move for a statement of
 
 *166
 
 particulars, or answer such order by way of explanation or defense. All motions and the answer shall be in writing. A respondent’s omission to file motions or answer shall not be deemed as an admission of guilt of the contempt charged.
 

 (b) Indigency of Respondent. Any respondent who is determined to be indigent by the referee shall be entitled to the appointment of counsel.
 

 (1)
 
 Affidavit.
 
 A respondent asserting indigency shall file with the referee a completed affidavit containing the statutory financial information required to be submitted to the clerk of court when determining indigent status and stating that the affidavit is signed under oath and under penalty of perjury.
 

 (2)
 
 Determination.
 
 After reviewing the affidavit and questioning the respondent, the referee shall make one of the following determinations: the respondent is indigent; or the respondent is not indigent.
 

 In making this determination, the referee shall consider the applicable statutory criteria used by the clerk of court when determining indigent status and the applicable statutory factors considered by a court when reviewing that determination.
 

 (c) Proceedings Before the Referee. Proceedings before the referee shall be in accordance with the following:
 

 (1) Venue for the hearing before the referee shall be in the county where the respondent resides or where the alleged offense was committed, whichever shall be designated by the court.
 

 (2) The court or referee may issue an order of arrest of the respondent if the court or referee has reason to believe the respondent will not appear in response to the order to show cause. The respondent shall be admitted to bail in the manner provided by law in criminal cases.
 

 (3) The respondent shall be arraigned at the time of the hearing before the referee, or prior thereto upon request. A hearing to determine the guilt or innocence of the respondent shall follow a plea of not guilty. The respondent is entitled to be represented by counsel, have compulsory process for the attendance of witnesses, and confront witnesses against the respondent. The respondent may testify in the respondent’s own defense. No respondent may be compelled to testify. A presumption of innocence shall be accorded the respondent. The Florida Bar, which shall act as prosecuting authority, must prove guilt of the respondent beyond a reasonable doubt.
 

 (4) Subpoenas for the attendance of witnesses and the production of documentary evidence shall be issued in the name of the court by the referee upon request of a party. Failure or refusal to comply with any subpoena shall be contempt of court and may be punished by the court or by any circuit court where the action is pending or where the con-temnor may be found, as if said refusal were a contempt of that court.
 

 (5) The referee shall hear all issues of law and fact and all evidence and testimony presented shall be transcribed.
 

 (6) At the conclusion of the hearing, the referee shall sign and enter of record a judgment of guilty or not guilty. There should be included in a judgment of guilty a recital of the facts constituting the contempt of which the respondent has been found and adjudicated guilty, and the costs of prosecution, including investigative costs and restitution, if any, shall be included and en
 
 *167
 
 tered in the judgment rendered against the respondent. The amount of restitution shall be specifically set forth in the judgment and shall not exceed the amount paid to respondent by complainant(s). The judgment shall also state the name of the complainant(s) to whom restitution is to be made, the amount of restitution to be made, and the date by which it shall be completed. The referee shall have discretion over the timing of payments, over how those payments are to be distributed to multiple complainant(s), and whether restitution shall bear interest at the legal rate provided for judgments in this state. In determining the amount of restitution to be paid to eomplainant(s), the referee shall consider any documentary evidence that shows the amount paid to respondent by complainant(s), including cancelled checks, credit card receipts, receipts from respondent, and any other documentation evidencing the amount of payment. Nothing in this section shall preclude an individual from seeking redress through civil proceedings to recover fees or other damages.
 

 (7) Prior to the pronouncement of a recommended sentence upon a judgment of guilty, the referee shall inform the respondent of the accusation and judgment and afford the opportunity to present evidence of mitigating circumstances. The recommended sentence shall be pronounced in open court and in the presence of the respondent.
 

 (d) Record.
 

 (1)
 
 Contents.
 
 The record shall include all items properly filed in the cause including pleadings, recorded testimony, if transcribed, exhibits in evidence, and the report of the referee.
 

 (2)
 
 Preparation and Filing.
 
 The referee, with the assistance of bar counsel, shall prepare the record, certify that the record is complete, serve a copy of the index of the record on the respondent and The Florida Bar, and file the record with the office of the clerk of the Supreme Court of Florida.
 

 (3)Supplementing or Removing Items from the Record.
 
 The respondent and The Florida Bar may seek to supplement the record or have items removed from the record by filing a motion with the referee for such purpose, provided such motion is filed within 15 days of the service of the index. Denial of a motion to supplement the record or to remove an item from the record may be reviewed in the same manner as provided for in the rule on appellate review under these rules.
 

 (de) Review by the Supreme Court of Florida. The judgment and recommended sentence, upon a finding of “guilty,” together with the entire record of proceedings shall then be forwarded to this court for approval, modification, or rejection based upon the law. The respondent may file objections, together with a supporting brief or memorandum of law, to the referee’s judgment and recommended sentence within 30 days of the date of filing with the court of the referee’s judgment, recommended sentence, and record of proceedings, or in the case where a party seeks review of a referee’s denial to supplement or remove an item from the record, within 30 days after the court issues its ruling on that matter. Denial of a motion to supplement the record or to remove an item from the record may be reviewed in the same manner as provided for in the rule on appellate review under these rules.
 

 The Florida Bar may file a responsive brief or memorandum of law within 20 days after service of respondent’s brief or memorandum of law. The respondent may file a reply brief or memorandum of
 
 *168
 
 law within 10 days after service of The Florida Bar’s responsive brief or memorandum of law.
 

 (ef) Fine or Punishment. The punishment for an indirect criminal contempt under this chapter shall be by fine, not to exceed $2500, imprisonment of up to 5 months, or both.
 

 (⅜) Costs and Restitution. The court may also award costs and restitution.
 

 RULE 10-7.3 ENFORCEMENT OF AWARD OF CIVIL PENALTY
 

 If the respondent fails to pay the civil penalty within the time ordered by the court, The Florida Bar may conduct discovery in aid of execution. If the discovery shows that the respondent no longer has the ability to pay the civil penalty, The Florida Bar shall file with the court a motion to dissolve the civil penalty. The court may dissolve the civil penalty or may order that the penalty stand. If the discovery shows that the respondent has the ability to pay the civil penalty, The Florida Bar may file a petition for indirect criminal contempt as provided elsewhere in this chapter.
 

 CHAPTER 14. GRIEVANCE MEDIATION AND FEE ARBITRATION
 

 14-4. INSTITUTION OF PROCEEDINGS
 

 RULE 14-4.1 ARBITRATION PROCEEDINGS
 

 (a)Institution of Proceedings. All arbitration proceedings shall be instituted by the filing of a written consent to arbitration either by written contract between the parties to the arbitration, or orders of this court in proceedings under these Rules Regulating The Florida Bar imposing a sanction or condition or probation, or by the consent form prescribed in the policies adopted under the authority of this chapter and signed by each party to the controversy. — Proceedings--hereunder may also be instituted by the terms of-a-disciplinary sanction-imposed- or a condition of probation entered in accord with these ■ Rules Regulating The Florida Bar.
 

 (b) Position Statement and Relevant Documents. Each of sucbthe parties shall provide the committeearbitrator(s) with a concise statement of that party’s position, including the amount claimed or in controversy, on the form prescribed and authorized by the standing committee. If there is a written contract regarding fees between the parties, a copy of that written contract shall accompany the request or submission.
 

 (c) Referral by Intake Counsel or Bar Counsel. Intake counsel with the consent of the parties and concurrence of staff counsel, or bar counsel, with the consent of the parties, and the concurrence of the chief branch staff counsel, may refer appropriate cases to the fee arbitration program.
 

 (d) Referral by Grievance Committees. Grievance committees, with concurrence of bar counsel and consent of the parties, may refer appropriate cases to the fee arbitration program.
 

 (e) Referral by Board of Governors. The board of governors, with the agreement of the parties and upon review of a file referred to it as authorized elsewhere under these Rules Regulating The Florida Bar, may refer appropriate cases to the fee arbitration program if they meet the criteria established by the policies adopted under the authority of this chapter.
 

 CHAPTER 17. AUTHORIZED HOSE COUNSEL RULE
 

 RULE 17-1.2 DEFINITIONS
 

 (a) Authorized House Counsel. An “authorized house counsel” is any person who:
 

 
 *169
 
 (1) is a member -in good standing of the-entity-governing the-practice ofi-law of-each state (other-than Florida), territory, or the District of Columbia in which the member-is licensed;
 

 (2)-is~not ■ subjeet-to-an outstanding order of reprimand, censure ■ or disbarment, permanent or temporary» for professional misconduct — by- the bar — on courts of any jurisdiction;
 

 (3) is not subject to a disciplinary-proceeding;
 

 (4) has not been-permanently denied admission to practice before the bar-of any- jurisdiction based upon such -person's character or-fitness;
 

 (5) agrees to abide-by the Rules Regulating The Florida Bar (including, without limitation, ruíes-6-10.1 et seq.) and submit to the jurisdiction of the.Supreme Court of Florida for disciplinary purposes;
 

 (61) is exclusively employed by a business organization located in the state of Florida and is residing in Florida or relocating to the state of Florida in furtherance of such employment within 6 months of such application under this chapter and receives or shall receive compensation for activities performed for that business organizationj-and
 

 (72) has complied with rule 17-1.4; and
 

 (3) has been certified as an authorized house counsel by the Supreme Court of Florida.
 

 (b) Business Organization. A “business organization” for the purpose of this rule is a corporation, partnership, association or other legal entity (taken together with its respective parents, subsidiaries, and affiliates) authorized to transact business in this state that is not itself engaged in the practice of law or the rendering of legal services outside such organization, whether for a fee or otherwise, and does not charge or collect a fee for the representation or advice other than to entities comprising such organization by the activities of the authorized house counsel. For purposes of this rule, a “business organization” does not include::
 

 (1) a governmental entity, governmental subdivision, political subdivision, or school boards
 

 (2) or any other entity that has the authority to levy a tax.
 

 RULE 17-1.4 REGISTRATION
 

 (a) Filing with The Florida Bar. The following shall be filed with The Florida Bar by an individual seeking to be certified as authorized house counsel:
 

 (1) A certificate from an entity governing the practice of law of-each state, territory, or the District of Columbiain all United States jurisdictions in which the registrant is licensed to practice law certifying that the registrant; is in active status and (A) is a member in good standing; and or is in inactive status. If in inactive status, the certificate must certify that the registrant is in voluntary inactive status and was not placed on inactive status involuntarily. If available, the registrant must provide a certificate of good standing in addition to the certificate regarding the registrant’s inactive status.
 

 (B) has a clear disciplinary record as required by subdivision 17-L2(a)(2);
 

 (2) a sworn statement by the registrant that the registrant:
 

 (A) has read and is familiar with chapters 4 and 17 of the Rules Regulating The Florida Bar as adopted by the Supreme Court of Florida and will abide by the provisions thereof;
 

 (B) submits to the jurisdiction of the Supreme Court of Florida for dis
 
 *170
 
 ciplinary purposes, as defined in chapter 3 of the Rules Regulating The Florida Bar and rule 17-1.6 herein, and authorizes notification to or from the entity governing the practice of law of each state, territory, or the District of Columbia in which the registrant is licensed to practice law of any disciplinary action taken against the registrant; and
 

 (C) is not subject to a disciplinary proceeding or outstanding order of reprimand, censure, or disbarment, permanent or temporary, for professional misconduct by the bar or courts of any jurisdiction and has not been permanently denied admission to practice before the bar of any jurisdiction based upon such person’s character or fitness;
 

 (3) a certificate from a business organization certifying that: it is qualified as set forth in subdivision (b) of rule 17-1.24b); that it is aware that the registrant is not licensed to practice in Florida; and it is not relying upon The Florida Bar in any manner in employing the authorized house counsel;
 

 (4) an appropriate registration application to The Florida Bar as promulgated by the executive director of The Florida Bar; and
 

 (5) an appropriate remittance of a filing fee prescribed and set by the executive director of The Florida Bar in an amount not to exceed the amount applicable for admission to the bar examination for an attorney licensed in a state other than Florida.
 

 (b) Review by The Florida Bar. Upon receipt of the items set forth in subdivision 47-4r4(a) of this rule, The Florida Bar shall review the items for compliance with this chapter. Any application not meeting the requirements of this chapter shall be sent back to the applicant. — Grounds for return include, but- are-not- limited to, filing certificates- that-do not contain all of the information- set--forth in subdivision 17-1.4(a), filing a -certificate-from a business organization — that- does not qualify as a business- organization as defined by^-these rules, and- failure-to remit the appropriate
 

 (c) Certification by Court. Upon review of the application by The Florida Bar, The Florida Bar shall file with the clerk of the Supreme Court of Florida the name and address of those registrants complying with the provisions of subdivision 17-1.4(a) of this rule along with a request that the registrant be certified as authorized house counsel. Permission for authorized house counsel to perform services under this rule shall become effective upon approval of the request for certification by the clerk of the Supreme Court of Florida for a person employed in Florida or, if the registrant is not yet in Florida, the effective date of employment but not later than 6 months from the filing of the items set forth above.
 

 (d) Annual Renewal. The registration pursuant to this section shall be annual in a manner consistent with that applicable to an attorney licensed to practice in the state of Florida including the annual fee therefor as if such authorized house counsel was so licensed, provided, however, such renewal shall include a statement that the registrant, if on active status, is in good standing in all states or United States territories in which licensed and is not subject to any disciplinary proceedings.
 

 (e) Duty to Update. Should an individual certified as an authorized house counsel choose inactive status in 1 or more United States jurisdictions after certification, the authorized house counsel shall provide a certificate as required by subdivision (a)(1) of this rule.
 

 
 *171
 
 RULE 17-1.5 TERMINATION OR WITHDRAWAL OF REGISTRATION
 

 (a) Cessation of Authorization to Perform Services. Authorization to perform services under this rule shall eease upon the earliest of the following events:
 

 (1) the termination or resignation of employment with the business organization for which registration has been filed, provided, however, that if the authorized house counsel shall commence employment with another business organization within 30 days of the termination or resignation, authorization to perform services under this rule shall continue upon the filing with The Florida Bar of a certificate as set forth in subdivision (a)(8) of rule 17-1.4(a)(3);
 

 (2) the withdrawal of registration by the business organization;
 

 (3) the withdrawal of registration by the authorized house counsel;
 

 (4) the relocation of an authorized house counsel outside of Florida for a period greater than 180 days;
 

 (5) disbarment or suspension from the practice of law, or involuntary placement on inactive status, by a court or other authorized disciplinary agency of another state or by a federal court; or
 

 (6) the failure of authorized house counsel to comply with any applicable provision of this rule.
 

 Notice of onel of the events set forth in subdivision -1-7 — l-.5(a)(l)-(4) of this rule or a new certificate as provided in subdivision ⅜7 — l-v5(a)(l) of this rule must be filed with The Florida Bar by the authorized house counsel within 30 days after such action. An authorized house counsel disbarred or suspended from the practice of law, or involuntarily placed on inactive status, by a court or other authorized disciplinary agency of another state or by a federal court shall within 30 days after the effective date of disbarment, or suspension, or involuntary placement on inactive status, file with The Florida Bar a copy of the order or judgment effecting such status disbarment- or suspension. Failure to provide notice by the authorized house counsel shall be a basis for discipline pursuant to the Rules Regulating The Florida Bar.
 

 (b) Notice of WithdrawalTermination of Authorization. Upon receipt of the notice required by subdivision 17-1.5(a)of this rule, The Florida Bar shall forward a request to the clerk of the Supreme Court of Florida that the authorization under this chapter be revokedterminated. Notice of the ■revocationtermination shall be mailed by the clerk of the Supreme Court of Florida to the-authorized-house counsel, the business-organization-employing the authorized house counsel, and The Florida Bar. The Florida Bar shall mail notice of the termination to the authorized house counsel and to the business organization employing the authorized house counsel.
 

 (c) Reapplication. Nothing herein shall prevent an individual previously authorized as house counsel to reapply for authorization as set forth in rule 17-1.4.
 

 RULE 17-1.9 CONTINUING LEGAL EDUCATION REQUIREMENT
 

 An individual certified as an authorized house counsel shall comply with rules 6-10.3, 6-10.4, and 6-12.3 of the Rules Regulating The Florida Bar unless the individual is eligible for an exemption to rule 6-12.3 pursuant to rule 6-12.4.